IN THE UNITED STATES DISTRICT COURT
FOR THE DISTICT OF ARIZONA

IN THE MATTER OF:

GABRIELLE ANN SODERGREN,

    Debtor.

_____

DANIEL RYCHLIK,

    Appellant,

    vs.

GABRIELLE ANN SODERGREN,

    Appellee.

No. CV-18-1948-PHX-HRH

BK No.: 2:16-bk-12689-SHG
ADV. NO.: 2:17-ap-00267-SHG

**APPELLANT'S EXCERPTS OF THE RECORD**

Jay R. Bloom
KATZ & BLOOM P.L.C.
340 East Palm Lane
Suite A-260
Phoenix, Arizona 85004
Jay@KatzAndBloom.com
State Bar No. 016380
Attorney for Appellan

1

# **TABLE OF CONTENTS**

**TAB #        DOCUMENT TITLE                    DOCKET NO./
                                                 EXCERPT PAGE NO.\***

1.  Plaintiff/Counter-Defendant's Motion for Summary Judgment… Doc 27/00002

2.  Defendant/Counterclaimant's Response to
Plaintiff/Counterdefendant's Motion for Summary Judgment
and Counter Motion for Summary Judgment ……………………… Doc 28/00118

3.  Minute Entry dated May 10, 2018 ………………………..……… Doc 34/00185

4.  Judgment Granting Plaintiff/Counter-Defendant's
Motion for Summary Judgment and Denying
Defendant/Counterclaimant's Motion for Summary Judgment …….. Doc 36/00190

5.  Notice of Appeal and Statement of Election  ………......……….. Doc 40/00193

6. Excerpt of Transcript: May 10, 2018 Oral Argument …………... Doc 46/00196

\*For clarity, excerpt page numbers appear at the top center of each page.

        DATED July 20, 2018.

                              By:     **/s/  Jay R. Bloom**
                                      Jay R. Bloom
                                      KATZ & BLOOM P.L.C.
                                      340 East Palm Lane
                                      Suite A-260
                                      Phoenix, Arizona 85004
                                      602-266-1900
                                      Jay@KatzAndBloom.com
                                      State Bar No. 016380
                                      Attorney for Appellant

Original filed electronically July 20th, 2018,
with the Clerk of the Court in the Arizona District Court,
using the CM/ECF system.

A copy of the foregoing electronically distributed
by email and ECR this 20th day of July, 2018, to:

Kyle A. Kinney
Kyle@turnaroundteam.com
Attorneys for Appellee/Debtor

Russell Brown
service@ch13bk.com
jmorales@ch13bk.com
Chapter 13 Trustee

By: */s/ D. Jablin*_____

EXCERPT PAGE NO
00001

# TAB 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kyle A. Kinney (Bar No. 027189)
**THE TURNAROUND TEAM, PLLC**
Western Skies Business Center
1166 East Warner Road, Suite 205
Gilbert, AZ 85296
Phone: (480) 420-1999 | Fax: (480) 522-1515
Kyle@turnaroundteam.com
*Attorneys for Debtor*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Gabrielle Ann Sodergren,<br><br>          Debtor. | Chapter 13<br><br>Case No.:   2:16-bk-12689-SHG<br>Adv. Pro.:   2:17-ap-00267-SHG |

Gabrielle Ann Sodergren,

        Plaintiff/Counter-defendant,

   vs.

Daniel Rychlik,

        Defendant/Counterclaimant.

**PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff/Counter-Defendant Gabrielle Sodergren ("Sodergren"), by and through counsel undersigned, hereby files her Motion for Summary Judgment regarding her two claims for Declaratory Relief and Dischargeability of Defendant's Award against Daniel Rychlik ("Rychlik"), as set-forth in her First Amended Complaint and in opposition to the Counterclaim for Declaratory Relief filed by Rychlik, pursuant to FRBP 7056 and FRCP 56(a). The Counterclaim is redundant as it seeks the opposite determination that Sodergren seeks in her claim for Declaratory Relief. This Motion is supported by the following Memorandum of Points and Authorities, the accompanying Separate Statement of Facts ("SSOF"), and the court record.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### SUMMARY OF MOTION

Sodergren seeks a declaration that the December 18, 2015, Rychlik Award is not a "domestic support obligation" *and* an order that a discharge entered in this Chapter 13 case discharges her obligation under the Rychlik Award.  Rychlik seeks a declaration that the Rychlik Award is a "domestic support obligation".

***The issue before this Court***:  Is the $17,181.00 awarded Rychlik in December 18, 2015, for attorney fees and costs a sanction that is dischargeable, or a domestic support obligation?

Neither the Rychlik Award nor any other order from the Family Court directs Sodergren to pay a domestic support obligation to Rychlik.  Rychlik improperly claims that the attorney fee sanction is a domestic support obligation.  Rychlik was awarded fees for defending a child relocation dispute.  Rychlik pays domestic support obligations, not the other way around.  The Rychlik Award was purely a sanction and therefore is not a "domestic support obligation" as the term is defined in 11 U.S.C. § 101(14A).  Thus, the award is dischargeable under 11 U.S.C. § 1328(a).

However, the type of proceeding makes no difference.  The issue is if the award was a domestic support obligation owed to Rychlik, or a sanction against Sodergren for taking an unreasonable position seeking to move the children out-of-state.

### SUMMARY OF FACTS

Since 2011, the law of the Divorce Case is that there is a substantial disparity in financial resources and that Rychlik has considerably more financial resources than Sodergren.

The Divorce Case began in 2011 and remains ongoing. The Family Court has found at various times that both parties have taken unreasonable positions.  Here, Sodergren wanted to move their children to Illinois after the Family Court ordered that the children remain in Arizona.  Rychlik filed a petition and other motions to prevent Sodergren from relocating their children.  Sodergren eventually withdrew her request.  The Court awarded

Rychlik attorney fees.

### Facts

1.      Rychlik and Sodergren were married and have four minor children together (SSOF at ¶ 1).

2.      A petition for divorce was filed in Maricopa County Superior Court at Case Number CV2011-090965 (the "Divorce Case").   A divorce decree was signed December 14, 2011 and filed with the Clerk of Court on December 16, 2011 ("Decree") (SSOF at ¶ 2).

3.      The Decree finds a substantial disparity in the parties' financial resources with Rychlik having considerably more resources and awards Sodergren both Child Support and Spousal Maintenance after an extensive analysis of the principles set-forth in *Schroeder v. Schroeder*, 161 Ariz. 316, 321, 778 P.2d 1212, 1217 (1989), and the statutory factors of A.R.S. § 25-319(B) (SSOF at ¶ 3).

4.      After receipt of a letter from Sodergren stating her intention to relocate to Illinois with the parties' minor children, Rychlik filed a "Petition to Prevent Relocation" in the Divorce Case in November, 2013 (the "Relocation Proceedings") (SSOF at ¶ 4).

5.      A year later, on November 6, 2014, Rychlik filed an "Emergency Petition for Temporary Orders Without Notice re: Legal Decision Making and Parenting Time." (SSOF at ¶ 5).

6.      On November 21, 2014, the Family Court conducted an extended evidentiary hearing on the emergency petition (SSOF at ¶ 6).

7.      On March 31, 2015, the Family Court issued a minute entry that, among other things, granted Sodergren's request for attorney fees and costs (SSOF at ¶ 7).

8.      On April 13, 2015, Sodergren withdrew her request to relocate the children (SSOF at ¶ 8).

9.      On July 23, 2015, the Family Court signed a judgment awarding Sodergren $57,294 in attorney fees and costs, plus interest ("Plaintiff's Award") (SSOF at ¶ 9).

10. On July 27, 2015, Rychlik filed a "Motion for Summary Judgment Re: Petition to Prevent Relocation" (the "MSJ"), where he argued that his petition to prevent relocation should be granted, because Plaintiff had just expressed her intent to remain in Arizona anyway (SSOF at ¶ 10).

11. Sodergren did not file a response to the MSJ as the entire issue was moot at that point (SSOF at ¶ 11)

12. On September 25, 2015, the Family Court granted the MSJ and sets-forth a briefing schedule for a fee application (SSOF at ¶ 12).

13. On October 23, 2015, Rychlik applied for attorney fees consisting of fees incurred during the Relocation Proceedings (the "Fee Application")(SSOF at ¶ 13).

14. Sodergren responded to the Fee Application, and Rychlik replied (SSOF at ¶ 14).

15. In the Fee Application, Rychlik argued he should be awarded fees based on Sodergren's "clearly unreasonable . . . position that it was best to relocate the children to Illinois, only to thereafter contend it is in their best interests to remain in Arizona."  (SSOF at ¶ 15).

16. In the Fee Application, Rychlik does not argue that fees or costs should be awarded due to a disparity in financial resources or any other reason relating to domestic support (SSOF at ¶ 16).

17. The Fee Application cites A.R.S. § 24-324 as the sole legal authority for the issuance of attorney fees and costs.  The Fee Application does not state if the request was made pursuant to Subsection (A) or (B) (SSOF at ¶ 17).

18. On December 18, 2015, the Family Court entered judgment for attorney fees and costs in favor of Rychlik in the amount of $17,181 ("Rychlik Award").  The Rychlik Award does not characterize the award as either a domestic support obligation or a sanction (SSOF at ¶ 18).

19. The Rychlik Award does not make a finding that the attorney fees and costs were awarded due to a disparity in financial resources or some other domestic support

reason.  Stated another way, the Court did not change its findings in the Decree that Rychlik has considerably more financial resources than Sodergren (SSOF at ¶ 19).

20.     The Family Court has not made any finding regarding the parties financial resources other than that Rychlik has considerably more financial resources (SSOF at ¶ 20).

## ARGUMENT

### I.   AWARDS THAT ARE PURELY A SANCTION ARE NOT A "DOMESTIC SUPPORT OBLIGATION" PURSUANT TO 11. U.S.C. § 101(14A) AND ARE DISCHARGEABLE.

11 U.S.C. § 101(14A) defines a "domestic support obligation" as one that is " . . . in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated . . . "

A plethora of cases exist where awards lumping child support, alimony, maintenance, and/or other support *and* attorney fees together are declared to be "domestic support obligations" under 11 U.S.C. § 101(14A) and are therefore non-dischargeable.  All of these cases consider multiple factors including a showing of financial necessity and the income of each spouse.  The cases clearly focus on the necessity for actual domestic support obligations and the award of attorney fees are ancillary.

Judge Haines has held that attorney fees awarded as sanctions are not domestic support obligations and are dischargeable.  In *In re Jarski*, 301 B.R. 342, 347 (Bankr. D. Ariz. 2003), Judge Haines ruled that any judgment is not automatically deemed a domestic support obligation and non-dischargeable by stating "[p]erhaps such a showing could be made if the fees were awarded purely as a sanction."  Thus, the test of dischargeability is whether or not the Rychlik Award is a sanction.  *See also Birt v. Birt*, 208 Ariz. 546, 553, 96 P.3d 544 (Ariz. App., 2004) (*citing In re Jarski* in recognizing that an award pursuant to A.R.S. § 25-324 can be a sanction for dischargeability purposes).

/ / /

/ / /

/ / /

**II.  THE RYCHLIK AWARD IS PURELY A SANCTION UNDER A.R.S. § 25-324 BECAUSE: I) THE LAW OF THE CASE IS THAT RYCHLIK IS THE SUPERIOR WAGE EARNER OBLIGATED TO PAY SODERGREN SUPPORT OBLIGATIONS; *AND*, II) IT WAS ISSUED AS A RESULT OF SODERGREN'S UNREASONABLE POSITION.**

"A judgment which is ambiguous and uncertain may be read in connection with the entire record and construed accordingly." *Benson v. State ex rel. Evman*, 108 Ariz. 513, 515, 502 P.2d 1332, 1334 (1972) (citation omitted). "Like all other exceptions to discharge, analysis. . . begins with the principal that discharge is favored under the Bankruptcy Code and the party asserting non-dischargeability has the burden of demonstrating that the obligation at issue is actually in the nature of alimony, maintenance or support." *In re Gibson*, 103 B.R. 218, 220 (B.A.P. 9th Cir. 1989)(*citing Tilley v. Jessee*, 789 F.2d 1074, 1077 (4thCir. 1986)). In determining whether or not an obligation is a domestic support obligation, "the court must look to the intent of the parties and the substance of the obligation." *In re Gibson*, 103 B.R. at 221 (internal quotations and citations omitted). Factors include the need of the recipient spouse and the relative income of the parties. *Id*.

A.R.S. § 25-324 governs attorney fees in divorce proceedings. Subsection (A) requires the Court to consider "…the financial resources of both parties and the reasonableness of the positions each party has taken…" before awarding attorney fees. In addition, "[t]he court may make these findings before, during or after the issuance of a fee award." *Id*. Subsection (B) requires the issuance of attorney fee sanctions for frivolous filings.

The Rychlik Award is ambiguous as it does not state if it is issued as a sanction or as support so this Court must look to the entire record. The Divorce Case record is clear that it can only be a sanction. The financial resources test was already decided. Before signing the Rychlik Award, the Family Court determined that Rychlik has superior financial resources in the Decree and ordered Rychlik to pay Sodergren domestic support obligations, not the other way around. Additionally, the Family Court awarded Sodergren $57,294 in attorney fees five months prior to the Rychlik Award. Rychlik does not argue in the Fee Application that Sodergren has superior resources or that he needs the support. Instead, he only argued that attorney fees should be granted because of Sodergren's "clearly

unreasonable…position that it was best to relocate the children to Illinois, only to thereafter contend it is in their best interests to remain in Arizona."

Thus, the **only** basis for the Rychlik Award was either: 1) Sodergren's "clearly unreasonable" position under A.R.S. § 25-324(A); or, 2) frivolousness under A.R.S. § 25-324(B).  Either way, the Rychlik Award does not change the financial necessity law of the case, is purely a sanction based *only* on behavior and cannot be a "domestic support obligation".  Because the Rychlik Award is not a "domestic support obligation" as the term is defined in 11 U.S.C. § 101(14A), a Chapter 13 discharge entered in this bankruptcy case will discharge Sodergren of her obligation to Rychlik pursuant to the Rychlik Award under 11. U.S.C. § 1328(a).

## CONCLUSION

For the foregoing reasons, Sodergren respectfully requests that this Court issue an Order declaring that the Rychlik Award is not a domestic support obligation, that the Rychlik Award is dischargeable under 11 U.S.C. § 1328(a), and any further relief that the Court deems just and proper.

DATED: February 1, 2018            **THE TURNAROUND TEAM PLLC**

*/s/Kyle A. Kinney*
Kyle A. Kinney
*Attorneys for Debtor*

1  I certify that the foregoing was submitted
   on February 1, 2018 to the United States
2  Bankruptcy Court for filing and
   transmittal of notice of electronic filing
3  to the ECF registrants appearing in this
   case, and by email to:
4

5  Russell Brown
   service@ch13bk.com
6  jmorales@ch13bk.com
7  *Chapter 13 Trustee*

8  SCOTT L. GREEVES on behalf of
   Creditor Daniel F Rychlik
9
   scottgreevesesq@gmail.com,
10 glenn.roethler@gmail.com,igngprecf@g
   mail.com,helpinghandslegalservice@gm
11 ail.com

12 LAWRENCE D. HIRSCH on behalf of
   Creditor Parker Schwartz, PLLC
13 lhirsch@psazlaw.com

14 By:*/s/ Paula D. Hillock*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Kyle A. Kinney (Bar No. 027189)
2  **THE TURNAROUND TEAM, PLLC**
   Western Skies Business Center
3  1166 East Warner Road, Suite 205
   Gilbert, AZ 85296
4  Phone: (480) 420-1999 | Fax: (480) 522-1515
5  Kyle@turnaroundteam.com
   *Attorneys for Debtor*
6

7

8          **UNITED STATES BANKRUPTCY COURT**

9              **DISTRICT OF ARIZONA**

10 | In re: | Chapter 13 |
11 | Gabrielle Ann Sodergren, | Case No.:    2:16-bk-12689-SHG |
   |                         Debtor. | Adv. Pro.:    2:17-ap-00267-SHG |
12
13 |  | **PLAINTIFF/COUNTER-** |
14 | Gabrielle Ann Sodergren, | **DEFENDANT'S SEPARATE** |
   |                    Plaintiff/Counter-defendant, | **STATEMENT OF FACTS IN SUPPORT** |
15 |          vs. | **OF MOTION FOR SUMMARY** |
16 | Daniel Rychlik, | **JUDGMENT** |
17 |                    Defendant/Counterclaimant. |  |
18

19     Plaintiff/Counter-Defendant Gabrielle Sodergren ("Sodergren"), by and through

20 counsel undersigned, hereby submits her Separate Statement of Facts ("SSOF") in Support

21 of her Motion for Summary Judgment in support of her two claims against Daniel Rychlik

22 ("Rychlik") as set-forth in her First Amended Complaint and in opposition to the

23 Counterclaim filed by Rychlik pursuant to FRBP 7056 and FRCP 56(c)(1).

24                                    <u>**FACTS**</u>

25     1.    Rychlik and Sodergren were married and have four minor children together.

26     2.    A petition for divorce was filed in Maricopa County Superior Court at Case

27

28

Number CV2011-090965[1] (the "Divorce Case").    A divorce decree was signed December 14, 2011 and filed with the Clerk of Court on December 16, 2011 ("Decree").    A true and correct copy of the Decree is attached hereto as **Exhibit "1"**[2] and incorporated by reference as though fully set-forth herein.

3.    The Decree finds a substantial disparity in the parties financial resources with Rychlik having considerably more resources and awards Sodergren both Child Support and Spousal Maintenance after an extensive analysis of the principles set-forth in *Schroeder v. Schroeder*, 161 Ariz. 316, 321, 778 P.2d 1212, 1217 (1989) and the statutory factors of A.R.S. § 25-319(B) (*see* **Exhibit "1"** at pages 13-20).

4.    After receipt of a letter from Sodergren stating her intention to relocate to Illinois with the parties' minor children, Rychlik filed a "Petition to Prevent Relocation" in the Divorce Case in November, 2013 (the "Relocation Proceedings").    *See* Divorce Case docket.

5.    A year later, on November 6, 2014, Rychlik filed an "Emergency Petition for Temporary Orders Without Notice re: Legal Decision Making and Parenting Time." *See* Divorce Case docket.

6.    On November 21, 2014, the Family Court conducted an extended evidentiary hearing on the emergency petition.  *See* Divorce Case docket.

7.    On March 31, 2015, the Family Court issued a minute entry that, among other things, granted Sodergren's request for attorney fees and costs.  *See* Divorce Case docket.

8.    On April 13, 2015, Sodergren withdrew her request to relocate the children. *See* Divorce Case docket.

---

[1]  The Court may take judicial notice of the entire Divorce Case pursuant to Rule 201, Federal Rules of Evidence.  Due to convenience, only certain Divorce Case documents are attached as exhibits and other referenced documents will be provided upon request of the Court. Rychlik is in possession of all referenced documents as he is a party to the Divorce Case.

[2]  Various redactions are made to protect the identity of minor children and/or other potentially sensitive information including, but not limited to, medical evaluations of the parties. An un-redacted copy can be filed under seal at the request of the Court.

9. On July 23, 2015, the Family Court signed a judgment awarding Sodergren $57,294 in attorney fees and costs, plus interest ("Plaintiff's Award"). A true and correct copy of Plaintiff's Award is attached hereto as **Exhibit "2"** and incorporated by reference as though fully set-forth herein.

10. On July 27, 2015, Rychlik filed a "Motion for Summary Judgment Re: Petition to Prevent Relocation" (the "MSJ"), where he argued that his petition to prevent relocation should be granted, because Plaintiff had just expressed her intent to remain in Arizona anyway. *See* Divorce Case docket.

11. Sodergren did not file a response to the MSJ as the entire issue was moot at that point. *See* Divorce Case docket.

12. On September 25, 2015, the Family Court granted the MSJ and sets-forth a briefing schedule for a fee application. *See* Divorce Case docket.

13. On October 23, 2015, Rychlik applied for attorney fees for fees incurred during the Relocation Proceedings (the "Fee Application"). A true and correct copy of the Fee Application is attached hereto as **Exhibit "3"** and incorporated by reference as though fully set-forth herein.

14. Sodergren responded to the Fee Application, and Rychlik replied. *See* Divorce Case docket.

15. In the Fee Application, Rychlik argued he should be awarded fees based on Sodergren's "clearly unreasonable…position that it was best to relocate the children to Illinois, only to thereafter contend it is in their best interests to remain in Arizona." *See* Fee Application at ¶ 20.

16. In the Fee Application, Rychlik does **not** argue that fees or costs should be awarded due to a disparity in financial resources or any other reason relating to domestic support.

17. The Fee Application cites A.R.S. § 24-324 as the sole legal authority for the issuance of attorney fees and costs. The Fee Application does not state if the request was made pursuant to Subsection (A) or (B).

3

1    18.    On December 18, 2015, the Family Court entered judgment for attorney fees

2 and costs in favor of Rychlik in the amount of $17,181 ("Rychlik Award").  The Rychlik

3 Award does not characterize the award as either a domestic support obligation or a sanction.

4 A true and correct copy of the Rychlik Award is attached hereto as **Exhibit "4"** and

5 incorporated by reference as though fully set-forth herein.

6    19.    The Rychlik Award does **not** make a finding that the attorney fees and costs

7 were awarded due to a disparity in financial resources.  Stated another way, the Court did

8 not change its findings in the Decree that Rychlik has considerably more financial resources

9 than Sodergren.

10    20.    The Family Court has not made any finding regarding the parties financial

11 resources other than that Rychlik has considerably more financial resources.  *See* Divorce

12 Case docket.

13    DATED: February 1, 2018          **THE TURNAROUND TEAM PLLC**

14                                     */s/    Kyle A. Kinney*

15                                     Kyle A. Kinney
                                       *Attorneys for Debtors*
16

17 I certify that the foregoing was submitted
18 on February 1, 2018 in the United States
   Bankruptcy Court for filing
19 and transmittal of notice of electronic
   filing to the ECF registrants appearing in
20 this case, and by email to:

21
22 Russell Brown                       SCOTT L. GREEVES on behalf of
   service@ch13bk.com                  Creditor Daniel F Rychlik
23 jmorales@ch13bk.com                 scottgreevesesq@gmail.com,
   *Chapter 13 Trustee*                glenn.roethler@gmail.com,
24                                     igngprecf@gmail.com
                                       helpinghandslegalservice@gmail.com
25 LAWRENCE D. HIRSCH on behalf of
26 Creditor Parker Schwartz, PLLC
   lhirsch@psazlaw.com
27
   By:*/s/ Paula D. Hillock*
28

# EXHIBIT 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

FC 2011-090965                                    12/14/2011

HONORABLE DAVID B. GASS                  CLERK OF THE COURT
                                                 L. Nevenhoven
                                                    Deputy

IN RE THE MARRIAGE OF
DANIEL RYCHLIK                          MELVIN STERNBERG

AND

GABRIELLE RYCHLIK                       STEVEN FEOLA


                                        DOCKET-FAMILY COURT-SE
                                        FAMILY COURT SERVICES-CCC
                                        RONN LAVIT
                                        1130 E MISSOURI #510
                                        PHOENIX AZ  85014


## DECREE OF DISSOLUTION OF MARRIAGE


        The Evidentiary Hearing in this matter was conducted on November 21, 2011.  During
the proceedings, the Court heard from the witnesses, including the parties.  The Court has since
considered the evidence, including the demeanor of the witnesses, reviewed the exhibits as well
as the case history, and considered the parties' arguments.  After significant deliberation, the
Court makes the following findings and enters the following orders.

        THE COURT FINDS as follows:

A.      At the time this action was commenced at least one of the parties was domiciled
        in the State of Arizona and that said domicile had been maintained for at least 90
        days prior to the filing of the Petition for Dissolution of Marriage.
B.      The conciliation provisions of A.R.S. § 25-381.09 have either been met or do not
        apply.
C.      The parties were married on May 15, 1999.  By operation of law, the marital
        community is deemed to have terminated on February 10, 2011.

Docket Code 903                  Form D000C                              Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

FC 2011-090965

12/14/2011

D.    The marriage is irretrievably broken and there is no reasonable prospect for reconciliation.
E.    There are four minor children, common to the parties, namely: ███████████, ███████, █████████, ████, and █████).
F.    Mother is not pregnant.
G.    This was not a covenant marriage.
H.    To the extent that it has jurisdiction to do so, the court has considered, approved and made provision for the maintenance of each spouse and the division of property and debts.

Overall, the Court notes that both parents keep their secrets and have their weaknesses.

Mother has not provided stellar care for the children's medical and dental care. Mother has been secretive on issues related to the children. ██████████ ████████████████

Father's secrecy and lack of candor relates to the financial side of the parent's relationship. Father has not been open about the available funds, where they were spent, and why.

So, each side has his or her secrets. Each side sought a gain from protecting those secrets. But the time for secrets has passed. Each parent must become engaged and open about what the parents' four children are experiencing and need. The Court is hopeful that the parents will set aside their old approach and will remain open to a healthy co-parenting relationship.

## DISSOLUTION OF MARRIAGE

**IT IS ORDERED** dissolving the marriage of the parties and restoring each party to the status of a single person.

### CUSTODY AND PARENTING TIME

### Jurisdictional Findings

**THE COURT FINDS** that Mother and Father have four minor children in common: ████████, ████████████, ██████████ and Zoe (born October 13, 2009). The parties and the minor children have resided in Arizona continuously for at least the six months preceding the filing of the petition for

Docket Code 903                    Form D000C                           Page 2

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

FC 2011-090965                                    12/14/2011

dissolution.  This Court, therefore, has jurisdiction as Arizona is the "home state" of the minor children.  See A.R.S. § 25-1031.

<u>**Best Interest Findings: A.R.S. § 25-403**</u>

The Court has considered the agreement of the parties and the factors under A.R.S. § 25-403.  The parties have stipulated to a finding that the agreed upon plan is in the best interests of the minor children.

**THE COURT FURTHER FINDS** that there is no history of domestic violence (A.R.S. § 25-403(E) and § 25-403.03), any drug related offenses of either party (A.R.S. § 25-403.04), or any sexual offenses (A.R.S. § 25-403.05) sufficient to preclude the award of joint legal custody as agreed.

**THE COURT FURTHER FINDS** that the parties had a full custody evaluation performed by Dr. Joel Glassman.  *See* Exhibit 19.  The parties agreed to accept Dr. Glassman's recommendations, with two exceptions:

Mother wants a three-month transition period into the 5-2-2-5 schedule once Father has adequate living quarters.

Father wants final decision making authority with regard to the children's education.

During the Evidentiary Hearing, Mother also said that she did not believe Father should have final decision making on the children's medical and dental issues.

<u>**Best Interest Findings: A.R.S. § 25-403**</u>

The best interest of a child is the primary consideration in awarding child custody.  *Hays v. Gama*, 205 Ariz. 99, 102, ¶ 18, 67 P.3d 695, 698, ¶ 18 (2003).  The children's best interest is paramount in custody determinations.  Section 25-403(A) enumerates specific factors for the Court to consider, among other relevant factors, in making a determination concerning a child's best interests.  *See* A.R.S. § 25-403(A) ("The Court shall determine custody, either originally or on petition for modification, in accordance with the best interests of the child.  The Court shall consider all relevant factors including [the ten factors enumerated in the subsection].").

In making a custody determination, the Court is mindful that as a matter of public policy, absent evidence to the contrary, "it is in a child's best interest:  (1) To have substantial, frequent, meaningful and continuing parenting time with both parents[; and] (2) To have both parents participate in decision-making about the child."  *See* A.R.S. § 25-103(B).

Docket Code 903                        Form D000C                        Page 3

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965

12/14/2011

**THE COURT FINDS** as follows regarding the children's best interests pursuant to A.R.S. § 25-403:

1. *The wishes of the child's parent or parents as to custody.*

2. *The wishes of the child as to the custodian.*

3. *The interaction and interrelationship of the child with the child's parent or parents, the child's siblings and any other person who may significantly affect the child's best interest.*

4. *The child's adjustment to home, school and community.*

5. *The mental and physical health of all individuals involved.*

Docket Code 903                    Form D000C                    Page 4

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

FC 2011-090965

12/14/2011



Docket Code 903                    Form D000C                    Page 5

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965

12/14/2011

6. *Which parent is more likely to allow the child frequent and meaningful continuing contact with the other parent.*

███████████████████████████████████████████████

7. *Whether one parent, both parents, or neither parent has provided primary care of the child.*

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

8. *The nature and extent of coercion or duress used by a parent in obtaining an agreement regarding custody.*

███████████████████████████████████████████████

9. *Whether a parent has complied with chapter 3, article 5 of title 25, Arizona Revised Statutes.*

███████████████████████████████████████████████

10. *Whether either parent was convicted of an act of false reporting of child abuse or neglect under A.R.S. § 13-2907.02.*

███████████████████████████████████████████████

Docket Code 903                    Form D000C                    Page 6

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

FC 2011-090965

12/14/2011

11.  *In addition to the foregoing, the Court must also consider any history of domestic violence (A.R.S. § 25-403(E) and 25-403.03), any drug related offenses of either party (A.R.S. § 25-403.04) and any sexual offenses (A.R.S. § 25-403.05).*

**Legal Custody**

THE COURT FURTHER FINDS

IT IS THEREFORE ORDERED

THE COURT FURTHER FINDS

THE COURT FURTHER FINDS

IT IS THEREFORE ORDERED

Docket Code 903                     Form D000C                          Page 7

# SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965

12/14/2011

### Custody Terms

**Parental Access To Records And Information-**

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

**Educational  Arrangements-**

████████████████████████████████████████████████████
████████████████████████████████████████████████████

**Medical And Dental Arrangements-**

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

**Parental Communication-**

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

**Relocation-** ████████████████████████████████████████
parent first secures the written consent of the other or secures a court order authorizing the move.

**Mediation Or Conciliation Services-** ██████████████████
████████████████████████████████████████████████████

Docket Code 903                    Form D000C                    Page 8

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965

12/14/2011

**Presumptive Decision Making Authority**

**Parenting Time**

A. Regular Access:

1. Mother and Father:

Week One:

Week Two:

Docket Code 903                    Form D000C                    Page 9

### SUPERIOR COURT OF ARIZONA
### MARICOPA COUNTY

FC 2011-090965

12/14/2011

**Week Three (Week One repeated):**

███████████████████████████████████████

**Week Four (Week Two repeated):**

███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

2. ████████████████████████████████████████████████████
███████████████████

**B. Holiday and Summer Vacation Guidelines:**

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

**C. Summer Access:**

███████████████████████████████████████████

Docket Code 903                    Form D000C                    Page 10

# SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965

12/14/2011

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

### D. Holidays, School Breaks and Special Occasions:

**1.** Christmas, Thanksgiving, and Easter are major holidays that shall be alternated annually.

**2.** Father's Day

████████████████████████████████████████████

████████████████████████████████████████████

**4.** Spring Break, Winter Recess, and Thanksgiving ████████████████

**5.** Spring Break ████████████.

████████████████████████████████████████████

Docket Code 903                    Form D000C                    Page 11

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965

12/14/2011



**6. Winter Recess**

**7.** Easter shall be observed as an overnight holiday from Saturday 6:00 p.m. until

**8. Monday National Holidays**

**8.** July 4th

**9. During odd-numbered years:**

**9. During even-numbered years:**

Docket Code 903                    Form D000C                    Page 12

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965

12/14/2011

Recess ████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████

**E.  Parenting Coordinator**

████████████████████████████████████████
████████████████████████████████████████

## **CHILD SUPPORT**

**THE COURT FINDS** that the relevant financial factors and the discretionary allowances and adjustments which the Court will allow for a current calculation of child support pursuant to the Arizona Child Support Guidelines are set forth in the Child Support Worksheet, which the Court hereby incorporates and adopts as its findings with respect to child support.

**THE COURT FURTHER FINDS** that in applying these findings under the Arizona Child Support Guidelines, no deviation is appropriate regarding the obligation to pay child support. The Court purposely does not modify the earlier orders regarding support and payments as they were appropriate on a temporary basis and do not require any retroactive modification.

**IT IS THEREFORE ORDERED** that Father shall pay to Mother as and for child support the sum of **$1,009.77** per month, payable through the Support Payment Clearinghouse on the 1st day of each month commencing December 1, 2011 by Wage Assignment.

**LET THE RECORD REFLECT** that an Electronic Order of Assignment is issued.

**IT IS FURTHER ORDERED** that at any time an Order of Assignment is not paying the child support obligation in full, Father shall make full and timely payments directly to the Support

Docket Code 903                          Form D000C                                    Page 13

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

FC 2011-090965                                                12/14/2011

Payment Clearinghouse in accordance with the attached "Instructions for Making Support Payments through the Clearinghouse."

All payments shall be made through the Support Clearinghouse via an automatic Order of Assignment issued this date. Father is advised that until such time as the Order of Assignment becomes effective, Father has an affirmative obligation to pay the child support directly to the Support Clearinghouse.

All obligations for child support for each child shall terminate upon a finding of this Court that the child has attained the age of 18 years, or is otherwise emancipated. If any child attains the age of 18 years while attending high school, support shall continue to be provided during the period in which that child is actually attending high school but only until the child reaches 19 years of age. Support for special needs children may continue past the age of 18 based on a finding of this Court. Provisions for health insurance and non-insured health expenses for the children, as provided for below, shall be deemed to be additional child support and shall be enforceable as such.

Pursuant to A.R.S. § 25-503(I), the right of a parent, guardian or custodian to receive child support payments as provided in this Order vests as each installment falls due. Each vested child support installment is enforceable as a final judgment by operation of law.

### Insurance and Unreimbursed Medical Expenses

**IT IS FURTHER ORDERED** that Father shall provide medical insurance for the benefit of the parties' minor child, and shall provide an insurance card and claim filing information/forms to the other parent. All medical, dental and orthodontia expenses incurred for the health and protection of the child not covered by insurance shall be paid 76% by Father and 24% by Mother.

**IT IS ORDERED** that unless good cause is shown, any request for payment or reimbursement of uninsured medical, dental, and/or vision costs must be provided to the other parent within 180 days after the date the services occur. The parent responsible for payment or reimbursement must pay his or her share, as ordered by the Court, or make acceptable payment arrangements with the provider or person entitled to reimbursement within 45 days after receipt of the request.

Both parents must use their best efforts to obtain services that are covered by the insurance. A parent who is entitled to receive reimbursement from the other parent for medical costs not covered by insurance shall, upon request of the other parent, provide receipts or other evidence of payments actually made.

Docket Code 903                    Form D000C                         Page 14

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965                                    12/14/2011

### Tax Deduction For The Children As Dependents

**IT IS ORDERED** that the parties may claim the eligible dependent as follows:

| Child's Name | Date of Birth | Parent Entitled To Deduction For Each Calendar Year | | | |
|---|---|---|---|---|---|
| | | **2011** | **2012** | **2013** | **2014** |
| ▇ | ▇ | Father | Father | Father | Father |
| ▇ | ▇ | Father | Father | Father | Father |
| ▇ | ▇ | Mother | Father | Mother | Father |
| ▇ | ▇ | Father | Mother | Father | Mother |

**IT IS FURTHER ORDERED** that if Father is not current in the total Court-ordered child support obligation for the current calendar year and/or any Court-ordered arrearage payment due during the calendar year for which the exemption is to be claimed but nevertheless claims the children for tax purposes, Father shall pay directly to the Support Payment Clearinghouse 100 percent of any and all tax refunds that Father receives, which shall be applied first towards Father's current child support obligation, Father's current spousal maintenance obligation, and then towards any arrearage.

### Exchange Of Income Information

**IT IS FURTHER ORDERED** that the parties shall exchange income information every 24 months. Said financial information shall include, but not be limited to: personal tax returns with all schedules, affidavits of financial information, earning statements and other such documentation necessary to establish or prove the income of either party. In addition, at the time of the exchange of financial information, the parties shall also exchange residential addresses and the names and addresses of their respective employers.

### SPOUSAL MAINTENANCE

Mother seeks a total of $8,000.00 between child support and spousal maintenance. When the Court considers the impact of spousal maintenance on child support, Mother is in fact asking for an award of spousal maintenance in the amount of $7,600.00 per month. Mother does not explain how long she wants it to continue. Father opposes the award, asserting that Mother does not qualify for an award of spousal maintenance to such an extent. Father does not disagree that Mother qualifies for spousal maintenance. Instead, he argues that Mother should receive $2,500.00 per month for approximately 32 months.

Docket Code 903                      Form D000C                          Page 15

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965                                        12/14/2011

The determination of spousal maintenance is controlled by A.R.S. § 25-319. The threshold question is entitlement, which is controlled by subsection (A) of the statute. It provides as follows:

> In a proceeding for dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of the marriage by a court that lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse for any of the following reasons if it finds that the spouse seeking maintenance:
>
> 1. Lacks sufficient property, including property apportioned to the spouse, to provide for that spouse's reasonable needs.
>
> 2. Is unable to be self-sufficient through appropriate employment or is the custodian of a child whose age or condition is such that the custodian should not be required to seek employment outside the home or lacks earning ability in the labor market adequate to be self-sufficient.
>
> 3. Contributed to the educational opportunities of the other spouse.
>
> 4. Had a marriage of long duration and is of an age that may preclude the possibility of gaining employment adequate to be self-sufficient.

THE COURT FINDS that in accordance with subsection (A) above, Mother is entitled to an award of spousal maintenance because she lacks sufficient property, including the property being apportioned to her, to provide for he reasonable needs. She also lacks earning ability in the labor market adequate to be self-sufficient without some additional training.

The Court, therefore, must address the amount and duration of spousal maintenance. In determining the amount and duration, "the current aim [of spousal maintenance] is to achieve independence for both parties and to require an effort toward independence by the party requesting maintenance." *Schroeder v. Schroeder*, 161 Ariz. 316, 321, 778 P.2d 1212, 1217 (1989). Noting this underlying principle, the Court must consider the statutory factors of A.R.S. § 25-319(B). Those factors, along with this Court's findings based thereon, are as follows:

1. *The standard of living established during the marriage.*

Docket Code 903                      Form D000C                      Page 16

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965                                    12/14/2011

The parents have lived a very comfortable life style.   The marital residence is in McDowell Mountain Ranch, which is a nice community.  The community has two pools, hiking paths, and jogging paths.  The home is three thousand square feet.  The parents also have a weekend home in Flagstaff, Arizona.  They have been driving nice vehicles, though Mother's vehicle has hail damage that was not repaired.

*2.  The duration of the marriage.*

The marriage lasted from May 5, 1999 until February 10, 2011, which is just under twelve years.

*3.  The age, employment history, earning ability and physical and emotional condition of the spouse seeking maintenance.*

Before the marriage, Mother worked as a neo-natal intensive care nurse.  After the parents married and began a family, Mother stopped working to take care of the children.  Father continued his work as a physician.

*4.   The ability of the spouse from whom maintenance is sought to meet that spouse's needs while meeting those of the spouse seeking maintenance.*

Father works as a physician.  He specializes in fertility matters.  Father began his own fertility center in October 2009, Fertility Centers of Arizona, P.C. (FCA).  Father used significant community assets to establish FCA, including monies that he received in settlement when he left his previous employment.  Also, Father removed monies from Father's retirement account and put the monies into FCA; those funds also were a community asset.

*5.   The comparative financial resources of the spouses, including their comparative earning abilities in the labor market.*

Father will have far greater earning capacity than Mother, even if Mother returns to nursing.  If Mother were to return to nursing, she would need to complete a short refresher course and likely could find work within six to twelve months of completing the course.  Even as an experienced neo-natal intensive care nurse, Mother will not be able to earn as much as Father earns as a physician.

Father does much to establish that he is not earning as much as he has in the past.  For the most part, Father's testimony is not credible.  First, Father recognizes the cyclical nature of his area of specialty, fertility.  In years past, the business was down in the fall and

Docket Code 903                    Form D000C                    Page 17

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965                                              12/14/2011

around the holidays. This year is no exception. Father says that everyone in FCA took a pay cut, but Father fails to account for the fact that FCA paid him back $71,565.57 on a loan that the community made to FCA. When the Court takes this amount into account, Father has grossly understated his actual earnings. In reality, Father easily could draw approximately $15,500.00 per month from FCA.

6. *The contribution of the spouse seeking maintenance to the earning ability of the other spouse.*

Mother contributed to Father's success in many ways. She relocated with Father for his career, not her career. Mother abandoned her nursing career to become a homemaker and the primary child care provider for the parents' four children. Mother's efforts allowed Father to focus on developing his skills, allowing him to open his own practice at FCA after he left his previous firm.

7. *The extent to which the spouse seeking maintenance has reduced that spouse's income or career opportunities for the benefit of the other spouse.*

Mother opted to forego her career as a neo-natal intensive care nurse to care full-time for the parents' children. With that decision, which the parents made together, Mother allowed her skills to deteriorate and in 2010, her license in Illinois expired. Mother did not intentionally allow her Illinois license to lapse, but it did. At this point, even with a license from Illinois, Mother must take a refresher course to re-enter the nursing field.

8. *The ability of both parties after the dissolution to contribute to the future educational costs of their mutual children.*

Without help from Father, Mother will not have the opportunity to get her career back on track so that she can become self-supporting, let alone contribute to their mutual children's future educational costs.

9. *The financial resources of the party seeking maintenance, including marital property apportioned to that spouse, and that spouse's ability to meet that spouse's own needs independently.*

Unless Mother completes the refresher course and secures a job in the nursing field, Mother will not be able to self-supporting.

Docket Code 903                        Form D000C                        Page 18

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965                                                    12/14/2011

10. *The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment and whether such education or training is readily available.*

Mother says that she does not want to pursue a nursing career at this point. She wants to go to school and become a teacher. A teaching career would result in Mother having a substantially lower earning capacity, would take several years longer to secure the necessary training and then a job, and likely never would allow her to be self-supporting given that the parents have four children in common.

In reality, Mother must be practical. She is not deciding on a college major in a vacuum. She must decide on an effective strategy to become self-supporting. Pursuing a career in teaching is something Mother is free to do. But for now, she must return to her first career choice, which is the most efficient and effective means for her to become self-supporting.

11. *Excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common.*

Father used significant community resources to start his own fertility center. The center at this point has no value. However, without the community contributions, FCA either would not exist or would have an even greater debt load. As a result of the community's contribution, Father can continue to pursue lucrative employment in his chosen field.

12. *The cost for the spouse who is seeking maintenance to obtain health insurance and the reduction in the cost of health insurance for the spouse from whom maintenance is sought if the spouse from whom maintenance is sought is able to convert family health insurance to employee health insurance after the marriage is dissolved.*

The evidence did not establish Mother's actual costs, though they likely would run close to Father's costs to insure himself, which are $366.40.

13. *All actual damages and judgments from conduct that results in criminal conviction of either spouse in which the other spouse or child was the victim.*

This factor does not apply.

**THE COURT FINDS** that Mother is entitled to an award of spousal maintenance in the amount of $5,000.00 for a term of 24 months and $2,000.00 for a term of 36 months.

Docket Code 903                          Form D000C                          Page 19

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

FC 2011-090965                                        12/14/2011

**THE COURT FURTHER FINDS** that Father is capable of paying spousal maintenance in the amount of $5,000.00 for a term of 24 months and $2,000.00 for a term of 36 months.

**IT IS THEREFORE ORDERED** that effective as of December 1, 2011, Father shall pay Mother spousal maintenance in the amount **$5,000.00** for a term of 24 months and **$2,000.00** for a term of 36 months. The 24 month period will allow Mother to enroll in and complete the refresher nursing class and allow her the time needed to secure a job that fits with her schedule with the children. The 36 month period will allow Mother the time that she needs to advance and secure the seniority she needs to increase her earning ability and become self sustaining in the nursing field.

All spousal maintenance paid by Father to Father shall be tax deductible for Father and shall be deemed income to Mother for income tax purposes. Further, the award shall be modifiable as to amount and duration in accordance with A.R.S. § 25-327. It shall terminate upon the death or remarriage of Mother.

The spousal maintenance payments shall be made through the Support Clearinghouse. An automatic Order of Assignment is issued. Until it becomes effective, Father shall be responsible for ensuring that the payment is made through the Support Clearinghouse in a timely fashion.

## DIVISION OF PROPERTY AND DEBTS

### Community/Sole and Separate Property Claims and Debts

The Court shall divide any disputed property in accordance with the property's character. Property is characterized by the time of its acquisition. If acquired by either spouse before marriage or acquired during marriage by gift, devise, or descent, property is characterized as separate property. A.R.S. § 25-213(A). The Court shall assign each spouse's sole and separate property to that spouse. A.R.S. § 25-318(A).

Property acquired by either spouse during marriage is characterized as community property (with the exceptions of property acquired by gift, devise, or descent). A.R.S. § 25-211(A). There is a presumption that any property acquired by either spouse during marriage is community property, unless demonstrated otherwise by clear and convincing evidence. *See Sommerfield v. Sommerfield*, 121 Ariz. 575, 578, 592 P.2d 771, 774 (1979). Any property acquired by either spouse outside of Arizona shall be deemed to be community property if such property would have been characterized as community property had it been initially acquired in Arizona. A.R.S. § 25-318(A).

Docket Code 903                    Form D000C                           Page 20

# SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965                                           12/14/2011

### Equitable Division

The Court shall divide community property equitably, although not necessarily in kind, without any regard to marital misconduct.  A.R.S. § 25-318(A).  As a general presumption, equitable division requires that community property be divided substantially equally.  *See Toth v. Toth*, 190 Ariz. 218, 221, 946 P.2d 900, 903 (1997).  However, the court may order an unequal division of community property in consideration of excessive or abnormal expenditures or the destruction, concealment, or fraudulent disposition of property. A.R.S. § 25-318(C).

When dividing property, the Court may consider all related debts and obligations. A.R.S. § 25-318(B).  To determine property's value, the court shall select a valuation date.  The selection of this valuation date rests within the wide discretion of the trial court and shall be tested upon review by the fairness of the result. *See Sample v. Sample*, 152 Ariz. 239, 242-43, 731 P.2d 604, 607-08 (Ct. App. 1986).

### Unequal Division of Property

Only rarely is unequal division of community property appropriate to achieve equity. *See Toth*, 190 Ariz. at 221, 946 P.2d at 903 (unequal division of property was appropriate because one spouse contributed substantially disproportionate separate funds compared to the other's contribution); *see also Flower v. Flower*, 223 Ariz. 531, 531, 225 P.3d 588, 588 (Ct. App. 2010) (unequal division of property was appropriate because the parties incurred substantial community debt to benefit one spouse's separate property). *But see Inboden v. Inboden*, 223 Ariz. 542, 547, 225 P.3d 599, 604 (Ct. App. 2010) (vacating an order for the unequal division of property because each spouse had contributed separate funds to joint property).

The Court shall consider all equitable factors before ordering an unequal division of community property , including: the length of the marriage, the contributions of each spouse to the community, the source of funds used to acquire the property to be divided, the allocation of debt, and any other factor that may affect the outcome. *See Inboden*, 223 Ariz. at 547, 225 P.3d at 604.

THE COURT FURTHER FINDS that this case does not present a unique set of facts or circumstances.  Therefore, an equal division of community property is appropriate to achieve equity.

### Real Property

THE COURT FINDS that Mother and Father owned a house at 16774 North 111th Street; Scottsdale, AZ 85255 (the marital residence) as community real property.  Mother and Father

Docket Code 903                     Form D000C                          Page 21

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965                                           12/14/2011

transferred the marital residence into Father's sole name, and Mother executed a disclaimer deed. Father will move back into the marital residence. Mother will secure her own residence, but the community personal property must be divided and she will need time to move into the new residence. Mother also needs a short period of spousal maintenance to allow her to gather the resources she needs to rent a house.

**THE COURT FURTHER FINDS** that Mother and Father owned a vacation house at 2474 North Whispering Pines Way; Flagstaff, AZ 86004 (the vacation house). Mother and Father transferred the vacation house into Father's sole name, and Mother executed a disclaimer deed.

**THE COURT FURTHER FINDS** that as a result of the liens on marital residence and the vacation house, including liens associated with FCA to the Small Business Association (SBA), there is no equity those properties.

**IT IS THEREFORE ORDERED** that Mother have sole and exclusive use of the marital residence until January 30, 2012. Mother shall vacate the marital residence by January 30, 2012.

**IT IS THEREFORE ORDERED** awarding to Father, the marital residence, together with all debts and encumbrances, including all liens by SBA. Father shall have sole and exclusive use of the marital residence from and after February 1, 2012.

**IT IS FURTHER ORDERED** that the vacation house shall be sold. The SBA shall receive any profit. If there is no profit and the vacation house is sold through a short sale, Father shall be solely responsible for liability, including any monies owing to the SBA.

### Personal Property

**IT IS ORDERED** that Mother and Father shall divide equally the furnishings in both the marital residence and the vacation house. If Mother and Father cannot agree on the division, Irwin Harris shall be appointed as Special Master for purposes of dividing the furnishings. Mother and Father shall share the Special Master's fees, subject to reallocation by the Special Master. Each party also shall be responsible for his or her own moving and storage costs.

**IT IS FURTHER ORDERED** that Father shall prepare the 1991 American General Aircraft Corporation AGSB "Tiger" aircraft for sale and shall sell it. The parties shall divide equally any net profits. If the sale results in a net loss, Father shall be solely responsible for the loss. In determining whether the sale results in a net profit or a net loss, Father may deduct the cost of putting the Tiger into saleable condition. Father shall provide Mother with an accounting of the costs.

Docket Code 903                        Form D000C                        Page 22

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965                                                    12/14/2011

**IT IS FURTHER ORDERED** that Father is awarded as his sole and separate property, any interest in FCA, together with all liens and encumbrances.

**THE COURT FURTHER FINDS** that Mother and Father have a 10% ownership interest in a Reproductive Medical Institute, L.L.C (RMI). The Court has limited information about RMI itself, but the parties agree that the community owns a 10% interest in it. RMI's assets appear to be an office building. The parties agree that at this time, RMI owes more on the office building that the office building is worth.

**IT IS FURTHER ORDERED** that the community interest in the RMI, together with all liens and encumbrances, shall be divided equally between the parties. Counsel for Father and Mother shall prepare any necessary orders to divide the community interest in RMI.

**THE COURT FURTHER FINDS** that the community owns an entity named Medical Administrative Services Group, Ltd. (MASG). Father wants MASG awarded to him. Mother does not object.

**IT IS FURTHER ORDERED** that the community interest in MASG shall be awarded to Father as his sole and separate property, together with all liens and encumbrances.

**IT IS FURTHER ORDERED** that any tax refunds owing for monies paid during the marriage shall be divided equally. Father must provide Mother with an accounting of those funds in total within 10 calendar days of receiving the information. Neither Mother nor Father shall cash the IRS tax refund checks until both parents have the opportunity to review the payments to confirm whether they are for the period from before or from during the marriage.

### *The following orders are subject to the specific awards listed above.*

**IT IS ORDERED** Father is awarded as his sole and separate property, subject to any liens or encumbrances on the property, all vehicles (including the 2011 Toyota 4-Runner), household furniture, furnishings and appliances, and other personal property currently in his possession, including any non-retirement financial accounts in his sole name.

**IT IS FURTHER ORDERED** Mother is awarded as her sole and separate property, subject to any liens or encumbrances on the property, all vehicles (including the 2010 Toyota Sienna), household furniture, furnishings and appliances, and other personal property currently in her possession, including any non-retirement financial accounts in her sole name.

**IT IS FURTHER ORDERED** that any personal property that was the subject of previous orders and which has not been exchanged shall be exchanged on or before **January 30, 2012.**

Docket Code 903                    Form D000C                              Page 23

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965                                              12/14/2011

#### Life Insurance Policies

**IT IS ORDERED** denying Mother's request that the Court order Father to maintain life insurance policies in place to satisfy the award of spousal maintenance and child support.

#### Retirement Accounts

**THE COURT FINDS** that Father has a retirement account, from which he has taken a loan for FCA. Father argues that the Court should divide the retirement account subject to the loan. Mother argues that the division should be made without reduction for the loan and that repayment loan should be assigned to Father. Any benefit from that loan has inured solely to Father's benefit as he is being awarded FCA as his sole and separate property and the money from the loan was invested in FCA.

**IT IS ORDERED** that in fairly and equitably allocating the community assets and the community debts, Father shall be solely responsible for the following paying the loan on the retirement account.

**IT IS FURTHER ORDERED** that in fairly and equitably allocating the community assets and the community debts, Mother shall be awarded a one half interest in the retirement account without any reduction for the loan.

**IT IS FURTHER ORDERED** that in equitably dividing the property, the parties shall arrange to have any necessary qualified domestic relations orders (QDRO) prepared. The parties shall share the cost to have any QDROs prepared.

#### Debts

**THE COURT FINDS** that the following community debts were identified and that have not been addressed above:

1. Visa Credit Card in Mother's sole name          $ 14,000.00 approximately

2. Nordstrom Credit Card                            $    400.00 approximately

3. Ann Taylor Credit Card                           $Unknown

Docket Code 903                        Form D000C                        Page 24

# SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965                                    12/14/2011

| | | |
|---|---|---|
| 4. Pay It Later Credit Card | $ | 400.00 approximately |
| 5. Credit Card in Father's sole name | $ | 18,000.00 approximately |
| 6. Loan from Paternal Grandmother | $ | 90,000.00 approximately |

**THE COURT FURTHER FINDS** that Father offered no credible explanation of the debt from Paternal Grandmother so that debt is assigned to him for that reason without any further equalization.

**IT IS ORDERED** that in fairly and equitably allocating the community assets and the community debts, Father shall be solely responsible for the following:

| | | |
|---|---|---|
| 1. Visa Credit Card in Mother's sole name | $ | 14,000.00 approximately |
| 2. Nordstrom Credit Card | $ | 400.00 approximately |
| 3. Ann Taylor Credit Card | $Unknown | |
| 4. Pay It Later Credit Card | $ | 400.00 approximately |
| 5. Credit Card in Father's sole name | $ | 18,000.00 approximately |

**IT IS FURTHER ORDERED** as follows:

- Father shall be solely responsible for any credit card or debt in his name incurred after December 1, 2011.

- Mother shall be solely responsible for any credit card or debt in her sole name incurred after December 1, 2011.

- Any community debts that were not identified at the time of the trial shall be Father's sole responsibility as they would have been incurred before December 1, 2011.

- Father shall ensure that Mother's name is removed from all the credit accounts assigned to him in this Decree by June 30, 2012.

- Mother shall ensure that Father's name is removed from all the credit accounts assigned to her in this Decree by June 30, 2012.

Docket Code 903                     Form D000C                         Page 25

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

FC 2011-090965                                                    12/14/2011

- Each party shall pay any debt incurred by him or her respectively before the date of the marriage, including any remaining student loans.

- Each party shall pay any debt incurred by him or her respectively since the date of service of the Petition in this matter.

- Each party shall indemnify and hold harmless from any and all debts designated as the responsibility of that party by the terms set forth in this Decree.

<u>Equalization</u>

**THE COURT FINDS** that the above allocation of the real and personal property, when considered with the division of debt, is not fair and equitable under the circumstances and that further adjustments are necessary.

**THE COURT FURTHER FINDS** that to the extent that Father is awarded more or the community debt, Father also has received the greater benefit, including importantly the payment of $71,798.89 from FCA while this matter has been pending. $71,565.57 of this amount was for a loan that Father made to FCA with community funds. The difference of $233.32 is an overpayment. Father did not provide an actual accounting of the $71,565.57. Indeed, until the Court asked Father's accountant about the issue, it was not disclosed that FCA had paid Father the $71,565.57 on a community debt. Part of the concern for the Court is that Father and his accountant both testified that Father does not run personal expenses through FCA, but yet FCA has paid $71,565.57 to Father for personal, non-business expenses, without providing any accounting to Mother or to the Court. Further, FCA overpaid that liability by $233.32, which suggests that Father is running his personal expenses through FCA in some fashion.

**THE COURT FURTHER FINDS** that during the trial, Father testified that he used some of for $71,565.57 to pay litigation expenses that the Court assigned to him under the temporary orders, including the custody evaluation, his attorney fees, and Mother's attorney fees. Father also says that he used those monies to pay for both parents' living expenses under the temporary orders. Father's testimony is in direct contradiction to Father's portion of the Joint Pretrial Statement on page 15, line 20 through page 16, line 2. In the Joint Pretrial Statement, Father said that he used a $90,000.00 loan from Paternal Grandmother to make payments based on the Court's temporary orders. This point, among others, causes the Court to find that Father is not credible in terms of his explanation of his earnings or his expenses.

**THE COURT FURTHER FINDS** that Father secured the greater benefit from the repayment of the $71,565.57. Father continues to have that greater earning capacity because he

Docket Code 903                          Form D000C                          Page 26

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965                                                    12/14/2011

also is awarded the one community asset that is capable of producing income and a profit in the near future, FCA.

**THE COURT FURTHER FINDS** that it is appropriate to draw negative inference regarding the than $71,565.57 in loan repayments and where those payments in fact went.

**THE COURT FURTHER FINDS** that because of Father's credibility issues with regard to financial matters, Mother more accurately portrays the value of her vehicle and the impact of the hail damage. The Court, therefore, concludes that the 2010 Toyota Sienna awarded to Mother has no equity.

**THE COURT FURTHER FINDS** that Father was assigned the community debt for property that was not awarded to him in the amount of $32,800.00. This does not include the $90,000.00 alleged debt to Paternal Grandmother, which was not supported by credible testimony. Mother's share of that debt is $16,400.00.

**THE COURT FURTHER FINDS** that Mother's share of the $71,565.57 is $35,782.79. When that amount is reduced by $16,400.00, Father owes Mother $19,382.79 in equalization.

**IT IS THEREFORE ORDERED** that before January 31, 2012, Father shall pay to Mother $19,382.79 in equalization.

### RESTORATION OF NAME

Gabrielle Ann Rychlik asks on the record to have her name restored.

**IT IS THEREFORE ORDERED** restoring Gabrielle Ann Rychlik to her former name, Gabrielle Ann Sodergren (date of birth march 19, 1970, last four digits of social security number ***-**-8312).

**IT IS FURTHER ORDERED** directing the Office of the Clerk of the Superior Court to change the name on the caption of this case for Respondent from Gabrielle Ann Rychlik to her former name, Gabrielle Ann Sodergren, effective immediately.

### ATTORNEY FEES AND COSTS

Mother seeks an award of attorney fees and costs. Father seeks to have each parent bear his or her own fees and costs. An award of attorney fees and costs is governed by A.R.S. § 25-324. Section 25-324 provides as follows:

Docket Code 903                       Form D000C                              Page 27

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965                                              12/14/2011

A. The court from time to time, after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceedings under this chapter or chapter 4, article 1 of this title. On request of a party or another court of competent jurisdiction, the court shall make specific findings concerning the portions of any award of fees and expenses that are based on consideration of financial resources and that are based on consideration of reasonableness of positions. The court may make these findings before, during or after the issuance of a fee award.

B. If the court determines that a party filed a petition under one of the following circumstances, the court shall award reasonable costs and attorney fees to the other party:

    1. The petition was not filed in good faith.
    2. The petition was not grounded in fact or based on law.
    3. The petition was filed for an improper purpose, such as to harass the other party, to cause an unnecessary delay or to increase the cost of litigation to the other party.

C. For the purpose of this section, costs and expenses may include attorney fees, deposition costs and other reasonableness expenses as the court finds necessary to the full and proper presentation of the action, including any appeal.

D. The court may order all amounts paid directly to the attorney, who may enforce the order in the attorney's name with the same force and effect, and in the same manner, as if the order had been made on behalf of any party to the action.

THE COURT FINDS that there is substantial disparity of financial resources between the parties. Because of the disparity Father has considerably more resources available to contribute toward Mother's attorney fees and costs.

**THE COURT FURTHER FINDS** that the provisions of A.R.S. § 25-324(B) do not apply.

Docket Code 903                        Form D000C                         Page 28

# SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FC 2011-090965

12/14/2011

**IT IS FURTHER ORDERED** that Father shall pay a portion of Mother's reasonable

appropriate documentation to support an application for an award of attorney fees and costs, including a *China Doll* Affidavit and a form of order.  By no later than **January 20, 2012,** Father

Mother fails to submit the application by **January 6, 2012,** no fees or costs will be awarded. The Court shall determine the award and enter judgment upon review of the Affidavit as well as any objections.

**IT IS FURTHER ORDERED** denying any affirmative relief sought before the date of this Order that is not expressly granted above.

**IT IS FURTHER ORDERED** signing this minute entry as a formal order of this Court pursuant to Rule 81, *Arizona Rules of Family Law Procedure.*

_____
JUDICIAL OFFICER OF THE SUPERIOR COURT

A form may be downloaded at: http://www.superiorcourt.maricopa.gov/SuperiorCourt/Self-ServiceCenter.

MELVIN STERNBERG:  Current Employer Information, Non IV-D Payment Instructions

Docket Code 903

Form D000C

Page 29

# EXHIBIT 2

1

*PARKER SCHWARTZ, PL.L.C.*
7310 NORTH 16TH STREET, SUITE 330
2  PHOENIX, ARIZONA 85020
MAIN LINE: (602) 282-0477
3  DIRECT LINE: (602) 282-0479
FACSIMILE: (602) 282-0478
4

Iva S. Hirsch, Esq. (AZ Bar #006607)
5  Attorneys for Respondent

6

7  **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

8  **IN AND FOR THE COUNTY OF MARICOPA**

9  In re the Marriage of:                    NO. **FC2011-090965**

10  **DANIEL RYCHLIK**,

11                              Petitioner,    **JUDGMENT FOR ATTORNEY'S FEES
                                               AND COSTS**
12  vs.

13  **GABRIELLE ANN SODERGREN**,              (Assigned to Honorable Joseph Sciarrotta, Jr)

14                              Respondent.

15
        The Court has received and considered Respondent/Mother's *Application for an*
16
*Award of Attorney's Fees, Expert Fees and Costs* filed May 4, 2015, Petitioner/Father's
17
*Objection* thereto filed May 29, 2015 and Respondent's *Reply* thereto filed on June 2, 2015.
18

19        **IT IS ORDERED** awarding Respondent attorney's fees in the amount of $50,000.00

20  for legal services provided by  Iva S. Hirsch, Esq, Parker Schwartz, PLLC, additional

21  attorney's fees in the amount of $6,000.00 for legal services provided by Steve Feola, Esq.;

22  and costs in the amount of $1,294.00.
23

24        **IT IS THEREFORE ORDERED** granting judgment in favor of Respondent,

25  Gabrielle Sodergren, and against Petitioner, Daniel Rychlik, as and for attorney's fees in the

26

amount of $56,000.00 together with interest at the statutory rate form the date of this Judgment until it is paid.

In addition, the Court awards judgment in favor of Respondent, Gabrielle Sodergren, and against Petitioner, Daniel Rychlik, in the additional amount of $1,294.00 for costs incurred, plus statutory interest thereon, for a total judgment of $57,294.00 together with interest at the statutory rate from the date of this Judgment until it is paid in full.

**DONE IN OPEN COURT** this _23_ day of _July_, 2015.

Judge Joseph Sciarrotta, Jr.

_____
The Honorable Joseph Sciarrotta, Jr.
Maricopa County Superior Court

PARKER SCHWARTZ, PLLC
7310 N. 16th Street, Suite 330
Phoenix, AZ 85020

Page 2 of 2

EXCERPT PAGE NO.
00047

# EXHIBIT 3

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
M. Iniguez, Deputy
10/23/2015 4:43:41 PM
Filing ID 6956877

**KATZ & BLOOM**, P.L.C.
*COUNSELORS AT LAW*
340 East Palm Lane, Suite A-260
Phoenix, Arizona 85004
www.KatzAndBloom.com
Tel: (602) 266-1900
Fax: (602) 266-4243

JAY R. BLOOM, #16380
Attorney for Petitioner

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

In Re the Matter of:

DANIEL RYCHLIK,

    Petitioner,

and

GABRIELLE ANN SODERGREN,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. FC 2011-090965

**APPLICATION AND AFFIDAVIT RE:
ATTORNEY FEES AND COSTS**

(Assigned to the Honorable Joseph Sciarrotta Jr.)

## APPLICATION FOR ATTORNEY FEES AND COSTS

1.    On July 29, 2013, the parties appeared for an Evidentiary Hearing on Mother's Petition to Prevent Relocation, filed January 18, 2013. (See Court's August 19, 2013, Minute Entry).

2.    At the time of the July 29, 2013, hearing, it was Mother's position that relocating the children out of Arizona was contrary to their best interests. (See Court's August 19, 2013, Minute Entry; also see July 24, 2013, Joint Pretrial Statement).

3.    Rulings in regard to the July 29, 2013, hearing are set forth in the Court's August 19, 2013, Minute Entry, including the Court affirming the prior order for joint legal decision making and entering a new parenting-time order. (See Court's August 19, 2013, Minute Entry).

1

4. On October 7, 2013, (only months after contending it was against the children's best interests to relocate out of Arizona), Mother notified Father by certified mail that she wished to relocate with the children to the State of Illinois. (See Exhibit "I" attached to Father's November 6, 2013, Petition to Prevent Relocation).

5. By notifying Father less than two months after receiving the Court's August 19, 2013, rulings that she now wished to relocate the children to Illinois, Mother commenced a new round of extensive and costly litigation. Father was then placed in the position of having to file a Petition to Prevent Mother from proceeding with the relocation of the children.

6. On November 6, 2013, Father filed a Petition to Prevent Relocation. (See Father's November 6, 2013, Petition to Prevent Relocation).

7. On December 4, 2013, Mother filed a Response to Father's Petition to Prevent Relocation. Therein, and during the proceedings that followed for more than one and a half years, Mother continued to cause Father to litigate the issue.

8. As a direct result of Mother seeking to relocate the children to Illinois, the Court appointed a Best Interests Attorney, Chris Theut, on April 21, 2014, with Father responsible for 100% of the fees, until further order of the Court.

9. As a further direct result of Mother seeking to relocate the children to Illinois, the parties participated in an ADR Settlement Conference on June 3, 2014, conducted by the Honorable Gerald Porter. At that time, they entered into an agreement, thereafter formalized and affirmed as a Stipulation and Order entered July 23, 2014. That Order conditionally resolved all pending issues before the parties. However, the parties had a final agreement only if Mother submitted to a mental health examination that resulted in a negative answer to

2

the questions: *"[D]oes Mother have a mental health impairment that prevents Mother from providing appropriate parenting during Mother's parenting time or in any way puts the children at risk now or in the future?"* If the answer to that question was *"yes"* then the parties would not have an agreement and instead a status conference would be set in front of the Judge to set further proceedings. (See July 23, 2013, Stipulation and Order).

10.     In accordance with the parties' Stipulation and Order, on June 24, 2014, the Court entered an Order appointing Dr. Felix Salomon, and his appointees, to conduct a mental health evaluation of Mother, with Father ordered to pay 100% of the fees, subject to later reallocation by the Court.

11.     Pursuant to the July 23, 2013, Stipulation and Order, Mother participated in a mental health evaluation resulting in a Report by Clinical Psychologist, Dr. Vaughn Tsoutsouris, Psy.D., (an appointee of Dr. Felix Salomon), titled Psychodiagnostic Testing Report, dated October 13, 2014. (See Minute Entry dated November 24, 2014).

12.     On November 6, 2014, Father filed an Emergency Petition for Temporary Orders Without Notice re: Legal Decision Making and Parenting Time.

13.     On November 21, 2014, the Court held an initial Temporary Orders Evidentiary Hearing on Father's November 6, 2014, Petition. The Court's Rulings are set forth in a November 24, 2014, Minute Entry Order. (See Minute Entry dated November 24, 2014).

14.     On March 31, 2015, the Court held a final Temporary Orders Evidentiary Hearing on Father's November 6, 2014, Petition. The Court's Rulings are set forth in an April 8, 2015, Minute Entry Order. (See Minute Entry dated April 8, 2015). Therein, the Court indicating Mother would be awarded attorney fees and costs. (Id.). Thereafter, the

3

1  Court provided Mother with an award for attorney fees and costs related to the Temporary

2  Orders proceedings.

3      15.    On April 13, 2015, one and a half years after sending her original notice to

4  Father by certified mail that she wished to relocate with the children to the State of Illinois,

5  Mother filed a Notice of Withdrawal of Request to Relocate Minor Children to Illinois.

6      16.    On July 27, 2015, Father filed his Motion for Summary Judgment Re: Petition

7  to Prevent Relocation.

8      17.    On September 25, 2015, the Court entered an Order, therein granting Father's

9  Motion for Summary Judgement Re: Petition to Prevent Relocation.  The Court further

10  provided therein for Father to submit an Application and Affidavit regarding his attorney fees

11  and costs incurred in regard to his Petition to Prevent Relocation.

12

13      18.    Clearly, Father was forced to unnecessarily incur substantial attorney fees and

14  costs due to Mother opposing Father's Petition to Prevent Relocation for more than a year

15  and a half, only to then inform Father that she no longer wished to relocate the children to

16  Illinois.

17

18      19.    As a further direct result of Mother's continuing opposition to Father's

19  Motion to Prevent Relocation, Father was required to incur fees and costs related to the

20  services of the Best Interest Attorney, Chris Theut, and for the mental health examination

21  conducted by Dr. . Felix Salomon and his appointee, Psychologist, Dr. Vaughn Tsoutsouris.

22      20.    It was clearly unreasonable for Mother to repeatedly maintain the position that

23  it was best to relocate the children to Illinois, only to thereafter contend it is in their best

24  interests to remain in Arizona.  Had Mother not maintained her unreasonable positions, then

25

26

4

Father would not have incurred extensive fees and costs relating to the Petition he filed necessitated by Mother's actions.

21.    Father herein requests the Court enter a judgment in his favor and against Mother for all of his reasonable attorney fees and costs incurred in these proceedings pursuant to A.R.S. §25-324, except for those fees and costs related to the proceedings on Temporary Orders for which the Court provided an award of fees and costs to Mother. Father's Application is therefore limited to the period of time from receipt of Mother's October 7, 2013, Notice indicating her intention to relocate the children, through the period prior to Father filing his November 6, 2014, Emergency Petition for Temporary Orders.

22.    During the time frame at issue, Father was represented by attorney Falynn S. Baum.  The Supporting Affidavit of Ms. Baum is attached hereto as Exhibit "A".  Therein, Ms. Baum indicates that during the relevant period, Father incurred attorney fees in the amount of $16,802.00, and costs in the amount of $379.10.

23.    During the time frame at issue, Father incurred direct fees for the services of the Best Interest Attorney, Chris Theut, in the amount of $3,000.  (See Exhibit "B" attached).

24.    During the time frame at issue, Father incurred direct fees for the services of Dr. Felix Salomon and his appointee, Psychologist, Dr. Vaughn Tsoutsouris, in the amount of $14,650.00.  (See Exhibit "C" attached).

25.    Wherefore, Father requests the Court enter a Judgment in his favor and against Mother, in the amount of **$34,831.10**, (attorney fees for services of Falynn S. Baum: $16,802, costs related to Ms. Baum's services: $379.10, fees for services of Best Interest Attorney, Chris Theut: $3,000, plus fees for services of Dr. Felix Salomon and his appointee, Psychologist, Dr. Vaughn Tsoutsouris: $14,650.00).

5

1   RESPECTFULLY submitted October 23, 2015.

2

             KATZ & BLOOM, P.L.C.

3

             /s/ Jay R. Bloom

4             Jay R. Bloom
             Attorney for Petitioner

5

6 Copy of the foregoing
 delivered by mail and email

7 October 23, 2015, to:

8 Steven Feola
 FEOLA & TRAICA, P.C.

9 2800 North Central Avenue
 Suite #1400

10 Phoenix Arizona 85004
 steve@feolalegal.com

11 Attorney for Respondent

12 Christopher P. Theut
 5150 North 16th Steet

13 Suite B236

14 Phoenix, AZ 85016
 chris@theutlaw.com

15 Best Interests Attorney

16

17 /s/ D. Jablin

18

19

20

21

22

23

24

25

26

6

**E X H I B I T     "A"**

1 | **GLICKSTEIN LAW, PLLC**
**Falynn S. Baum, Esq.**
2 | 80 E. Columbus Avenue
3 | Phoenix, Arizona 85012
Telephone: (602) 264-4965
4 | Bar Number:  (ID# 026252)
*Falynn@GlicksteinLaw.com*
5 | Attorney for Petitioner

6 |

7 | IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8 | IN AND FOR THE COUNTY OF MARICOPA

9 | In re the Matter of:

10 | **DANIEL F. RYCHLIK,**

11 | Petitioner,

12 | and

13 | **GABRIELLE ANN SODERGREN,**

14 |

15 | Respondent.

16 |

No. **FC2011-090965**

**APPLICATION AND AFFIDAVIT
OF ATTORNEY'S FEES AND COSTS**

(Assigned to the Honorable
Joseph Sciarrotta)

17 | STATE OF ARIZONA    )
                     ) ss.
18 | County of Maricopa  )

19 | FALYNN S. BAUM, being first duly sworn upon his oath, deposes and says:

20 | 1.    I was the attorney for Petitioner, DANIEL F. RYCHLIK, from September 2013

21 | until March 17, 2015 and I make this Affidavit of my own personal knowledge.

22 | 2.    Attached hereto is a true and correct summary of the attorneys' fees incurred in

23 | the above captioned case from November 1, 2013 through October 31, 2014.

24 | 3.    The attached summary indicates which time was provided by Falynn S. Baum.

25 | Falynn S. Baum was admitted to practice in the State of Arizona in 2008, and practices in

26 | domestic relations law. Current hourly rate is $250.00.

4.      The attached summary also indicates which time was provided by Kellie Gabriel-Goff, paralegal to Falynn S. Baum, by her intitials. Current hourly rate is $125.00.

5.      The summary accurately reflects the time expended and the fees actually billed or to be billed to Petitioner through the relevant time period on the issues pertaining to this case.

6.      Petitioner has paid or has an obligation to pay the attorneys' fees and costs.

7.      From the period of November 1, 2013 through October 31, 2014, the attorneys' fees and costs total $16,802.00 and represent the necessary and reasonable services rendered by Petitioner's counsel with respect to the above captioned case.  The hourly rate for attorney time and paralegal as set forth above is fair and reasonable for similarly situated domestic relations practitioners in the Maricopa County area.   The total costs, including service of process, deposition costs, postage, witness fees and courier fees, total $379.10. The foregoing figures are true and correct and represent time actually expended in this matter.  Attached hereto as Exhibit "A" is the itemized time and costs invoice.

RESPECTFULLY SUBMITTED this _____ day of October, 2015.

GLICKSTEIN LAW, PLLC

By _____
Falynn S. Baum

SUBSCRIBED AND SWORN to before me this _23_ day of October, 2015, by Falynn S. Baum, Esq.

KELLIE GABRIEL-GOFF
Notary Public - Arizona
Maricopa County
My Comm. Expires Jan 22, 2017

_____
Notary Public

My Commission Expires:

1-22-17

2

# Glickstein Law, PLLC

Glickstein Law, PLLC
80 E. Columbus Avenue
Phoenix, AZ 85012

(602)264-4965
falynn@glicksteinlaw.com

| Date |
| --- |
| 11/30/2013 |

| Terms | Due Date |
| --- | --- |
| Due on receipt | 11/30/2013 |

| Bill To: |
| --- |
| Daniel Rychlik
6256 Sunny Hill Ct.
McLean, Virginia  22101 |

| Amount Due | Enclosed |
| --- | --- |
| $0.00 | |

>< Please detach top portion and return with your payment. ><

| Date | Service | Activity | Quantity | Rate | Amount |
| --- | --- | --- | --- | --- | --- |
| 11/01/2013 | Telephone Call | Spoke with client re: issues with Ex emailing him and meeting with Lavit. KG | 0.2 | 125.00 | 25.00 |
| 11/05/2013 | Draft Documentation | review file; drafted motion to prevent relocation | 2.5 | 250.00 | 625.00 |
| 11/05/2013 | Telephone Call | telephone call with Steve Feola re: child support, 401k and relocation; notes to file | 0.5 | 250.00 | 125.00 |
| 11/05/2013 | Telephone Call | Spoke with client re: Lavits Report. Notes to file. KG | 0.2 | 125.00 | 25.00 |
| 11/06/2013 | Telephone Call | telephone call with client re: child support, 401k, lavit, christmas vacation, relocation, petition to prevent relocation; notes to file | 0.8 | 250.00 | 200.00 |
| 11/06/2013 | Email | email to Steve Feola re: offer for child support/relocation and needed information for 401k and christmas break; read response from Feole (forwarded to client) | 0.5 | 250.00 | 125.00 |
| 11/07/2013 | Letter | prepare settlement proposal re: child support and relocation; prepared two child support worksheets | 1.5 | 250.00 | 375.00 |
| 11/18/2013 | Email | emails between Feola and FB re: children being interviewed by Dr. Lavit | 0.4 | 250.00 | 100.00 |
| 11/18/2013 | Telephone Call | Spoke with client re: Dr. Lavit; QDRO; Ortho. Notes to file. KG | 0.2 | 125.00 | 25.00 |
| 11/21/2013 | Telephone Call | Spoke with client re: children reevaluated. Notes to file. KG | 0.2 | 125.00 | 25.00 |
| 11/22/2013 | Telephone Call | telephone call with Lavit and Feola re: interview of the minor children; notes to file | 0.3 | 250.00 | 75.00 |
| 11/22/2013 | Email | email to client re: telephone conference with Lavit and Feola; status | 0.3 | 250.00 | 75.00 |
| 11/26/2013 | Email | review emails dated 11.25.13; response | 0.4 | 250.00 | 100.00 |
| | | | | Total | $1,900.00 |

# Glickstein Law, PLLC

Glickstein Law, PLLC
80 E. Columbus Avenue
Phoenix, AZ 85012

(602)264-4965
falynn@glicksteinlaw.com

| Date |
| --- |
| 12/31/2013 |

| Terms | Due Date |
| --- | --- |
| Due on receipt | 12/31/2013 |

| Bill To |
| --- |
| Daniel Rychlik<br>6256 Sunny Hill Ct.<br>McLean, Virginia 22101 |

| Amount Due | Enclosed |
| --- | --- |
| $0.00 | |

>< Please detach top portion and return with your payment. ><

| Date | Service | Activity | Quantity | Rate | Amount |
| --- | --- | --- | --- | --- | --- |
| 12/03/2013 | Email | review opc's email dated 12.3.13 re: 401k; response to opc | 0.5 | 250.00 | 125.00 |
| 12/05/2013 | Review Documentation | review response and contempt | 0.5 | 250.00 | 125.00 |
| 12/05/2013 | Telephone Call | Telephone call with client re: recent filing and status; notes to file | 0.8 | 250.00 | 200.00 |
| 12/12/2013 | Email | email to client re: selmi and status | 0.3 | 250.00 | 75.00 |
| 12/13/2013 | Draft Documentation | subpoena duces tecum re: verizon wireless; letter to custodian of records | 1 | 250.00 | 250.00 |
| 12/13/2013 | Telephone Call | Spoke to client re: status. Notes to file. KG | 0.2 | 125.00 | 25.00 |
| 12/16/2013 | Telephone Call | Spoke to client re: Selmi. Notes to file. KG | 0.2 | 125.00 | 25.00 |
| 12/16/2013 | Copies | | 50 | 0.10 | 5.00 |
| 12/16/2013 | subpoena fee | | 1 | 27.00 | 27.00 |
| 12/17/2013 | Draft Documentation | review file and pleadings; drafted response to counter petition | 3.5 | 250.00 | 875.00 |
| 12/17/2013 | Fee | request child support arrearage calculation | 1 | 61.00 | 61.00 |
| 12/18/2013 | Telephone Call | telephone call with Steve Feola re: Gaby's jobs offer; status on relocation; notes to file | 0.4 | 250.00 | 100.00 |
| 12/18/2013 | Email | email client re: 12.18.13 phone call with Steve Feola | 0.2 | 250.00 | 50.00 |
| 12/18/2013 | Copies | | 175 | 0.10 | 17.50 |
| 12/20/2013 | Telephone Call | telephone call with client re: Gwen threats of not returning to Arizona; notes to file | 0.4 | 250.00 | 100.00 |
| 12/24/2013 | Letter | letter to dr. selmi re: reschedule appointment and appear via skype | 0.4 | 250.00 | 100.00 |

| | Total | $2160.50 |
| --- | --- | --- |

# Glickstein Law, PLLC

Glickstein Law, PLLC
80 E. Columbus Avenue
Phoenix, AZ 85012

(602)264-4965
falynn@glicksteinlaw.com

| Date |
|------|
| 01/31/2014 |

| Terms | Due Date |
|-------|----------|
| Due on receipt | 01/31/2014 |

| Bill To |
|---------|
| Daniel Rychlik
6256 Sunny Hill Ct.
McLean, Virginia 22101 |

| Amount Due | Enclosed |
|------------|----------|
| $0.00 | |

>< Please detach top portion and return with your payment. ><

| Date | Service | Activity | Quantity | Rate | Amount |
|------|---------|----------|----------|------|--------|
| 01/02/2014 | Email | Emailed client re: Dr. Selmi. KG | 0.2 | 125.00 | 25.00 |
| 01/06/2014 | subpoena fee | issue of subpoena | 1 | 27.00 | 27.00 |
| 01/08/2014 | Telephone Call | telephone call with client re: appointments with Selmi and status; notes to file | 0.4 | 250.00 | 100.00 |
| 01/08/2014 | Telephone Call | Spoke w/ client re: Dr. Selmi not changing app. client not feeling comfortable. Reviewed w/ FB. Notes to File. KG | 0.2 | 125.00 | 25.00 |
| 01/10/2014 | Letter | letter to Dr. Selmi re: client's role in reunification process | 0.4 | 250.00 | 100.00 |
| 01/14/2014 | Draft Documentation | drafted reply to Respondent's objection to subpoena | 1 | 250.00 | 250.00 |
| 01/15/2014 | subpoena fee | service upon Verizon Legal Compliance | 1 | 114.50 | 114.50 |
| 01/23/2014 | Telephone Call | Spoke with client re: Hartford Account/Request; upcoming hearing. Reviewed w/ FB. Notes to file. KG | 0.2 | 125.00 | 25.00 |
| 01/29/2014 | Telephone Call | telephone call with client re: status and recap of meeting with Dr. Lavit; notes to file | 0.8 | 250.00 | 200.00 |
| 01/29/2014 | Hearing | telephonic status conference; notes to file | 0.6 | 250.00 | 150.00 |
| 01/29/2014 | Telephone Call | Spoke with client re: Dr. Lavit. Notes to file. KG | 0.2 | 125.00 | 25.00 |
| 01/29/2014 | Telephone Call | Spoke with client re: spring break. Notes to file. KG | 0.2 | 125.00 | 25.00 |
| 01/30/2014 | Telephone Call | Spoke to client re: Dr. Lavits recommendations. Notes to file. KG | 0.2 | 125.00 | 25.00 |

| Total | $1,091.50 |
|-------|-----------|

# Glickstein Law, PLLC

Glickstein Law, PLLC
80 E. Columbus Avenue
Phoenix, AZ 85012

(602)264-4965
falynn@glicksteinlaw.com

| Date |
|---|
| 02/28/2014 |

| Terms | Due Date |
|---|---|
| Due on receipt | 02/28/2014 |

| Bill To |
|---|
| Daniel Rychlik
6256 Sunny Hill Ct.
McLean, Virginia 22101 |

| Amount Due | Enclosed |
|---|---|
| $0.00 | |

*Please detach top portion and return with your payment.*

| Date | Service | Activity | Quantity | Rate | Amount |
|---|---|---|---|---|---|
| 02/03/2014 | Telephone Call | telephone call with client re: lavit's recommendations; notes to file | 0.5 | 250.00 | 125.00 |
| 02/07/2014 | Telephone Call | telephone call with client re: gwen's proposed visit; 401k and misc; notes to file | 0.6 | 250.00 | 150.00 |
| 02/07/2014 | Email | email to Steve Feola re: gwens proposed visit and 401k | 0.3 | 250.00 | 75.00 |
| 02/18/2014 | Telephone Call | Spoke w/ client re: moving ADR. KG | 0.2 | 125.00 | 25.00 |
| 02/20/2014 | Telephone Call | Spoke w/ client re: status; KG notes to file | 0.2 | 125.00 | 25.00 |
| 02/21/2014 | Telephone Call | telephone conference with Steve Feola & Michelle Carson re: role of best interest attorney; notes to file | 0.6 | 250.00 | 150.00 |
| 02/21/2014 | Telephone Call | telephone call with client re: summary of discussion and status; notes to file | 0.5 | 250.00 | 125.00 |
| 02/21/2014 | Telephone Call | Contacted Verizon re: status; receiving documents. Notes to follow. KG | 0.2 | 125.00 | 25.00 |
| | | | | Total | $700.00 |

# Glickstein Law, PLLC

Glickstein Law, PLLC
80 E. Columbus Avenue
Phoenix, AZ 85012

(602)264-4965
falynn@glicksteinlaw.com

| Date |
| --- |
| 04/01/2014 |

| Terms | Due Date |
| --- | --- |
| Due on receipt | 04/01/2014 |

| Bill To |
| --- |
| Daniel Rychlik
6256 Sunny Hill Ct.
McLean, Virginia 22101 |

| Amount Due | Enclosed |
| --- | --- |
| $0.00 | |

><   Please detach top portion and return with your payment.   ><

| Date | Service | Activity | Quantity | Rate | Amount |
| --- | --- | --- | --- | --- | --- |
| 03/05/2014 | Telephone Call | Spoke with cliet re: Verizon; his coversation with the BIA. KG | 0.2 | 125.00 | 25.00 |
| 03/05/2014 | Case Status Memo | met with KG re: case status review; memo to file | 1 | 250.00 | 250.00 |
| 03/06/2014 | Client Meeting | telephonic client meeting re: status update; notes to file | 0.9 | 250.00 | 225.00 |
| 03/09/2014 | Draft Documentation | review file; drafted reply to respondent's response to parenting coordinator status report dated feb 7, 2014 | 2 | 250.00 | 500.00 |
| 03/10/2014 | Copies | | 426 | 0.10 | 42.60 |
| 03/19/2014 | Telephone Call | telephone call re: taxes and contempt; notes to file | 0.3 | 250.00 | 75.00 |
| 03/21/2014 | Draft Documentation | review notes; drafted petition for contempt re: tax exemption | 1.3 | 250.00 | 325.00 |
| 03/27/2014 | Telephone Call | telephone call with client re: status; notes to file | 0.8 | 250.00 | 200.00 |
| 03/27/2014 | Copies | | 130 | 0.10 | 13.00 |
| 03/31/2014 | Draft Documentation | Discovery Requests. KG | 0.8 | 125.00 | 100.00 |
| 03/31/2014 | Copies | | 36 | 0.10 | 3.60 |
| | | | | Total | $1,759.20 |

# Glickstein Law, PLLC

Glickstein Law, PLLC
80 E. Columbus Avenue
Phoenix, AZ 85012

(602)264-4965
falynn@glicksteinlaw.com

| Date |
| --- |
| 04/30/2014 |

| Terms | Due Date |
| --- | --- |
| Due on receipt | 04/30/2014 |

| Bill To |
| --- |
| Daniel Rychlik
6256 Sunny Hill Ct.
McLean, Virginia 22101 |

| Amount Due | Enclosed |
| --- | --- |
| $0.00 | |

>< Please detach top portion and return with your payment. ><

| Date | Service | Activity | Quantity | Rate | Amount |
| --- | --- | --- | --- | --- | --- |
| 04/01/2014 | Email | email to michelle carson re: status update | 0.2 | 250.00 | 50.00 |
| 04/07/2014 | Email | email to Steve Feola re: withdrawing objection | 0.4 | 250.00 | 100.00 |
| 04/09/2014 | Telephone Call | Spoke w/ client re: AFI. Notes to file. KG | 0.5 | 125.00 | 62.50 |
| 04/11/2014 | Telephone Call | Went through AFI w/client. Notes to file. KG | 0.3 | 125.00 | 37.50 |
| 04/14/2014 | Draft Documentation | review file; drafted settlement conference memorandum | 1.5 | 250.00 | 375.00 |
| 04/14/2014 | Draft Documentation | AFI. KG | 1 | 125.00 | 125.00 |
| 04/14/2014 | Copies | | 60 | 0.10 | 6.00 |
| 04/18/2014 | Settlement Conference | attended ADR settlement conference; travel | 2 | 250.00 | 500.00 |
| 04/23/2014 | Email | review emails from Mother and Dr. Selmi; advised client on response | 0.3 | 250.00 | 75.00 |
| 04/23/2014 | Email | email to Feola re: Mother contacting Michelle Carson | 0.3 | 250.00 | 75.00 |
| | | | | Total | $1,406.00 |

# Glickstein Law, PLLC

Glickstein Law, PLLC
80 E. Columbus Avenue
Phoenix, AZ 85012

(602)264-4965
falynn@glicksteinlaw.com

| Date |
| --- |
| 05/19/2014 |

| Terms | Due Date |
| --- | --- |
| Due on receipt | 05/19/2014 |

**Bill To**

Daniel Rychlik
6256 Sunny Hill Ct.
McLean, Virginia 22101

| Amount Due | Enclosed |
| --- | --- |
| $0.00 | |

✂ Please detach top portion and return with your payment. ✂

| Date | Service | Activity | Quantity | Rate | Amount |
| --- | --- | --- | --- | --- | --- |
| 05/06/2014 | Email | email to Chris Theut re: status | 0.3 | 250.00 | 75.00 |
| 05/08/2014 | Telephone Call | telephone call with client re: status; notes to file | 0.4 | 250.00 | 100.00 |
| 05/08/2014 | Draft Documentation | drafted motion for reappointment of Dr. Lavit | 0.8 | 250.00 | 200.00 |
| 05/08/2014 | Letter | letter to Feola re: arrears, contempt, & appointment of Lavit | 0.6 | 250.00 | 150.00 |
| 05/08/2014 | Letter | letter to Chris Theut re: Glassman Report and emails | 0.5 | 250.00 | 125.00 |
| 05/15/2014 | Letter | letter to Mr. Theut re: glassman report and emails | 0.5 | 250.00 | 125.00 |
| 05/19/2014 | Email | review opc's objection; email to opc re: withdrawing objection | 0.4 | 250.00 | 100.00 |
| 05/19/2014 | Telephone Call | telephone call with client re: opc's objection; notes to file | 0.5 | 250.00 | 125.00 |
| | | | | **Total** | **$1,000.00** |

# Glickstein Law, PLLC

Glickstein Law, PLLC
80 E. Columbus Avenue
Phoenix, AZ 85012

(602)264-4965
falynn@glicksteinlaw.com

| Date |
|---|
| 06/05/2014 |

| Terms | Due Date |
|---|---|
| Due on receipt | 06/05/2014 |

**Bill To**

Daniel Rychlik
6256 Sunny Hill Ct.
McLean, Virginia 22101

| Amount Due | Enclosed |
|---|---|
| $0.00 | |

Please detach top portion and return with your payment.

| Date | Service | Activity | Quantity | Rate | Amount |
|---|---|---|---|---|---|
| 05/07/2014 | Telephone Call | Spoke to client re: BIA; BIA Payment; BIA Intake Sheet; Hearing outcome. Notes to file. KG (no charge) | 0.2 | 0.00 | 0.00 |
| 05/08/2014 | Telephone Call | Spoke with BIA assistant re: payment; called client. Notes to file. KG (no charge) | 0.2 | 0.00 | 0.00 |
| 05/08/2014 | Copies | | 15 | 0.10 | 1.50 |
| 05/15/2014 | Copies | | 126 | 0.10 | 12.60 |
| 05/23/2014 | Draft Documentation | review file; drafted response to objection | 2 | 250.00 | 500.00 |
| 05/28/2014 | Letter | letter to Feola re: motion to compel | 0.4 | 250.00 | 100.00 |
| 05/29/2014 | Telephone Call | telephone call with client re: status; notes to file | 0.4 | 250.00 | 100.00 |
| 06/03/2014 | Draft Documentation | Notice of Disclosure. KG | 0.5 | 125.00 | 62.50 |
| 06/03/2014 | Copies | | 26 | 0.10 | 2.60 |
| 06/03/2014 | Settlement Conference | attended settlement conference; travel (6 hours; charge for only 5) | 5 | 250.00 | 1,250.00 |

| | Total | $2,029.20 |
|---|---|---|

# Glickstein Law, PLLC

Glickstein Law, PLLC
80 E. Columbus Avenue
Phoenix, AZ 85012

(602)264-4965
falynn@glicksteinlaw.com

| Date |
| --- |
| 07/01/2014 |

| Terms | Due Date |
| --- | --- |
| Due on receipt | 07/01/2014 |

| Bill To |
| --- |
| Daniel Rychlik
6256 Sunny Hill Ct.
McLean, Virginia  22101 |

| Amount Due | Enclosed |
| --- | --- |
| $0.00 | |

Please detach top portion and return with your payment.

| Date | Service | Activity | Quantity | Rate | Amount |
| --- | --- | --- | --- | --- | --- |
| 06/05/2014 | Telephone Call | Spoke with client re: psychologists. Notes to file. KG | 0.2 | 125.00 | 25.00 |
| 06/09/2014 | Telephone Call | telephone call with client re: mental health providers and strike weinstock report; notes to file | 0.8 | 250.00 | 200.00 |
| 06/09/2014 | Letter | letter to Feola re: two mental health providers | 0.4 | 250.00 | 100.00 |
| 06/09/2014 | Telephone Call | Spoke with client re: status; doctors; motions; interviews. Notes to file.  KG | 0.2 | 125.00 | 25.00 |
| 06/12/2014 | Review Documentation | review Weinstock billing statement | 0.2 | 250.00 | 50.00 |
| 06/12/2014 | Email | review client's emails dated 6.12.2014; response; review appointment of Dr. Selmi | 0.5 | 250.00 | 125.00 |
| 06/12/2014 | Telephone Call | I called Weinstocks office re: Dan's billing statement. I received the statement and called client. Forwarded it to both FB and client. Notes to file. KG | 0.3 | 125.00 | 37.50 |
| 06/18/2014 | Telephone Call | I spoke with client re: heneeded the agreement; kids being interviewed. Notes to file. KG | 0.2 | 125.00 | 25.00 |
| 06/19/2014 | Telephone Call | telephone call with client re: status; notes to file | 1 | 250.00 | 250.00 |
| 06/19/2014 | Letter | letter to Steve Feola re: Mother's ridiculous emails | 0.4 | 250.00 | 100.00 |
| 06/20/2014 | Telephone Call | telephone call with BIA (lheut) re: status; notes to file | 0.4 | 250.00 | 100.00 |
| 06/20/2014 | Telephone Call | telephone call with client re: status; notes to file (no charge) | 0.3 | 0.00 | 0.00 |
| 06/30/2014 | Telephone Call | Spoke with client re: recording; status of reconsideration.Notes to file. KG | 0.2 | 125.00 | 25.00 |
| 06/30/2014 | Copies | | 112 | 0.10 | 11.20 |
| 07/01/2014 | Fee | fee re: ADR CD | 1 | 20.00 | 20.00 |
| | | | | Total | $1,093.70 |

# Glickstein Law, PLLC

Glickstein Law, PLLC
80 E. Columbus Avenue
Phoenix, AZ 85012

(602)264-4965
falynn@glicksteinlaw.com

| Date |
| --- |
| 07/31/2014 |

| Terms | Due Date |
| --- | --- |
| Due on receipt | 07/31/2014 |

| Bill To |
| --- |
| Daniel Rychlik<br>6256 Sunny Hill Ct.<br>McLean, Virginia  22101 |

| Amount Due | Enclosed |
| --- | --- |
| $0.00 | |

>< Please detach top portion and return with your payment. ><

| Date | Service | Activity | Quantity | Rate | Amount |
| --- | --- | --- | --- | --- | --- |
| 07/07/2014 | Telephone Call | telephone call with client re: gwen; zoe allergy, status; notes to file | 0.7 | 250.00 | 175.00 |
| 07/08/2014 | Telephone Call | telephone call with Steve Feola re: Dr. Felix Salomon; notes to file (no charge) | 0.3 | 0.00 | 0.00 |
| 07/08/2014 | Telephone Call | telephone call with Steve Feola & Dr. Felix Salomon re: status; notes to file | 0.4 | 250.00 | 100.00 |
| 07/08/2014 | Telephone Call | telephone call with client re: summary of meeting with Feola & Salomon; status of children; school issue; notes to file (no charge) | 0.4 | 0.00 | 0.00 |
| 07/09/2014 | Telephone Call | Spoke with client re: Gwen not returning; Theut; Salomon. Notes to file. KG | 0.5 | 125.00 | 62.50 |
| 07/10/2014 | Telephone Call | telephone call with Theut re: status; notes to file | 0.4 | 250.00 | 100.00 |
| 07/11/2014 | Draft Documentation | review audio cd from June 3, 2014 ADR; drafted stipulation and order | 1.5 | 250.00 | 375.00 |
| 07/11/2014 | Telephone Call | telephone call with Theut re: call with Gwen; notes to file | 0.2 | 250.00 | 50.00 |
| 07/11/2014 | Letter | letter to Feola re: confirmation that kids are enrolled in school | 0.4 | 250.00 | 100.00 |
| 07/11/2014 | Letter | letter to Selmi re: assistance needed | 0.4 | 250.00 | 100.00 |
| 07/11/2014 | Telephone Call | telephone call with client re: status; notes to file (no charge) | 0.4 | 0.00 | 0.00 |
| 07/12/2014 | Email | review 7.12.14 emails from Dr. Paulette Selmi; emails btwn client and FB | 0.6 | 250.00 | 150.00 |
| 07/12/2014 | Email | email to Paulette Selmi re: Dan's appointment for August 5, 2014 | 0.2 | 250.00 | 50.00 |
| 07/14/2014 | Telephone Call | telephone call with Steve Feola re: returning the children; notes to file | 0.3 | 250.00 | 75.00 |
| | | Continue to the next page | | | |

Page 2 of 2

| Date | Service | Activity | Quantity | Rate | Amount |
|---|---|---|---|---|---|
| 07/14/2014 | Email | email to steve feola re: email dated 7.14.14 | 1 | 250.00 | 250.00 |
| 07/14/2014 | Telephone Call | telephone call with client re: mother's threats if children are not returned; notes to file (no charge) | 0.3 | 0.00 | 0.00 |
| 07/17/2014 | Letter | letter to Dr. Felix Salomon; response to feola's letter | 0.5 | 250.00 | 125.00 |
| 07/17/2014 | Telephone Call | Spoke to client re: cops;oop in VA. Notes to file. KG | 0.2 | 125.00 | 25.00 |
| 07/17/2014 | Draft Documentation | NOD. KG | 0.5 | 125.00 | 62.50 |
| 07/17/2014 | Copies | | 20 | 0.10 | 2.00 |
| 07/23/2014 | Telephone Call | Spoke with client re: Dr. Salomon/letter; set TC with FG. Notes to File. KG | 0.2 | 125.00 | 25.00 |
| 07/24/2014 | Telephone Call | telephone call with client re: sending background to Dr. Salomon and other issues; notes to file | 0.5 | 250.00 | 125.00 |
| 07/24/2014 | Letter | letter to Dr. Salomon re: case background; emails between FB & client | 1 | 250.00 | 250.00 |
| 07/31/2014 | Telephone Call | telephone call with client re: status and plan of action; notes to file | 0.5 | 250.00 | 125.00 |
| 07/31/2014 | Telephone Call | Spoke with client re: child support/case being transferred;cant contact kids. Notes to file. KG | 0.2 | 125.00 | 25.00 |
| | | | | Total | $2,352.00 |

# Glickstein Law, PLLC

Glickstein Law, PLLC
80 E. Columbus Avenue
Phoenix, AZ 85012

(602)264-4965
falynn@glicksteinlaw.com

| Date |
| --- |
| 08/31/2014 |

| Terms | Due Date |
| --- | --- |
| Due on receipt | 08/31/2014 |

**Bill To**

Daniel Rychlik
6256 Sunny Hill Ct.
McLean, Virginia 22101

| Amount Due | Enclosed |
| --- | --- |
| $0.00 | |

>< Please detach top portion and return with your payment. ><

| Date | Service | Activity | Quantity | Rate | Amount |
| --- | --- | --- | --- | --- | --- |
| 08/11/2014 | Telephone Call | telephone call with Theut re: status; notes to file (no charge) | 0.3 | 0.00 | 0.00 |
| 08/12/2014 | Telephone Call | telephone call with client re: FB discussion with Theut, client concerned with evaluator wanting him to defend himself, updates; notes to file | 0.5 | 250.00 | 125.00 |
| 08/22/2014 | Telephone Call | Phone call with client. notes to file. KG | 0.2 | 125.00 | 25.00 |
| 08/22/2014 | Letter | letter to Dr. Salomon re: disclosing various emails between the parties; review and print relevant emails to disclose | 0.6 | 250.00 | 150.00 |
| 08/22/2014 | Copies | | 120 | 0.10 | 12.00 |
| 08/27/2014 | Telephone Call | telephone call with client re: payment to providers; status of matter; notes to file | 0.5 | 250.00 | 125.00 |
| 08/29/2014 | Letter | letter to Feola re: dan visiting arizona | 0.3 | 250.00 | 75.00 |
| 08/29/2014 | Letter | letter to Dr. Salomon re: email from Mother dated 8.28.14 | 0.3 | 250.00 | 75.00 |

| | Total | $587.00 |
| --- | --- | --- |

# Glickstein Law, PLLC

Glickstein Law, PLLC
80 E. Columbus Avenue
Phoenix, AZ 85012

(602)264-4965
falynn@glicksteinlaw.com

| Date |
| --- |
| 09/30/2014 |

| Terms | Due Date |
| --- | --- |
| Due on receipt | 09/30/2014 |

| Bill To |
| --- |
| Daniel Rychlik
6256 Sunny Hill Ct.
McLean, Virginia 22101 |

| Amount Due | Enclosed |
| --- | --- |
| $0.00 | |

✂     Please detach top portion and return with your payment.     ✂

| Date | Service | Activity | Quantity | Rate | Amount |
| --- | --- | --- | --- | --- | --- |
| 09/09/2014 | Telephone Call | telephone call with client re: children being interviewed; Selmi; notes to file | 0.3 | 250.00 | 75.00 |
| 09/16/2014 | Telephone Call | Spoke with client re: weekend visit; Zoe; braces; Selmi report. Notes to file.. KG | 0.2 | 125.00 | 25.00 |
| 09/18/2014 | Telephone Call | Spoke with client re: braces; Zoe; Selmi Report. Notes to file. KG | 0.2 | 125.00 | 25.00 |
| 09/25/2014 | Email | email between FB and Steve Feola re: Fall parenting time and interlock; notes to file | 0.3 | 250.00 | 75.00 |
| 09/29/2014 | Telephone Call | telephone call with client re: braces and interlock; notes to file | 0.4 | 250.00 | 100.00 |

| | |
| --- | --- |
| SubTotal | $300.00 |
| Discount | $ -239.60 |
| Total | $60.40 |

Glickstein Law, PLLC

Glickstein Law, PLLC
80 E. Columbus Avenue
Phoenix, AZ 85012

(602)264-4965
falynn@glicksteinlaw.com

| Date |
|---|
| 10/31/2014 |

| Terms | Due Date |
|---|---|
| Due on receipt | 10/31/2014 |

| Bill To |
|---|
| Daniel Rychlik
6256 Sunny Hill Ct.
McLean, Virginia 22101 |

| Amount Due | Enclosed |
|---|---|
| $0.00 | |

Please detach top portion and return with your payment.

| Date | Service | Activity | Quantity | Rate | Amount |
|---|---|---|---|---|---|
| 10/01/2014 | Telephone Call | telephone call with Steve Feola re: orthodontist; notes to file | 0.4 | 250.00 | 100.00 |
| 10/01/2014 | Telephone Call | Spoke with client re: op calling him about braces/face-time with Zoe was cutoff. Notes to file. KG | 0.2 | 125.00 | 25.00 |
| 10/01/2014 | Email | emails between FB and Steve Feola re: Gwen's braces | 0.4 | 250.00 | 100.00 |
| 10/06/2014 | Telephone Call | Spoke with client re: Zoe starting pre-school. Parental interference. Notes to file. KG | 0.3 | 125.00 | 37.50 |
| 10/11/2014 | Email | emails between FB and Steve Feola re: airport incident | 0.6 | 250.00 | 150.00 |
| 10/16/2014 | Email | email to Steve Feola re: ex parte communication with providers | 0.3 | 250.00 | 75.00 |
| 10/31/2014 | Draft Documentation | drafted joint request for status conference | 0.7 | 250.00 | 175.00 |

| Total | $662.50 |
|---|---|

# E X H I B I T   "B"

From: **Chris Theut** <chris@theutlaw.com>
Date: Wed, May 21, 2014 at 6:15 PM
Subject: RE: Rychlik questionnaire
To: The Rychlik Family <the.rychlik.family@gmail.com>
Cc: Chris Theut <chris@theutlaw.com>

Thanks Dan.

---

**From:** The Rychlik Family [mailto:the.rychlik.family@gmail.com]
**Sent:** Wednesday, May 21, 2014 5:33 PM
**To:** Chris Theut
**Subject:** Fwd: Rychlik questionnaire

---------- Forwarded message ----------
From: **The Rychlik Family** <the.rychlik.family@gmail.com>
Date: Tue, May 13, 2014 at 5:38 PM
Subject: Rychlik questionnaire
To: chris@theutlaw.com

Dear Mr. Theut,

A check for the $3000 retainer has been sent to your office. Attached to this email is the questionnaire with responses. I've also attached a parenting plan proposal and a list of the childrens' healthcare providers and schools with contact info.

Looking forward to speaking soon,

Daniel

# EXHIBIT C

**The Phoenix Institute for Psychotherapy – Mental Health Center**     (602) 870-0991

**7111 North 7th Street**          **Phoenix, AZ  85020**      FAX: (602)  870-3890

**Billing and Payment Record**          Subject Name:  Rychlik V. Sodergren

Court Case # FC2011-090965

Subject's Address: ____6526 Sunny Hill Court_____

_____McLean, VA 22101_____

_____

| Date Billed | Amount | Date Paid | Descriptive Note |
|---|---|---|---|
| July 2014 | $8,000 | July 2014 | Retainer I |
| September 2014 | $4,000 | September 2014 | Retainer II |
| November 2014 | $600 | November 2014 | Telephonic Court Testimony (11/21/14) |
| January 2015 | $1200 | February 2015 | Rebuttal letter |
| March 2015 | $850 | Unpaid | Court Testimony (3/31/15) |

As of March 30th, 2015, I have received $13, 8000 in payment for the above listed services. Fees for services for Court Testimony (3/31/15)  remain unpaid for. I am still owed $850 as of September 17th, 2015.

**Vaughn Tsoutsouris, Psy.D.**          (602) 499-6695

**Staff Psychologist, PIP – Mental Health Center**

# EXHIBIT 4

FILED

12/21/15 @ 11:30 a.m.
MICHAEL K. JEANES, Clerk

By _____
C. Clerk, Deputy

1   **KATZ & BLOOM** P.L.C.
    *COUNSELORS AT LAW*
    340 East Palm Lane, Suite A-280
2   Phoenix, Arizona 85004
    www.KatzAndBloom.com
3   Tel. (602) 288-1800
    Fax. (602) 288-4243

4   JAY R. BLOOM, #16380
    Attorney for Petitioner
5
                    IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
6                       IN AND FOR THE COUNTY OF MARICOPA

7   In Re the Matter of:                )   No. FC 2011-090965
                                         )
8   DANIEL RYCHLIK,                      )   **ORDER**
                                         )
9            Petitioner,                 )
                                         )
10       and                             )
                                         )
11   GABRIELLE ANN SODERGREN,            )
                                         )
12           Respondent.                 )
                                         )
13                                       )

14       Pursuant to Petitioner's Application and Affidavit Re: Attorney Fees and Costs, and

15   *See Response + Reply*

16   good cause appearing,

17       IT IS HEREBY ORDERED granting judgments against Respondent, Gabrielle A.

18   Sodergren, and in favor of Petitioner, Daniel Rychlik, for attorney's fees in the amount of

19   $ 16,802     , and costs in the amount of $ 379.18 together with legal interest

     until paid. Said judgments shall be paid by Respondent within 90 days of this Order

20

21       DONE IN OPEN COURT this 18 day of , December 2015.

22

23       _____
         Judge of the Superior Court

24

25

26

                                         1

**CT Corporation**

**Service of Process Transmittal**
10/26/2016
CT Log Number 530081244

TO: Court Orders and Levies
JPMorgan Chase Bank, N.A.
340 S Cleveland Ave Fl 3
Westerville, OH 43081-8917

RE: **Process Served in Arizona**

FOR: JPMorgan Chase Bank, N.A. (Domestic State: N/A)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Daniel Rychlik, Pltf./Judgment Creditor vs. Gabrielle Ann Sodergren, Dft./Judgment Debtor // To: JP Morgan Chase Bank, N.A. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Check, Writ(s) of Garnishment and Summonses, Default Judgment, Answer(s), Request(s), Notice(s), Second Notice(s), Nonexempt Earning Statement(s), Instructions |
| **COURT/AGENCY:** | Maricopa County  Superior Court, AZ Case # FC2011090965 |
| **NATURE OF ACTION:** | Garnishments (Non Wage)   Amount $17,623.10 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Phoenix, AZ |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/26/2016 at 11:13 |
| **JURISDICTION SERVED:** | Arizona |
| **APPEARANCE OR ANSWER DUE:** | Within 10 business days after service upon you |
| **ATTORNEY(S) / SENDER(S):** | Katz & Bloom PLC 340 East Palm Lane Suite A-280 Phoenix, AZ 85004 602-266-1900 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air Image SOP Email Notification,  Court Orders and Levies  LEGAL.BULK.MAILBOX@JPMChase.com |
| **SIGNED:** **ADDRESS:** | C T Corporation System 3800 N Central Avenue Suite 460 Phoenix, AZ 85012 |
| **TELEPHONE:** | 602-248-1145 |

Page 1 of  1 / BK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



KATZ & BLOOM P.L.C.
ATTORNEYS AT LAW
2800 N CENTRAL AVE STE 1750
PHOENIX, AZ 85004

4524

91-71V/1221
41398

BBVA COMPASS
COMPASS BANK
PHOENIX, ARIZONA

10/26/2016

PAY TO THE
ORDER OF    J. P. Morgan Chase Bank N.A.

Twenty-Five and 00/100********************************************

$ **25.00

DOLLARS

J. P. Morgan Chase Bank N.A.

AUTHORIZED SIGNATURE

MEMO    Search Fee: Gabrielle A. Sodergren / FC 2011-090

⑆004524⑆ ⑈122105744⑈ 2500585164⑈

**KATZ & BLOOM** P.L.C.
COUNSELORS AT LAW
340 East Palm Lane, Suite A-260
Phoenix, Arizona 85004
www.KatzAndBloom.com
Tel: (602) 256-1900
Fax: (602) 256-4243
JAY R. BLOOM, #16380
Jay@KatzAndBloom.com
Attorney for Petitioner/Judgment Creditor

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

In Re the Matter of:

DANIEL RYCHLIK,

    Petitioner/Judgment Creditor,

    and

GABRIELLE ANN SODERGREN,

    Respondent/Judgment Debtor,

JP MORGAN CHASE BANK, N.A.,

    Garnishee.

No. FC 2011-090965

**WRIT OF GARNISHMENT AND
SUMMONS
(NON-EARNINGS)**
(A.R.S. §§ 12-1571 through -1574)

**TO THE SHERIFF, CONSTABLE OR OTHER AUTHORIZED PROCESS SERVER
IN MARICOPA COUNTY** You are commanded to summon garnishee named above,
who is believed to be in your county, to answer the following claims:

**STATEMENTS OF THE JUDGMENT CREDITOR**

1    Judgment Creditor was awarded a Judgment or Order against GABRIELLE ANN
    SODERGREN, (Judgment Debtor).

2.    The amount of the outstanding balance on the Judgment or Order, including accrued
    interest and allowable costs, is $17,623.10, (through October 24, 2016). Interest
    accrues at the rate of 4.25% per. The cost of serving this Writ of Garnishment will be
    as shown on the Affidavit of Service and may be added to the judgment.

3.    Judgment Creditor believes garnishee hold nonexempt property or money other than
    wages owed or belonging to Judgment Debtor

1

4.   The names and addresses of all parties are:

Daniel Rychlik
1545 San Roque Road
Santa Barbara, California 93105
Judgment Creditor

Gabrielle Ann Sodergren
14912 North 97th Place
Scottsdale Arizona 85260
Judgment Debtor

JP Morgan Chase Bank, N.A.
c/o CT Corporation System
3800 North Central Avenue Suite 460
Phoenix, Arizona 85012
Garnishee

## TO THE GARNISHEE (A.R.S. § 12-1579)

YOU SHALL answer all the following questions in writing, under oath, on a separate document. Your answer shall be filed with the Court Clerk within 10 business days after you are served with this Writ of Garnishment.

A. Were you holding personal property or money other than wages belonging to the judgment debtor at the time this Writ was served on you?

B. How much money do you owe the judgment debtor and how much of that money did you withhold pursuant to the Writ? Did you release any of that money after you were served with the Writ, and, if so, how much did you release and why?

C. Did you possess any personal property belonging to the judgment debtor at the time the Writ was served on you? If so, please describe each item or group of items you held and describe the specific items of personal property you withheld pursuant to the Writ, if any.

D. If the garnishee is a corporation, what shares or interest does the judgment debtor own?

2

1

2   ### SUMMONS

3   A Writ of Garnishment has been issued, naming you as garnishee. You are required to answer
this Writ in writing, under oath, and file the answer with the Court Clerk within 10 business

4   days after service on you. If you fail to file an answer, you may be ordered to appear in person
to answer this Writ, and a default judgment may be entered against you. If a default judgment

5   is entered against you, you may be ordered to pay the full amount shown on this Writ, plus
judgment creditor's costs and attorney fees.

6

7   **THIS SUMMONS IS NOT A REQUEST TO SEND ANY MONEY OR PROPERTY TO**

8   **THE COURT**

                                          COPY
9   Date                                 Judicial Officer  OCT 2 5 2016

10

11                                          MICHAEL K. JEANES, CLERK
                                            V. CANISALES
                                            DEPUTY CLERK

12  ### NOTICE TO GARNISHEE

13  You should have been served with a blank Garnishee's Answer form. You may complete and
file this form to make your required answer.

14

15

16

17

18              If you would like legal advice from a lawyer,

19                 Contact the Lawyer Referral Service at
                           602-257-4434

20                                 or
                          www.maricopalawyers.org

21                          Sponsored by the
                       Maricopa County Bar Association

22

23

24

25

26

                                3

**RYCHLIK**

**Gabrielle Ann Sodergren**
**14912 North 97th Place**
**Scottsdale Arizona 85260**

**DOB: 03/19/1970**

**SS#: 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**

# FORM 3
## INSTRUCTIONS TO THE GARNISHEE (NON-EARNINGS)
### (for the garnishee who owes money other than wages, or
### holds personal property belonging to the judgment debtor)

---

### *WARNING !*

*ALL PARTIES TO A GARNISHMENT ARE STRONGLY URGED TO OBTAIN LEGAL ADVICE FROM AN ATTORNEY. Garnishment procedures are governed by Arizona law and are extremely complicated. All parties involved must follow these laws and procedures correctly. The Court may issue an order for monetary penalties against any party who does not proceed properly.*

*If you, the garnishee, fail to meet your responsibilities in this garnishment proceeding, the Court may order you to pay the judgment creditor's attorney fees, costs and even the amount of money which the judgment debtor owes the judgment creditor. This can happen even if you do not have any of the judgment debtor's property or do not owe the judgment debtor any money.*

---

You have been served with a Writ of Garnishment and Summons in which you are named as the "garnishee." The person or company that filed this court action (the "judgment creditor") is attempting to collect payment from an individual or organization named as the "judgment debtor." You are involved in this proceeding because the judgment creditor believes you either owe the judgment debtor money, other than wages, or are in possession of personal property owned by the judgment debtor.

The judgment creditor should have served you with the following documents:

- Writ of Garnishment and Summons (Non-Earnings)(you should have received 2 copies)
  *This document identifies the parties and the reason for the garnishment.*
- Instructions to the Garnishee (Non-Earnings)
  *This document explains your rights and responsibilities in this court action.*
- Garnishee's Answer (Non-Earnings) (4 copies)
  *You will complete this document and file it with the Court.*
- Notice to Judgment Debtor of Garnishment (Non-Earnings) (2 copies)
  *This document explains the judgment debtor's rights and responsibilities.*
- Request for Hearing (Non-Earnings) (2 copies)
  *This document can be used by the judgment debtor to object to the garnishment or the Garnishee's Answer.*
- Notice of Hearing on Garnishment (Non-Earnings) (2 copies)
  *This document is completed by the Court to notify parties of a hearing on a judgment debtor's objection.*
- One copy of the Judgment in the original lawsuit between the judgment creditor and the judgment debtor
  *This document shows you how much money was awarded to the judgment creditor in the case against the judgment debtor*

## STEP 1: DELIVER DOCUMENTS TO THE JUDGMENT DEBTOR

**Within 3 business days** of the date on which you received the paperwork listed above, deliver one copy of the following documents to the judgment debtor·
- Writ of Garnishment and Summons (Non-Earnings)
- Notice to Judgment Debtor of Garnishment (Non-Earnings)
- Request for Hearing (Non-Earnings)

FORM 3 INSTRUCTIONS TO GARNISHEE  NE                Page 1 of 3                                5/17/07

Case 2:17-ap-00267-SHG   Doc 27-2   Filed 03/13/18   Entered 03/13/18 16:21:24   Desc
Exhibit Exhibits to Separate Statement of Facts   Page 70 of 103

- • Notice of Hearing on Garnishment (Non-Earnings)
- • The Judgment in the original lawsuit between the judgment creditor and the judgment debtor

These documents can be delivered personally by you, or by first class mail, or they can be served by a constable, deputy sheriff or other process server. If you use a constable, deputy sheriff or process server, you will have to pay a fee.

## STEP 2:   FILE YOUR ANSWER WITH THE COURT

You must file an Answer **within 10 business days** after the date on which you received the paperwork listed above, even if you do not have any property or owe any money to the judgment debtor. Fill out the Garnishee's Answer (Non-Earnings) form and file it with the Court. Send a copy to the judgment debtor and the judgment creditor (by mail or by personal delivery). Show on the Garnishee's Answer how you delivered the copies to the other parties. **This must be done within 10 business days.** Failure to file the Garnishee's Answer can result in an order being entered against you in the full amount of the debt owed by the judgment debtor to the judgment creditor.

> **CAUTION:  Failure to file a Garnishee's Answer can result in an order being entered against you in the full amount of the debt owed by the judgment debtor to the judgment creditor. This can happen even if you do not know the judgment debtor or do not owe the judgment debtor any money or property.**

## STEP 3:   HOLD ON TO WHATEVER PROPERTY OR MONEY YOU HAVE THAT BELONGS TO THE JUDGMENT DEBTOR UNTIL FURTHER NOTICE FROM THE COURT

The Writ of Garnishment and Summons tells you, the garnishee, to maintain control over any of the judgment debtor's property in your possession on the day the Writ was received.

- • Some types and amounts of property are not subject to garnishment. A list of these is shown on the Request for Hearing form (FORM 8). You should review this list. An attorney can help determine how much of the debtor's property is exempt.

- • Corporate garnishees should not transfer any shares or interest belonging to the judgment debtor until further court order.

## STEP 4: AWAIT THE COURT'S RULING

The Court may issue a Garnishment Judgment directing the release of the debtor's funds or other property to the judgment creditor after any objections to the garnishment are considered. The judgment creditor will send you an unsigned copy of the Garnishment Judgment at the time it is filed with the Court. After the judge has signed this form, the Court will send you a signed version of the Garnishment Judgment informing you of how to proceed. Do not proceed until you have received the signed Judgment.

If you are holding money or other property of the judgment debtor and you do not receive a signed Garnishment Judgment within 90 days of the date on which the Garnishee's Answer was filed, you must then return the property to the judgment debtor (A.R.S. § 12-1587). Before returning the property, contact the Court or the judgment creditor to verify that the Court has not in fact signed a Garnishment Judgment in your case.

**What to do if the judgment debtor objects to the Garnishment or the Garnishee's Answer:**

The judgment debtor has 10 business days after receiving the Garnishee's Answer to file a Request for Hearing on Garnishment (Non-Earnings). The judgment debtor is responsible for sending a copy of the Request for Hearing to you. The Court will notify you of the hearing date. You may attend this hearing.

1  Person Filing: _____
   Mailing Address: _____
2  City, State, Zip Code: _____
   Daytime Phone: _____
3  Representing: [ ] Self     [ ] Attorney   [ ] Other
   State Bar No. (if applicable): _____
4

5            IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
6               IN AND FOR THE COUNTY OF MARICOPA

7  In Re the Matter of:              )
                                     )  No. FC 2011-090965
8  DANIEL RYCHLIK,                   )
                                     )  **GARNISHEE'S ANSWER**
9         Petitioner/Judgment Creditor,  )  **(NON-EARNINGS)**
                                     )  **(A.R.S. § 12-1578.01 & -1579)**
10        and                        )
                                     )
11 GABRIELLE ANN SODERGREN,          )
                                     )
12        Respondent/Judgment Debtor, )
                                     )
13 JP MORGAN CHASE BANK, N.A.,       )
                                     )
14        Garnishee.                 )
                                     )
15 _____ )

16

17  ┌──────────────────────────────────────────────────────────────┐
    │ **CAUTION: Failure to file a Garnishee's Answer can result in an order being entered**
18  │ **against you in the full amount of the debt owed by the judgment debtor to the judgment**
    │ **creditor. This can happen even if you do not know the judgment debtor or do not owe**
19  │ **the judgment debtor any money or property.**
    └──────────────────────────────────────────────────────────────┘

20

21  I am the garnishee or I am authorized by the garnishee to complete and file this Answer.
    The word "money" as used in this Answer does not refer to wages.  Garnishee's name,
22  address and phone are:

23  _____

24  _____

25  _____

26

                                    1

Case No.  FC 2011-090965

2. The statements checked below are true:

(Check all boxes that apply and fill in blanks for each box checked)

A. [ ] I was not holding personal property or money belonging to judgment debtor.

B. [ ] I owed judgment debtor $_____. I am
      withholding $_____ pursuant to the Writ.

C. [ ] I released $_____ because _____
      _____

D. [ ] I was in possession of the following personal property belonging to the judgment
      debtor, (attach list if necessary):
      _____
      _____

      Pursuant to the Writ I am holding, (attach list if necessary):
      _____
      _____

E. [ ] Garnishee is a corporation in which the judgment debtor owns these shares of
      interest:
      _____
      _____

3. The following person/organization holds personal property or money which belongs to
   judgment debtor:
   _____
   _____

4. Garnishee request an answer fee in the amount of $_____, as a
   reasonable amount for the preparation and filing of this Answer

| | |
|---|---|
| Copies of the Answer, Writ of Garnishment and Summons, Notice to Judgment Debtor of Garnishment, Notice of Hearing form, Request for Hearing form and a copy of the underlying judgment were provided to judgment debtor on:<br><br>Date: _____<br><br>By: [ ] Mail [ ] Hand delivery<br>[ ] Constable, Deputy Sheriff or Process | Copy of the Answer provided to judgment creditor on:<br><br>Date: _____<br><br>By: [ ] Mail [ ] Hand delivery<br>[ ] Constable, Deputy Sheriff or Process Server |

Case No. FC 2011-090965

I affirm that the information on this Garnishee's Answer is true and correct.

_____          _____
Date                              Signature of Garnishee or Authorized Agent

State of Arizona        )
                        ) ss.
County of Maricopa      )

Subscribed and sworn to (or affirmed) before me on _____

                                  _____
                                  Notary Public or Clerk of the Court

My Commission Expires: _____

3

1  Person Filing: _____

   Mailing Address: _____

2  City, State, Zip Code: _____

   Daytime Phone: _____

3  Representing: [ ] Self    [ ] Attorney   [ ] Other

   State Bar No. (if applicable): _____

4

5              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

6                  IN AND FOR THE COUNTY OF MARICOPA

7  In Re the Matter of:                        )

                                               )  No. FC 2011-090965
8  DANIEL RYCHLIK,                             )
                                               )
9           Petitioner/Judgment Creditor,      )  **GARNISHEE'S ANSWER**
                                               )  **(NON-EARNINGS)**
10          and                                )  **(A.R.S. § 12-1578.01 & -1579)**
                                               )
11 GABRIELLE ANN SODERGREN,                    )
                                               )
12          Respondent/Judgment Debtor,        )
                                               )
13 JP MORGAN CHASE BANK, N.A.,                 )
                                               )
14          Garnishee.                         )
                                               )
15 _____       )

16

17 ┌─────────────────────────────────────────────────────────────────────┐
   │ **CAUTION: Failure to file a Garnishee's Answer can result in an order being entered**
18 │ **against you in the full amount of the debt owed by the judgment debtor to the judgment**
   │ **creditor. This can happen even if you do not know the judgment debtor or do not owe**
19 │ **the judgment debtor any money or property.**
   └─────────────────────────────────────────────────────────────────────┘

20

21 1  I am the garnishee or I am authorized by the garnishee to complete and file this Answer
      The word "money" as used in this Answer does not refer to wages.  Garnishee's name,
22    address and phone are:

23 _____

24 _____

25 _____

26 _____

                                  1

Case No.  FC 2011-090965

2. The statements checked below are true:

(Check all boxes that apply and fill in blanks for each box checked)

A. [ ] I was not holding personal property or money belonging to judgment debtor

B. [ ] I owed judgment debtor $_____. I am
       withholding $_____ pursuant to the Writ.

C. [ ] I released $_____ because _____
_____

D. [ ] I was in possession of the following personal property belonging to the judgment
       debtor, (attach list if necessary):
_____
_____

       Pursuant to the Writ I am holding, (attach list if necessary):
_____
_____

E. [ ] Garnishee is a corporation in which the judgment debtor owns these shares of
       interest:
_____
_____

3. The following person/organization holds personal property or money which belongs to
   judgment debtor·
_____
_____

4. Garnishee request an answer fee in the amount of $_____, as a
   reasonable amount for the preparation and filing of this Answer.

| | |
|---|---|
| Copies of the Answer, Writ of Garnishment and Summons, Notice to Judgment Debtor of Garnishment, Notice of Hearing form, Request for Hearing form and a copy of the underlying judgment were provided to judgment debtor on:<br><br>Date: _____<br><br>By: [ ] Mail [ ] Hand delivery<br>[ ] Constable, Deputy Sheriff or Process· | Copy of the Answer provided to judgment creditor on:<br><br>Date: _____<br><br>By: [ ] Mail [ ] Hand delivery<br>[ ] Constable, Deputy Sheriff or Process Server |

Case No. FC 2011-090965

I affirm that the information on this Garnishee's Answer is true and correct.

_____     _____
Date                        Signature of Garnishee or Authorized Agent

State of Arizona        )
                        ) ss.
County of Maricopa      )

Subscribed and sworn to (or affirmed) before me on _____

                            _____
                            Notary Public or Clerk of the Court

My Commission Expires: _____

3

Person Filing: _____
Mailing Address: _____
City, State, Zip Code: _____
Daytime Phone: _____
Representing: [ ] Self     [ ] Attorney    [ ] Other
State Bar No. (if applicable): _____

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| In Re the Matter of: | ) No. FC 2011-090965 |
| | ) |
| DANIEL RYCHLIK, | ) |
| | ) **GARNISHEE'S ANSWER** |
| Petitioner/Judgment Creditor, | ) **(NON-EARNINGS)** |
| | ) **(A.R.S. § 12-1578.01 & -1579)** |
| and | ) |
| | ) |
| GABRIELLE ANN SODERGREN, | ) |
| | ) |
| Respondent/Judgment Debtor. | ) |
| | ) |
| JP MORGAN CHASE BANK, N.A., | ) |
| | ) |
| Garnishee. | ) |

**CAUTION: Failure to file a Garnishee's Answer can result in an order being entered against you in the full amount of the debt owed by the judgment debtor to the judgment creditor. This can happen even if you do not know the judgment debtor or do not owe the judgment debtor any money or property.**

1.  I am the garnishee or I am authorized by the garnishee to complete and file this Answer. The word "money" as used in this Answer does not refer to wages. Garnishee's name, address and phone are:

    _____
    _____
    _____
    _____

1

Case No. FC 2011-090965

2. The statements checked below are true:

(Check all boxes that apply and fill in blanks for each box checked)

A. [ ] I was not holding personal property or money belonging to judgment debtor.

B. [ ] I owed judgment debtor $_____. I am
withholding $_____ pursuant to the Writ.

C. [ ] I released $_____ because _____
_____

D. [ ] I was in possession of the following personal property belonging to the judgment
debtor, (attach list if necessary):
_____
_____

Pursuant to the Writ I am holding, (attach list if necessary):
_____
_____

E. [ ] Garnishee is a corporation in which the judgment debtor owns these shares of
interest:
_____
_____

3. The following person/organization holds personal property or money which belongs to
judgment debtor:
_____
_____

4. Garnishee request an answer fee in the amount of $_____, as a
reasonable amount for the preparation and filing of this Answer

| Copies of the Answer, Writ of Garnishment and Summons, Notice to Judgment Debtor of Garnishment, Notice of Hearing form, Request for Hearing form and a copy of the underlying judgment were provided to judgment debtor on:

Date: _____

By: [ ] Mail [ ] Hand delivery
[ ] Constable, Deputy Sheriff or Process | Copy of the Answer provided to judgment creditor on:

Date: _____

By: [ ] Mail [ ] Hand delivery
[ ] Constable, Deputy Sheriff or Process Server |

Case No. FC 2011-090965

I affirm that the information on this Garnishee's Answer is true and correct.

Date                                    Signature of Garnishee or Authorized Agent

State of Arizona        )
                        ) ss.
County of Maricopa      )

Subscribed and sworn to (or affirmed) before me on _____

                                    Notary Public or Clerk of the Court

My Commission Expires: _____

3

1  Person Filing: _____
   Mailing Address: _____
2  City, State, Zip Code: _____
   Daytime Phone: _____
3  Representing: [ ] Self    [ ] Attorney    [ ] Other
   State Bar No. (if applicable): _____
4

5           IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
                IN AND FOR THE COUNTY OF MARICOPA
6

7  In Re the Matter of:                    )
                                           )  No. FC 2011-090965
8  DANIEL RYCHLIK,                         )
                                           )  **GARNISHEE'S ANSWER**
9           Petitioner/Judgment Creditor,  )  **(NON-EARNINGS)**
                                           )  **(A.R.S. § 12-1578.01 & -1579)**
10          and                            )
                                           )
11 GABRIELLE ANN SODERGREN,                )
                                           )
12          Respondent/Judgment Debtor,    )
                                           )
13 JP MORGAN CHASE BANK, N.A.              )
                                           )
14          Garnishee.                     )
                                           )
15 _____)

16

17  **CAUTION: Failure to file a Garnishee's Answer can result in an order being entered**
18  **against you in the full amount of the debt owed by the judgment debtor to the judgment**
    **creditor. This can happen even if you do not know the judgment debtor or do not owe**
19  **the judgment debtor any money or property.**

20

21  1  I am the garnishee or I am authorized by the garnishee to complete and file this Answer.
       The word "money" as used in this Answer does not refer to wages. Garnishee's name,
22     address and phone are:

23     _____

24     _____

25     _____

26

                              1

Case No. FC 2011-090965

2. The statements checked below are true:

(Check all boxes that apply and fill in blanks for each box checked)

A. [ ] I was not holding personal property or money belonging to judgment debtor.

B. [ ] I owed judgment debtor $_____. I am
withholding $_____ pursuant to the Writ.

C. [ ] I released $_____ because _____
_____

D. [ ] I was in possession of the following personal property belonging to the judgment
debtor, (attach list if necessary):
_____
_____

Pursuant to the Writ I am holding, (attach list if necessary):
_____
_____

E. [ ] Garnishee is a corporation in which the judgment debtor owns these shares of
interest:
_____
_____

3. The following person/organization holds personal property or money which belongs to
judgment debtor:
_____
_____

4. Garnishee request an answer fee in the amount of $_____, as a
reasonable amount for the preparation and filing of this Answer

| | |
|---|---|
| Copies of the Answer, Writ of Garnishment and Summons, Notice to Judgment Debtor of Garnishment, Notice of Hearing form, Request for Hearing form and a copy of the underlying judgment were provided to judgment debtor on:<br><br>Date: _____<br><br>By: [ ] Mail [ ] Hand delivery<br>[ ] Constable, Deputy Sheriff or Process | Copy of the Answer provided to judgment creditor on:<br><br>Date: _____<br><br>By: [ ] Mail [ ] Hand delivery<br>[ ] Constable, Deputy Sheriff or Process Server |

Case No. FC 2011-090965

1

2    I affirm that the information on this Garnishee's Answer is true and correct.

3

4

5    _____              _____
     Date                             Signature of Garnishee or Authorized Agent

6

7    State of Arizona        )
                             ) ss.
8    County of Maricopa      )

9    Subscribed and sworn to (or affirmed) before me on _____

10

11                                    _____
                                      Notary Public or Clerk of the Court

12

13   My Commission Expires: _____

14

15

16

17

18

19

20

21

22

23

24

25

26

                              3

1    **KATZ & BLOOM** p.l.c.
     *COUNSELORS AT LAW*
2    340 East Palm Lane, Suite A-260
     Phoenix, Arizona 85004
     www.KatzAndBloom.com
3    Tel: (602) 266-1900
     Fax: (602) 266-4243
4    JAY R. BLOOM, #16380
     Jay@KatzAndBloom.com
5    Attorney for Petitioner/Judgment Creditor

6    IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
     IN AND FOR THE COUNTY OF MARICOPA
7

8    In Re the Matter of:                         )
                                                   )  No. FC 2011-090965
9    DANIEL RYCHLIK,                               )
                                                   )  **NOTICE TO JUDGMENT DEBTOR OF**
10              Petitioner/Judgment Creditor,      )  **GARNISHMENT**
                                                   )  **(NON-EARNINGS)**
11          and                                    )
                                                   )
12   GABRIELLE ANN SODERGREN,                      )
                                                   )
13              Respondent/Judgment Debtor,        )
                                                   )
14   JP MORGAN CHASE BANK, N.A.,                   )
                                                   )
15              Garnishee.                         )
                                                   )
16   _____          )

17                              **AVISO**
18   El Tribunal ha ordenado que su empleador tome un parte de su sueldo y que pague a su acreedor
     hasta terminado el proceso en contra suya y este pagada law dueda. En conformidad con la ley,
19   su acreedo tiene el derecho a "solo una parte" de su salario. Esta noticia explica su derechos. Ud.
     puede obtener una traduccion Espanol del Tribunal.
20

21                       **NOTICE TO JUDGMENT DEBTOR**

22   You are hereby notified that this Court has issued an order in the above case in favor of the
     judgment creditor in this proceeding, directing that some of your money, property or corporate
23   shares or interest be used to satisfy some or all of your debt to the judgment creditor. The order
     was issued to enforce the judgment creditor's judgment or support order against you that was
24   obtained as follows:

25   Superior Court of the State of Arizona, Maricopa County, FC 2011-090965, December 18, 2015
     A copy of the judgment or order is attached.
26

                                        1

Case No. FC 2011-090965

The law provides that monies from certain benefits or in certain amounts are free from the claims of creditors even if deposited in a bank, savings and loan association or credit union. Some examples of exempt monies appear later in this notice. The law also provides that certain personal-property is exempt from the claims of creditors. Some examples of exempt property appear later in this notice.

The creditor named above says you haven't paid what you owe on the attached judgment or order. At the creditor's request, this Court issued a Writ of Garnishment (attached) to the garnishee named above. The writ says that some of your money or property now held by the garnishee will be withheld and may be turned over to the creditor to satisfy your debt.

Within ten days after being served with the Writ of Garnishment the garnishee who is holding your money or personal property is required to mail or deliver to you his answer stating what money or personal property he is withholding from you for the judgment creditor pursuant to the Writ.

You may object to the garnishment or file a claim of exemption by requesting a hearing with this Court, if you believe any of the following is true:

1  The judgment creditor does not have a valid provisional remedy order or support order or judgment against you or that the debt or judgment has been paid in full.

2. Some or all of the monies that are being withheld by the garnishee may be exempt monies. The following are examples that may be exempt monies:

    (a) One hundred fifty dollars in a bank, savings and loan association or credit union account. (Three hundred dollars for married account holders.)

    (b) Temporary assistance for needy families.

    (c) Supplemental security income (SSI).

    (d) Social security benefits (SSA).

    (e) Veterans' administration benefits (VA).

    (f) Certain pension benefits and retirement funds.

    (g) Workers' compensation benefits.

    (h) Some insurance proceeds.

2

Case No. FC 2011-090965

Other state and federal exemptions may apply. Certain exemptions may not apply to support orders or to the collection of taxes. An attorney can assist you in determining what monies are exempt.

3. Some or all of the personal property being withheld by the garnishee may be exempt property. Examples of exempt personal property are:

    (a) Household goods, furniture and appliances.

    (b) Up to $5,000 equity value for each owner of a car or truck. ($10,000 equity value if the owner is physically disabled).

    (c) Wearing apparel, musical instruments, televisions or stereos and other personal items.

    (d) Tools and equipment used in a commercial activity, trade, business or profession.

These exemptions are limited in statute by description and dollar value. An attorney can assist you in determining what personal property is exempt. A comprehensive listing of exemptions is available from the website for the U.S. Bankruptcy Court for the District of Arizona, http://www.azb.uscourts.gov/Documents/arizona_exemptions.pdf

4. More than fifteen days have passed since the garnishee was served with the Writ and you have not yet received the Garnishee's Answer.

5. You otherwise disagree with the Answer of the garnishee. To request a hearing, deliver the request for hearing form enclosed, or a substantially similar form to the Court Clerk's office. At the same time, you must mail or deliver a copy (photocopy or handwritten copy) of the request for hearing to the judgment creditor and the garnishee at the address stated in the Writ. If you do not deliver the request for hearing form to this Court within ten days after the date you receive the Answer of garnishee, your request for hearing will be denied, unless a good reason for the delay, acceptable to the Court, is shown.

If you request a hearing it will be held no later than five days, not including weekends and holidays, after your request is received by the Court. If appropriate, you may request a hearing before the garnishee files his Answer.

The Court will notify you and the other parties of the time and date of the hearing. You may attend the hearing with or without an attorney.

*WARNING: If you want a hearing, the Court must receive the hearing request form within ten (10) days after you get Garnishee's Answer. If you don't get the request in on time, you won't get a hearing unless there is a very good reason why you're late.*

3



For People Representing Themselves in Family Court

# FAMILY LAWYERS ASSISTANCE PROJECT

Sponsored by the Volunteer Lawyers Program & Community Legal Service

Volunteer Lawyers Provide Legal Advice in Family Law Matters

*For information about scheduling an appointment with FLAP at our various locations Please Call our Central Office:*

## (602) 506-7948

**or visit our main office at:**
**Phoenix Superior Court**
**201 W. Jefferson, 6th Floor, FLAP Check-in Window**

*Normal Office Hours to Schedule Appointments*
*Monday through Thursday   9:00 – 12:00  & 1:30 – 4:00*

➢ Please read the instructions posted at the FLAP check-in window- then you will receive an appointment for a future time; OR, for easy access, call the central office phone number at 602-506-7948.
➢ Stand-by appointments may be an option for cases determined to be emergencies, and based on attorney availability.
➢ Clients are encouraged to bring their own interpreters to FLAP appointments in case there are insufficient bi-lingual attorneys at that time.
➢ Attorneys provide instructions, advice and check forms filled out by clients, but are unable to provide complete document preparation services due to time limitations.
➢ If staff is unavailable when you arrive to schedule an appointment, please follow instructions and complete the intake form.  Then place it in the appropriate slot.   Staff will call you on the phone to schedule your appointment.  Thank you.

**The ½-hour consultations are free to eligible clients.**
**There is a $40 cash fee for those who do not meet eligibility.**

**Please note:  FLAP Is Not A Walk-in Program.  By Appointment Only.**
*Clients are encouraged to use FLAP as often as necessary.  Free Representation is not available. Clients may discuss the possibility of hiring the attorney during their meeting.  Financial arrangements discussed between client and attorney is not associated with the FLAP program.  FLAP volunteers may not always be available.  For additional help, call Lawyer Referral Service: 602-257-4434*

LRD 08-2011                                                                                                          GN50i

**KATZ & BLOOM** P.L.C.
*COUNSELORS AT LAW*
340 East Palm Lane, Suite A-260
Phoenix, Arizona 85004
www.KatzAndBloom.com
Tel: (602) 266-1800
Fax: (602) 266-4243

JAY R. BLOOM, #16380
Jay@KatzAndBloom.com
Attorney for Petitioner/Judgment Creditor

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| In Re the Matter of: | ) No. FC 2011-090965 |
| | ) |
| DANIEL RYCHLIK, | ) |
| | ) **WRIT OF GARNISHMENT AND** |
| Petitioner/Judgment Creditor, | ) **SUMMONS** |
| | ) **(NON-EARNINGS)** |
| and | ) **(A.R.S. §§ 12-1571 through -1574)** |
| | ) |
| GABRIELLE ANN SODERGREN, | ) |
| | ) |
| Respondent/Judgment Debtor, | ) |
| | ) |
| JP MORGAN CHASE BANK, N.A., | ) |
| | ) |
| Garnishee. | ) |

**TO THE SHERIFF, CONSTABLE OR OTHER AUTHORIZED PROCESS SERVER IN MARICOPA COUNTY** You are commanded to summon garnishee named above, who is believed to be in your county, to answer the following claims:

**STATEMENTS OF THE JUDGMENT CREDITOR**

1    Judgment Creditor was awarded a Judgment or Order against GABRIELLE ANN SODERGREN, (Judgment Debtor).

2.    The amount of the outstanding balance on the Judgment or Order, including accrued interest and allowable costs, is **$17,623.10**, (through October 24, 2016). Interest accrues at the rate of 4.25% per   The cost of serving this Writ of Garnishment will be as shown on the Affidavit of Service and may be added to the judgment.

3.    Judgment Creditor believes garnishee hold nonexempt property or money other than wages owed or belonging to Judgment Debtor.

1

4.    The names and addresses of all parties are:

Daniel Rychlik
1545 San Roque Road
Santa Barbara, California 93105
Judgment Creditor

Gabrielle Ann Sodergren
14912 North 97th Place
Scottsdale Arizona 85260
Judgment Debtor

JP Morgan Chase Bank, N.A.
c/o CT Corporation System
3800 North Central Avenue Suite 460
Phoenix, Arizona 85012
Garnishee

## TO THE GARNISHEE (A.R.S. § 12-1579)

YOU SHALL answer all the following questions in writing, under oath, on a separate document. Your answer shall be filed with the Court Clerk within 10 business days after you are served with this Writ of Garnishment.

A. Were you holding personal property or money other than wages belonging to the judgment debtor at the time this Writ was served on you?

B. How much money do you owe the judgment debtor and how much of that money did you withhold pursuant to the Writ? Did you release any of that money after you were served with the Writ, and, if so, how much did you release and why?

C. Did you possess any personal property belonging to the judgment debtor at the time the Writ was served on you? If so, please describe each item or group of items you held and describe the specific items of personal property you withheld pursuant to the Writ, if any.

D. If the garnishee is a corporation, what shares or interest does the judgment debtor own?

2

1
2

**SUMMONS**

A Writ of Garnishment has been issued, naming you as garnishee. You are required to answer
3   this Writ in writing, under oath, and file the answer with the Court Clerk within 10 business
days after service on you. If you fail to file an answer, you may be ordered to appear in person
4   to answer this Writ, and a default judgment may be entered against you. If a default judgment
is entered against you, you may be ordered to pay the full amount shown on this Writ, plus
5   judgment creditor's costs and attorney fees.

6

7   **THIS SUMMONS IS NOT A REQUEST TO SEND ANY MONEY OR PROPERTY TO
8   THE COURT**

COPY

9   **Date**                                      Judicial Officer    OCT 2 5 2016

10                                                         MICHAEL K. JEANES, CLERK
                                                                 V. CANISALES
11                                                              DEPUTY CLERK

12   **NOTICE TO GARNISHEE**
You should have been served with a blank Garnishee's Answer form. You may complete and
13   file this form to make your required answer.

14

15              If you would like legal advice from a lawyer,
                    Contact the Lawyer Referral Service at
16                              602-257-4434
                                     or
17                        www.maricopalawyers.org
                              Sponsored by the
18                    Maricopa County Bar Association

19
20
21
22
23
24
25
26

3

**KATZ & BLOOM** P.L.C.
COUNSELORS AT LAW
340 East Palm Lane, Suite A-260
Phoenix, Arizona 85004
www.KatzAndBloom.com
Tel: (602) 266-1900
Fax: (602) 266-4243
JAY R. BLOOM, #16380
Jay@KatzAndBloom.com
Attorney for Petitioner/Judgment Creditor

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| In Re the Matter of: | ) No. FC 2011-090965 |
| | ) |
| DANIEL RYCHLIK, | ) |
| | ) **NOTICE TO JUDGMENT DEBTOR OF** |
| Petitioner/Judgment Creditor, | ) **GARNISHMENT** |
| | ) **(NON-EARNINGS)** |
| and | ) |
| | ) |
| GABRIELLE ANN SODERGREN, | ) |
| | ) |
| Respondent/Judgment Debtor, | ) |
| | ) |
| JP MORGAN CHASE BANK, N.A., | ) |
| | ) |
| Garnishee. | ) |

**AVISO**

El Tribunal ha ordenado que su empleador tome un parte de su sueldo y que pague a su acreedor hasta terminado el proceso en contra suya y este pagada law dueda. En conformidad con la ley, su acreedo tiene el derecho a "solo una parte" de su salario. Esta noticia explica su derechos. Ud. puede obtener una traduccion Espanol del Tribunal.

**NOTICE TO JUDGMENT DEBTOR**

You are hereby notified that this Court has issued an order in the above case in favor of the judgment creditor in this proceeding, directing that some of your money, property or corporate shares or interest be used to satisfy some or all of your debt to the judgment creditor. The order was issued to enforce the judgment creditor's judgment or support order against you that was obtained as follows:

Superior Court of the State of Arizona, Maricopa County, FC 2011-090965, December 18, 2015
A copy of the judgment or order is attached.

1

Case No. FC 2011-090965

The law provides that monies from certain benefits or in certain amounts are free from the claims of creditors even if deposited in a bank, savings and loan association or credit union. Some examples of exempt monies appear later in this notice. The law also provides that certain personal property is exempt from the claims of creditors. Some examples of exempt property appear later in this notice.

The creditor named above says you haven't paid what you owe on the attached judgment or order  At the creditor's request, this Court issued a Writ of Garnishment (attached) to the garnishee named above. The writ says that some of your money or property now held by the garnishee will be withheld and may be turned over to the creditor to satisfy your debt.

Within ten days after being served with the Writ of Garnishment the garnishee who is holding your money or personal property is required to mail or deliver to you his answer stating what money or personal property he is withholding from you for the judgment creditor pursuant to the Writ.

You may object to the garnishment or file a claim of exemption by requesting a hearing with this Court, if you believe any of the following is true:

1  The judgment creditor does not have a valid provisional remedy order or support order or judgment against you or that the debt or judgment has been paid in full.

2. Some or all of the monies that are being withheld by the garnishee may be exempt monies. The following are examples that may be exempt monies:

    (a) One hundred fifty dollars in a bank, savings and loan association or credit union account. (Three hundred dollars for married account holders.)

    (b) Temporary assistance for needy families.

    (c) Supplemental security income (SSI).

    (d) Social security benefits (SSA).

    (e) Veterans' administration benefits (VA).

    (f) Certain pension benefits and retirement funds.

    (g) Workers' compensation benefits.

    (h) Some insurance proceeds.

2

Case No. FC 2011-090965

**Other state and federal exemptions may apply. Certain exemptions may not apply to support orders or to the collection of taxes. An attorney can assist you in determining what monies are exempt.**

3. Some or all of the personal property being withheld by the garnishee may be exempt property. Examples of exempt personal property are:

 (a) Household goods, furniture and appliances.

 (b) Up to $5,000 equity value for each owner of a car or truck. ($10,000 equity value if the owner is physically disabled).

 (c) Wearing apparel, musical instruments, televisions or stereos and other personal items.

 (d) Tools and equipment used in a commercial activity, trade, business or profession.

**These exemptions are limited in statute by description and dollar value. An attorney can assist you in determining what personal property is exempt.** A comprehensive listing of exemptions is available from the website for the U.S. Bankruptcy Court for the District of Arizona, http://www.azb.uscourts.gov/Documents/arizona_exemptions.pdf

4. More than fifteen days have passed since the garnishee was served with the Writ and you have not yet received the Garnishee's Answer.

5. You otherwise disagree with the Answer of the garnishee. To request a hearing, deliver the request for hearing form enclosed, or a substantially similar form to the Court Clerk's office. At the same time, you must mail or deliver a copy (photocopy or handwritten copy) of the request for hearing to the judgment creditor and the garnishee at the address stated in the Writ. If you do not deliver the request for hearing form to this Court within ten days after the date you receive the Answer of garnishee, your request for hearing will be denied, unless a good reason for the delay, acceptable to the Court, is shown.

If you request a hearing it will be held no later than five days, not including weekends and holidays, after your request is received by the Court. If appropriate, you may request a hearing before the garnishee files his Answer.

The Court will notify you and the other parties of the time and date of the hearing. You may attend the hearing with or without an attorney

*WARNING: if you want a hearing, the Court must receive the hearing request form within ten (10) days after you get Garnishee's Answer. If you don't get the request in on time, you won't get a hearing unless there is a very good reason why you're late.*

3

**1**  Person Filing: _____
Mailing Address: _____
**2**  City, State, Zip Code: _____
Daytime Phone: _____
**3**  Representing: [ ] Self    [ ] Attorney    [ ] Other
State Bar No. (if applicable): _____
**4**

**5**           IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
              IN AND FOR THE COUNTY OF MARICOPA
**6**

**7**  In Re the Matter of:                    )
                                        ) No. FC 2011-090965
**8**  DANIEL RYCHLIK,                         )
                                        ) **REQUEST FOR HEARING ON**
**9**         Petitioner/Judgment Creditor,    ) **GARNISHMENT**
                                        ) **(NON-EARNINGS)**
**10**        and                             )
                                        )
**11** GABRIELLE ANN SODERGREN,                )
                                        )
**12**        Respondent/Judgment Debtor,      )
                                        )
**13** JP MORGAN CHASE BANK, N.A.              )
                                        )
**14**        Garnishee.                       )
                                        )
**15**                                         )

**16**
I am the judgment debtor or I represent the judgment debtor in this action. I want a hearing
**17** on the garnishment of earnings from this garnishee because:

**18** Check all that apply

**19** [ ] The judgment creditor does not have a valid judgment against me because:

**20** _____

**21**
[ ] The judgment has been paid.
**22**
[ ] Exempt money is being garnished:
**23**
**24**        [ ] $150 ($300/married) in a bank, savings and loan or credit union.

**25**        [ ] Temporary assistance for needy families, social security, supplemental security
               income or veterans' benefits.
**26**

                                  1

Case No. FC 2011-090965

[ ] Other pension or retirement benefits.

[ ] Workers' compensation or other insurance benefits.

[ ] Other:_____

[ ] Exempt personal property is being garnished:

    [ ] Household goods, furnishings or appliances.

    [ ] A car or truck with equity under $5,000 ($10,000 if owner is disabled).

    [ ] Personal items.

    [ ] Tools and equipment of a trade.

    [ ] Other:_____

[ ] Garnishee's Answer is not correct because _____

_____

[ ] No answer was received within 15 days.

[ ] Other:_____

| Copy provided to judgment creditor on: | Copy provided to garnishee on: |
| --- | --- |
| Date: _____ | Date: _____ |
| By: [ ] Mail [ ] Hand delivery | By: [ ] Mail [ ] Hand delivery |

The Court can call me at _____ between 8 a.m. and 5 p.m. regarding the hearing, if necessary.

_____     _____
Date                                     Judgment Debtor or Authorized Agent

**WARNING: To request a hearing, this document, or one similar, must be received by the Court within 10 business days after you receive Garnishee's Answer, unless you show good reason for the delay.**

2

Person Filing: _____
Mailing Address: _____
City, State, Zip Code: _____
Daytime Phone: _____
Representing: [ ] Self    [ ] Attorney    [ ] Other
State Bar No. (if applicable): _____

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| In Re the Matter of: | ) No. FC 2011-090965 |
| | ) |
| DANIEL RYCHLIK, | ) |
| | ) **REQUEST FOR HEARING ON** |
| Petitioner/Judgment Creditor, | ) **GARNISHMENT** |
| | ) **(NON-EARNINGS)** |
| and | ) |
| | ) |
| GABRIELLE ANN SODERGREN, | ) |
| | ) |
| Respondent/Judgment Debtor, | ) |
| | ) |
| JP MORGAN CHASE BANK, N.A., | ) |
| | ) |
| Garnishee. | ) |

I am the judgment debtor or I represent the judgment debtor in this action. I want a hearing on the garnishment of earnings from this garnishee because:

Check all that apply

[ ] The judgment creditor does not have a valid judgment against me because:

_____

_____

[ ] The judgment has been paid.

[ ] Exempt money is being garnished:

    [ ] $150 ($300/married) in a bank, savings and loan or credit union.

    [ ] Temporary assistance for needy families, social security, supplemental security income or veterans' benefits.

1

Case No. FC 2011-090965

[ ] Other pension or retirement benefits.

[ ] Workers' compensation or other insurance benefits.

[ ] Other: _____

[ ] Exempt personal property is being garnished:

    [ ] Household goods, furnishings or appliances.

    [ ] A car or truck with equity under $5,000 ($10,000 if owner is disabled).

    [ ] Personal items.

    [ ] Tools and equipment of a trade.

    [ ] Other: _____

[ ] Garnishee's Answer is not correct because _____

_____

[ ] No answer was received within 15 days.

[ ] Other: _____

| Copy provided to judgment creditor on: | Copy provided to garnishee on: |
|---|---|
| Date: _____ | Date: _____ |
| By: [ ] Mail [ ] Hand delivery | By: [ ] Mail [ ] Hand delivery |

The Court can call me at _____ between 8 a.m. and 5 p.m. regarding the hearing, if necessary.

_____    _____
Date                       Judgment Debtor or Authorized Agent

**WARNING: To request a hearing, this document, or one similar, must be received by the Court within 10 business days after you receive Garnishee's Answer, unless you show good reason for the delay.**

2

Person Filing: _____
Mailing Address: _____
City, State, Zip Code: _____
Daytime Phone: _____
Representing:  [ ] Self      [ ] Attorney    [ ] Other
State Bar No. (if applicable): _____

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

In Re the Matter of:                          )
                                              )  No. FC 2011-090965
DANIEL RYCHLIK,                               )
                                              )  **NOTICE OF HEARING ON**
          Petitioner/Judgment Creditor,       )  **GARNISHMENT**
                                              )  **(NON-EARNINGS)**
     and                                      )
                                              )
GABRIELLE ANN SODERGREN,                      )
                                              )
          Respondent/Judgment Debtor,         )
                                              )
JP MORGAN CHASE BANK, N.A.,                   )
                                              )
          Garnishee.                          )
_____   )

A request for hearing has been filed.

This matter is set for a hearing before _____ (Judicial Officer) at the
following date, time and place:

Date: _____

Time: _____

Place: _____

_____

1

Bring to the Court hearing any documents or exhibits you want to use as proof in your case.

If any party fails to appear at the hearing after proper notice, the Court may:

- Take evidence and/or oral testimony from any parties who do appear

- Make a decision based on the information provided in the documents filed and at the hearing

- Inform the parties who are present of the decision and sign appropriate orders.

> Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case in advance of a scheduled Court proceeding. If you require the services of an interpreter for a foreign language or for the hearing impaired, contact the Court immediately to determine whether accommodations can be made to assist you or to receive further information.

Date _____          Judicial Officer _____

2

1  Person Filing: _____
   Mailing Address: _____
2  City, State, Zip Code: _____
   Daytime Phone: _____
3  Representing: [ ] Self     [ ] Attorney    [ ] Other
   State Bar No..(if applicable): _____
4

5        IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
6          IN AND FOR THE COUNTY OF MARICOPA

7  In Re the Matter of:                )
                                        )  No. FC 2011-090965
8  DANIEL RYCHLIK,                      )
                                        )  **NOTICE OF HEARING ON**
9          Petitioner/Judgment Creditor, )  **GARNISHMENT**
                                        )  **(NON-EARNINGS)**
10         and                          )
                                        )
11 GABRIELLE ANN SODERGREN,             )
                                        )
12         Respondent/Judgment Debtor,  )
                                        )
13 JP MORGAN CHASE BANK, N.A.,          )
                                        )
14         Garnishee.                   )
                                        )
15 _____     )

16 A request for hearing has been filed.

17 This matter is set for a hearing before _____ (Judicial Officer) at the
18 following date, time and place:

19 Date: _____

20 Time: _____

21 Place: _____

22

23

24

25

26

                            1

Case No. FC 2011-090965

Bring to the Court hearing any documents or exhibits you want to use as proof in your case.

If any party fails to appear at the hearing after proper notice, the Court may:

• Take evidence and/or oral testimony from any parties who do appear

• Make a decision based on the information provided in the documents filed and at the hearing

• Inform the parties who are present of the decision and sign appropriate orders.

---

Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case in advance of a scheduled Court proceeding. If you require the services of an interpreter for a foreign language or for the hearing impaired, contact the Court immediately to determine whether accommodations can be made to assist you or to receive further information.

---

Date                          Judicial Officer

2

To      18666990618
From    COAL.CT Corp@jpmchase.com
Date    October 28, 2016 11:41:57 GMT
Subj    530081244
Pages   40

---

This communication is for informational purposes only  It is not intended as an offer or solicitation for the purchase or sale of any financial instrument or as an official confirmation of any transaction. All market prices, data and other information are not warranted as to completeness or accuracy and are subject to change without notice. Any comments or statements made herein do not necessarily reflect those of JPMorgan Chase & Co.  its subsidiaries and affiliates (collectively  "JPMC"). This transmission may contain information that is proprietary  privileged, confidential and/or exempt from disclosure under applicable law  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. If you received this transmission in error  please immediately contact the sender and destroy the material in its entirety  whether in electronic or hard copy format. Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by JPMC for any loss or damage arising in any way from its use. Please note that any electronic communication that is conducted within or through JPMC's systems is subject to interception, monitoring, review retention and external production in accordance with JPMC's policy and local laws, rules and regulations: may be stored or otherwise processed in countries other than the country in which you are located; and will be treated in accordance with JPMC policies and applicable laws and regulations. Please refer to http://www.jpmorgan.com/pages/disclosures for disclosures relating to European legal entities.

EXCERPT PAGE
00117

# TAB 2

**KATZ & BLOOM** *P.L.C.*
*COUNSELORS AT LAW*
340 East Palm Lane, Suite A-260
Phoenix, Arizona 85004
www.KatzAndBloom.com
Tel: (602) 266-1900
Fax: (602) 266-4243

JAY R. BLOOM, #16380
Jay@KatzAndBloom.Com
Attorney for Creditor Dr. Daniel Rychlik

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTICT OF ARIZONA

| | |
|---|---|
| In Re: | Chapter 13 |
| GABRIELLE ANN SODERGREN, | Case No.:  2:16-bk-12689-SHG |
| Debtor. | Adv. Pro.:  2:17-ap-00267-SHG |
| GABRIELLE ANN SODERGREN, | **DEFENDANT/COUNTERCLAIMANT'S RESPONSE TO PLAINTIFF/COUNTERDEFENDANT'S MOTION FOR SUMMARY JUDGMENT and COUNTER MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff/Counter-Defendant, | |
| vs. | |
| DANIEL RYCHLIK, | |
| Defendant/Counterclaimant. | |

Defendant/Counterclaimant, Daniel Rychlik, (hereinafter "Rychlik"), by and through

his undersigned counsel, herein submits his Response to the Motion for Summary Judgment

submitted on behalf of Plaintiff-Counter-Defendant, Gabrielle Ann Sodergren, (hereinafter

"Sodergren").  The issue presented in Sodergren's Motion should be resolved by summary

judgment because there are no genuine issues of material fact.  However, based on the

undisputed material facts, it is Rychlik, not Sodergren, who is entitled to a determination as

a matter of law, that the judgment at issue is a non-dischargeable Domestic Support Order,

("DSO").  Accordingly, Rychlik further herein moves the Court for summary judgment in

his favor, as set forth more fully in the Memorandum of Points and Authorities attached hereto and incorporated herein, as supported by the accompanying Creditor's Separate Statement of Facts, ("CSSOF").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION:

The issue before the Court is whether the December 18, 2015, Judgment, ("Judgment"), in favor of Rychlik and against Sodergren in the principle amount of $17,181.00, issued by the Arizona Family Court in a post Decree child custody proceeding is a non-dischargeable DSO.  (CSSOF Exhibit 5).

The analysis and disposition of this issue is simplified because there is directly on-point authority that provides the controlling case law which fully supports Rychlik's position.  (*In re Bradshaw*, Case No. BR-05-24647-PHX-CGC (Bankr.Ariz. 8/24/2007) (Bankr.Ariz., 2007), at 1, citing *In re Change,* 163 F.3d 1138, 1141 (9th Cir. 1998); *In re Catlow,* 663 F.2d 960 (9th Cir. 1981); *In re Jarski,* 301 B.R. 342, 347 (Bankr. D. Ariz. 2003).).  The Ninth Circuit recognizes a precedential presumption in favor of Rychlik's position that that the Judgment is a DSO, based on the undisputed material facts, and it clearly defines the factual burden shifted on Sodergren that is necessary to rebut that presumption, (which Sodergren is unable to meet).  (*Id.*).

### II.     SUMMARY OF FACTS:

In the Summary of Facts included in Sodergren's Motion for Summary Judgment, (DSSOF), she attempts to misdirect by including facts entirely immaterial to the issue presented.  To facilitate clarity, Rychlik addresses here all of the facts included in Sodergren's Motion, and provides the statements of fact that are actually material to the

Court's determination.  It is further notable that Sodergren's introduction, (titled Summary of Motion), includes several supposed statements of fact that are not included in her DSSOF, not supported by the record, and also intended to misdirect.  Those shall be addressed later herein, in Rychlik's Argument.

1.   Rychlik and Sodergren were married and have four minor children together. (CSSOF at II ¶ 1; DSSOF at ¶ 1).

2.   A Decree of Dissolution of Marriage was entered on December 16, 2011, in case FC 2011-090965.  (CSSOF at II ¶ 2; DSSOF at ¶ 2).

3.   Findings in the 2011 Decree of Dissolution regarding the parties' financial resources at that time, and the Orders at that time regarding spousal maintenance and child support, are entirely immaterial to the issue presented which regards the Judgment entered in separate post-decree custody proceedings years later.  (DSSOF at ¶ 3).

4.   On October 7, 2013, Sodergren notified Rychlik by certified mail that she wished to relocate with the children to the State of Illinois.  In response, Rychlik initiated a post-decree custody proceeding by filing a "Petition to Prevent Relocation," on November 6, 2013.  (CSSOF at II ¶ 3; DSSOF at ¶ 4).

5.   On November 6, 2014, (exactly one year after initiating the post-decree custody proceedings), Rychlik therein filed an "Emergency Petition for Temporary Orders Without Notice Re: Legal Decision Making and Parenting Time."  At that time, all four children were residing in Sodergren's primary care in Arizona while Rychlik was residing in Virginia.  (CSSOF at II ¶ 4; DSSOF at ¶ 5).

6.   On November 21, 2014, the Court held an initial Emergency Temporary Orders Hearing on Rychlik's Emergency Petition for Temporary Orders.  The Family Court's

Emergency <u>Temporary Orders</u> Rulings are set forth in a November 24, 2014, Minute Entry Order, including ordering all four children to temporarily relocate to Virginia to be in Rychlik's primary care, and setting an extended Temporary Orders evidentiary hearing for March 31, 2015.  (CSSOF at II ¶ 5; DSSOF at ¶ 6).

7.   On March 31, 2015, the Family Court conducted the full Temporary Orders Hearing.  The Family Court's Temporary Orders Rulings are set forth in a Minute Entry dated April 8, 2015, including ordering all four children to temporarily relocate back to Arizona in Sodergren's primary care.  Therein, the Family Court also granted temporary attorney fees to Sodergren; that temporary award is entirely immaterial to the issue presented.  (CSSOF at II ¶ 6; DSSOF at ¶ 7).

8.   During the approximately six month period within the proceedings at issue, from January through June, 2015, when the parties' four children resided primarily with Rychlik in Virginia, Sodergren became obligated to provide child support to Rychlik pursuant to A.R.S. § 25-320 and § 25-403.09.  Payment of Sodergren's child support obligation to Rychlik for that period was later resolved by an offset agreement between the parties entered in the Family Court on July 21, 2016.  (CSSOF at II ¶ 7).

9.   On April 13, 2015, Sodergren filed a "Notice of Withdrawal of Request to Relocate Minor Children to Illinois."  (CSSOF at II ¶ 8; DSSOF at ¶ 8).

10.   The Family Court's July 23, 2015, temporary judgment awarding Sodergren attorney fees and costs is immaterial to the issue presented.  That temporary order was not affirmed in the Family Court's final Orders on Rychlik's November 6, 2013, Petition; accordingly, all of the temporary orders, (including that award), were extinguished by operation of law pursuant to A.R.S. § 25-315(F)(4).  (CSSOF Exhibit 3; DSSOF at ¶ 9).

11. On July 27, 2015, Rychlik filed a "Motion for Summary Judgment Re: Petition to Prevent Relocation," ("MSJ"), therein requesting the Court grant the relief requested in his Petition, including an order prohibiting Sodergren from relocating the children to Illinois and an award to Rychlik for attorney fees and costs. (CSSOF at II ¶ 9; DSSOF at ¶ 10).

12. Sodergren did not file a Response to Rychlik's MSJ. The reason Sodergren did not file a Response is immaterial to the issue presented, but Sodergren's excuse that *"the entire issue was moot at that point,"* is false; one of the issues remaining was the request in Rychlik's Petition for an award of his attorney fees and costs. (DSSOF at ¶ 11).

13. On September 25, 2015, the Family Court issued an Order granting Rychlik's MSJ, and setting forth a briefing schedule for Rychlik's fee application. (CSSOF at II ¶ 10; DSSOF at ¶ 12; CSSOF Exhibit 3).

14. On October 23, 2015, Rychlik filed his "Application and Affidavit Re: Attorney Fees and Costs," ("Fee Application"). (CSSOF at II ¶ 11; DSSOF at ¶ 13; DSSOF Exhibit 3).

15. On November 13, 2015, Sodergren filed her Objection to Rychlik's Fee Application, and on November 24, 2015, Rychlik filed his Reply. (CSSOF at II ¶ 12; CSSOF Exhibits 4 and 5; DSSOF at ¶ 14).

16. In his Fee Application and Reply, Rychlik requests an award of attorney fees and costs pursuant to A.R.S. § 25-324, and argues Sodergren maintained unreasonable positions during the litigation. In her Objection, Sodergren argued she was not unreasonable, that Rychlik was unreasonable, and that Rychlik had superior financial resources. In his Reply, Rychlik argued that the Court's analysis of the parties' relative financial resources should include the substantial financial assistance Sodergren received from her family, the spousal

maintenance she was receiving, and Rychlik's recent bankruptcy.  (CSSOF at II ¶ 13;

DSSOF Exhibit 3; CSSOF Exhibits 4 and 5; DSSOF at ¶ 15).

     17.   In her Objection, Sodergren acknowledged that the Family Court's

determination of the Fee Application is controlled by A.R.S. § 25-324, sub-section A, to

which she exclusively provides specific citation:

> 1.  This Court's consideration of Petitioner's Application for Fees and
> Costs is controlled by the provisions of A.R.S. § 25-324.  The relevant
> provisions of A.R.S. § 25-324 provide as follows:
>
>> The Court from time to time, after considering the
>> financial resources of both parties and the reasonableness of
>> the positions each party has taken throughout the
>> proceedings, may order a party to pay a reasonable amount to
>> the other party for the costs and expenses of maintaining or
>> defending any proceedings under this chapter or chapter 4,
>> article 1 of this title.
>
> … 3.  The provisions of A.R.S. § 25-324 [A] require the Court to consider
> essentially two factors.  First, the financial resources of both parties and
> second, the reasonableness of the positions each party has taken
> throughout the proceedings."

(CSSOF at II ¶ 14; CSSOF Exhibit 4, Sodergren Objection at 2, ¶ ¶ 1 and 3).

     18.  The Fee Application was made pursuant to subsection A of A.R.S. § 25-324; the

only two factors for consideration discussed in Rychlik's Fee Application, Sodergren's

Objection, and Rychlik's Reply are the two factors that the Family Court is required to

consider pursuant to subsection A; none of the factors that the Court would have to consider,

and is required to make findings on, when awarding fees and costs pursuant to subsection B

are raised in either party's filings, and the only *"petition"* at issue for which the Judgment

was entered, was the Petition to Prevent Relocation filed by Rychlik..  (CSSOF at II ¶ 15;

DSSOF Exhibit 3; CSSOF Exhibits 4 and 5).

19.  Nowhere in Rychlik's Fee Application and Reply did he claim Sodergren violated any Court Orders.  Nowhere in Rychlik's Fee Application and Reply did he claim Sodergren engaged in any litigation abuses, discovery violations, or any other misconduct that warrant sanctions against Sodergren.  Rychlik never requested the Court impose any sanctions against Sodergren.  (CSSOF at II ¶ 16).

20.  At no time did Rychlik ever request an award pursuant to the Family Law sanctions statute, A.R.S. § 25-415, which expressly provides for awards of attorney fees and costs as a *"sanction."*  (CSSOF at II ¶ 17).

21.  On December 18, 2015, the Family Court entered the Judgment for attorney fees and costs in favor of Rychlik and against Sodergren, in the principal amount of $17,181. (CSSOF at II ¶ 18; CSSOF Exhibit 6).

22.  The Judgment does not provide any of the findings that are <u>required</u> to be entered for a Court to award attorney fees and costs pursuant to A.R.S. § 25-324(B), and it does not provide any of the findings that are <u>required</u> to be entered for a Court to award attorney fees and costs pursuant to the Family Law sanctions statute, A.R.S. § 25-415.  (CSSOF at II ¶ 19; DSSOF at ¶ 16; CSSOF Exhibit 6).

23. The Judgment does not state or imply in any way that it was entered *"purely as a sanction,"* or even *in part* as a sanction.  (CSSOF at II ¶ 20).

24. Nothing in the Family Court record indicates the Judgement was entered *"purely as a sanction,"* or even *in part* as a sanction.  (CSSOF at II ¶ 21)**.**

///

///

///

## III.   ARGUMENT

### A.   The Judgment is Presumed to be a DSO:

In her pending Motion, Sodergren unnecessarily offers this Court tortured argument based on the general case law regarding the determination of whether a debt is a DSO. Rychlik declines to be baited into responding to Sodergren's flawed arguments because all such underlying analysis is unnecessary under the facts of this matter.  Based on the applicable underlying legal considerations, the Ninth Circuit has determined that under certain specific factual circumstances, a judgment for attorney's fees and costs is _presumed_ to be a DSO.  (See, *In re Bradshaw*, Case No. BR-05-24647-PHX-CGC (Bankr.Ariz. 8/24/2007) (Bankr.Ariz., 2007), at 1, citing *In re Change,* 163 F.3d 1138, 1141 (9th Cir. 1998); *In re Catlow,* 663 F.2d 960 (9th Cir. 1981); *In re Jarski,* 301 B.R. 342, 347 (Bankr. D. Ariz. 2003)).   The analysis and disposition of this matter is therefore simplified, narrowing it to the following: 1) Does the presumption of a DSO exist under the facts?  2) If so, is Sodergren able to rebut that presumption?

The Ninth Circuit recognizes a precedential presumption in favor of Rychlik's position that the Judgment is a DSO, and it clearly defines the factual burden shifted on Sodergren that is necessary to rebut that presumption, (which Sodergren is unable to meet). *Bradshaw* provides,

> In awarding these fees, the state court properly focused on two factors, as required under Arizona Revised Statute section 25-324: 1) The financial resources of both parties; and 2) The reasonableness of the parties' positions throughout the proceedings. The Ninth Circuit has recognized that **a presumption exists** that fees awarded **under this statute** in matters involving **child custody or child support** are considered **in the nature of child support** <u>unless the record reflects otherwise.</u>

(*Bradshaw* at 1; emphasis added).

The Ninth Circuit determined that the presumption exists based on Arizona's statutory scheme under which *"the best interests of the child is the dispositive issue."* (See *In re Jarski*, 301 B.R. 342 (Bankr.Ariz., 2003) at 347). As explained in *Jarski*, the presumption is the product of Arizona's statutory requirement that custody disputes be resolved in the *"best interests of the child,"* (citing A.R.S. § 25-403(A)), and the statutory requirement that *"any award of attorney's fees must be based upon consideration of "the financial resources of both parties and the reasonableness of the positions each party has taken" in the child custody dispute."* Since child custody disputes occur in proceedings originating as either actions for Dissolution of Marriage or Paternity actions, it follows that the presumption applies when an attorney fee award is entered pursuant to A.R.S. § 25-324(A), or A.R.S. § 25-809(G)[1]. Therefore, the existence of a presumption that an award of attorney fees is a DSO, requires only the following two factual circumstances:

1) The attorney fee award was provided in a matter involving child custody or child support, and

2) The award is entered pursuant to A.R.S. § 25-324(A), or A.R.S. § 25-809(G).

**1.  The Judgment was entered in a matter involving child custody and child support.**

The Judgment was clearly entered in a matter involving child custody. Rychlik's Petition to Prevent Relocation sought to prevent Sodergren from relocating the children from Arizona to Illinois, and he further requested the Family Court modify physical custody of the

---

[1] Awards of attorney fees under A.R.S. § 25-324(A), and § 25-809(G), are both based on consideration of *"the financial resources of both parties and the reasonableness of the positions each party has taken."* A.R.S. § 25-324(A) is applicable to proceedings originating in dissolution of marriage actions, and § 25-809(G), is applicable to proceedings originating as Paternity actions.

children from Sodergren's primary care in Arizona, to Rychlik's primary care in Virginia. (CSSOF Exhibit 1). In fact, pursuant to Rychlik's Emergency Petition for Temporary Orders, such a change of physical custody was actually ordered, resulting in the children residing primarily with Rychlik in Virginia from January, 2015, through June, 2015.

The matter at issue also involved child support. In fact, pursuant to statute, all matters involving a possible change of primary physical custody from one parent to the other involves child support. (See A.R.S. § 25-403.09, *"[f]or any parenting time order entered under this article, the court shall determine an amount of child support ... ";* also see *Heidbreder v. Heidbreder*, 284 P.3d 888 at ¶ 7 (Ariz. App. Div. 1 2012), holding the trial court is required to determine child support in all matters involving modification of parenting-time, even if child support is not raised as an issue in the pleadings).

While disregarding the legal presumption discussed herein, Sodergren wrongly attempts to argue the Judgment is not a DSO. Providing misleading claims in her Summary of Facts, that are not included in her DSSOF, she states *"[n]either the Rychlik Award nor any other order from the Family Court directs Sodergren to pay a domestic support obligation to Rychlik. Rychlik improperly claims that the attorney fee sanction is a domestic support obligation. Rychlik was awarded fees for defending a child relocation dispute. Rychlik pays domestic support obligations, not the other way around."* (Sodergren Motion at 2).

Actually, pursuant to A.R.S. § 25-403.09, Sodergren did have a child support obligation to Rychlik for the period when the children resided with Rychlik in Virginia, and that issue was later resolved by an offset agreement between the parties entered in the Family Court on July 21, 2016. (CSSOF at II ¶ 7). Furthermore, the Ninth Circuit precedent that an attorney fee award is a DSO in matters involving child support exists regardless as to which

parent owes the obligation.  The need for legal services affects both payors and payees.

Legal fees may hinder a payee's ability to provide for the child's needs, and conversely legal

fees may hinder a payor's ability to pay child support necessary to provide for the child's

needs.  Accordingly, Rychlik meets the first prong to create the presumption that the

Judgment is a DSO, because the Judgment was entered in a matter involving child custody

and child support.

### 2.   The Judgment was entered pursuant to A.R.S. § 25-324(A).

In her Motion, Sodergren concedes that the Judgment was entered pursuant to A.R.S.

§ 25-324, but she erroneously attempts to suggest it is unclear whether it was entered

pursuant to subsection A or subsection B.  Actually, it is clear that the Judgment was entered

pursuant to subsection A.  A.R.S. § 25-324, provides in pertinent part:

> A. The court from time to time, **after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings**, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceeding under this chapter or chapter 4, article 1 of this title.

> … B. If <u>the court determines</u> that a party **filed a petition** under one of the following circumstances, the court shall award reasonable costs and attorney fees to the other party:

> 1. The **petition** was not filed in good faith.
> 2. The **petition** was not grounded in fact or based on law.
> 3. The **petition** was filed for an improper purpose, such as to harass the other party, to cause an unnecessary delay or to increase the cost of litigation to the other party.

The Judgment could not have been entered pursuant to subsection B because that

section is limited to awarding fees and costs against the *"party* [that] *filed a petition."*  (*Id.*).

The Judgment at issue only regards Rychlik's Petition to Prevent Relocation.  Since the

Judgment is in favor of Rychlik, (the party that filed the Petition), it could not have been

entered pursuant to subsection B.  Furthermore, only subsection B of A.R.S. § 25-324,

requires the Court to enter specific findings.  (*Id.*).  An award of attorney fees and costs

pursuant to subsection B requires a Court determination of one of the specific circumstances

enumerated therein.  No such determinations were ever made in the proceedings.

Furthermore, Sodergren herself conceded in her Objection to Rychlik's Fee

Application that the Family Court's ruling was *"controlled by the provisions of A.R.S. § 25-324,"* and she cited only those provisions present in subsection A.  (CSSOF at II ¶ 14).

### 3.   There is a Presumption that the Judgment is a DSO.

The Judgment meets both of the requirements for a presumption that it is a DSO; it

was entered in a matter involving child custody and child support, and it was entered

pursuant to A.R.S. § 25-324(A).

### B.   Sodergren is Unable to Rebut the Presumption that the Judgment is a DSO:

Once a determination is made that the Judgment is presumed to be a DSO, the burden

of proof is shifted to the Debtor to make a *"strong showing"* necessary to rebut the

presumption.  (In re *Jarski*, 301 B.R. 342, 347 (Bankr. D. Ariz. 2003; also see *In re Bradshaw* at 2).  As explained in *Jarski*:

> With Arizona's statutory requirement that custody disputes be resolved in
> the "best interest of the child," and that any award of attorney's fees must
> be based upon consideration of "the financial resources of both parties, and
> the reasonableness of the position each party has taken" in the child
> custody dispute, it would take a **strong showing by the Debtor** to
> demonstrate that an award of attorneys fees was intended to be, or in fact
> was, something other than in the nature of support for the child. Perhaps
> such a strong showing could be made if the fees were awarded **purely** as a
> sanction.

(Id.; emphasis added).

In the present case, there is nothing at all in the record to rebut the presumption that the Judgment is a DSO.  In her Motion, Sodergren contends, *"[t]he Rychlik Award is ambiguous as it does not state if it is issued as a sanction or as support so this Court must look to the entire record."*  (Sodergren Motion at 7).  She then goes on to argue that it must be a sanction based on her unreasonableness relying solely on the statement in Rychlik's Fee Application that Sodergren was *"clearly unreasonable."*  (*Id*).  Sodergren's argument fails for several reasons.

Maintaining an unreasonable position may support the other party's application for attorney fees, but unreasonableness itself is not the same as conduct warranting sanctions.  Sanctions are commonly associated with the violation a Rule or Order and is *"intended to be a burden or a means of punishment."*  (*In Re Bradshaw*, at 2).  Where violation of such Rules and Orders warrant sanctions, it is expressly stated in the Rules and Statutes.  Under the Family Law Statutes in Title 25, there is a specific statute providing *"sanctions for litigation misconduct,"* A.R.S. § 25-415.  The Rules of Family Law Procedure also expressly provide for *"sanctions"* if a party commits certain discovery or disclosure violations.  (See Rule 65.  Failure to Make Disclosure or Discovery; Sanctions, ARFLP).  Notably, imposition of sanctions require the Court to make specific findings.  (See A.R.S. § 25-415; also see Rule 65, ARFLP).  Rychlik never requested the Court impose sanctions, and there are no findings in the Family Court record supporting the imposition of sanctions against Sodergren.

Though the Judgment may have been entered in part due to Sodergren's unreasonableness, that does not satisfy her burden of proving the Judgment was entered *purely as a sanction*.  Even where a Family Court record includes express findings of unreasonableness by the party ordered to pay attorney fees, it does not automatically follow

that a fee award issued based on a parties' unreasonableness is intended to be a sanction at all, let alone *purely as a sanction*. This is point is made clear in *Bradshaw*, which provides in pertinent part:

> Clearly the state curt was troubled by the unreasonable positions taken by Defendant throughout the proceedings. However, the record does not strongly support a finding here, as the Court stated in *Jarski*, that the fees were awarded *purely* as a sanction.

(In Re Bradshaw at 2; emphasis in original)

In *Bradshaw,* the Bankruptcy Court determined the Debtor could not meet the burden necessary to rebut the presumption that the attorney fee award there was a DSO, even though there were findings by the state court that the Debtor had taken unreasonable positions throughout the proceedings. (*Id.*). Here, there are no findings at all by the Family Court that Sodergren was unreasonable. The record simply does not support any finding here at all that the Judgment was awarded as a sanction, let alone "*purely as a sanction*." Certainly, the record does not *"strongly support"* the necessary finding needed to rebut the presumption that the Judgement is a DSO.

## IV.   <u>CONCLUSION</u>:

Based on the undisputed material facts and the relevant law, Rychlik respectfully requests this Court deny Sodergren's Motion for Summary Judgment, grant Rychlik's Motion for Summary Judgment, and issue an Order determining the Judgment is a non-dischargeable DSO.

RESPECTFULLY submitted April 2, 2018.

KATZ & BLOOM, P.L.C.

*/s/ Jay R. Bloom*
Jay R. Bloom
Attorney for Creditor Daniel Rychlik

1
2
3

I certify that the foregoing was submitted on
February 1, 2018, in the United States
Bankruptcy Court for filing and transmittal
of notice of electronic filing to the ECF registrants
appearing in this case, and be email to:

4
5
6

Russell Brown
service@ch13bk.com
jmorales@ch13bk.com
Chapter 13 Trustee

7
8

Kyle A. Kinney
Kyle@turnaroundteam.com
Attorneys for Debtor

9
10

Lawrence D. Hirsch
lhirsch@psazlaw.com
Attorney for Creditor Parker Schwartz, PLLC

11

12

*By /s/ D. Jablin* _____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**KATZ & BLOOM** P.L.C.
*COUNSELORS AT LAW*
340 East Palm Lane, Suite A-260
Phoenix, Arizona 85004
www.KatzAndBloom.com
Tel: (602) 266-1900
Fax: (602) 266-4243

JAY R. BLOOM, #16380
Jay@KatzAndBloom.Com
Attorney for Creditor Dr. Daniel Rychlik

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTICT OF ARIZONA

| | |
|---|---|
| In Re: | Chapter 13 |
| GABRIELLE ANN SODERGREN, | Case No.:  2:16-bk-12689-SHG |
| Debtor. | Adv. Pro.:  2:17-ap-00267-SHG |
| GABRIELLE ANN SODERGREN, | **DEFENDANT/COUNTERCLAIMANT RYCHLIK'S: CREDITOR'S SEPARATE STATEMENT OF FACTS RE: RESPONSE TO MOTION FOR SUMMARY JUDGMENT and COUNTER-MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff/Counter-Defendant, | |
| vs. | |
| DANIEL RYCHLIK, | |
| Defendant/Counterclaimant. | |

Defendant/Counterclaimant, Daniel Rychlik, (hereinafter "Rychlik"), by and through

his undersigned counsel, herein submits his Creditor's Separate Statement of Facts Re:

Response to the Motion for Summary Judgment, ("CSSOF"), in support of his request to

deny Sodergren's Motion for Summary Judgment, and instead enter summary judgment in

Rychlik's favor determining the Judgment at issue, ("Judgment"), is a non-dischargeable

Domestic Support Order, ("DSO").

## I. Response to Debtor's Separate Statement of Facts:

In Response to Debtor-Sodergren's Separate Statement of Facts, ("DSSOF"), Rychlik sets forth the following numbered paragraphs therein that are disputed:

#3:  The Family Court findings in the December 16, 2011, pre-Decree proceedings are entirely immaterial to the issue presented.

#6:  The November 21, 2014, evidentiary hearing was an initial emergency hearing; the full evidentiary hearing was held March 31, 2015.

#7:  The granting of temporary attorney fees to Sodergren is immaterial to the issue presented.  All of the temporary orders were terminated by operation of law pursuant to A.R.S. § 25-25-315(F)(4), upon entry of the Family Court's September 25, 2015, Order, granting Rychlik's Motion for Summary Judgment, ("MSJ").

#9:  The July 23, 2015, temporary order judgment in favor of Sodergren is immaterial to the issue presented.  All of the temporary orders, including that temporary judgment, were terminated by operation of law pursuant to A.R.S. § 25-25-315(F)(4), upon entry of the Family Court's September 25, 2015, Order, granting Rychlik's MSJ.

#11:  Sodergren's failure to file a Response to Rychlik's MSJ is not disputed. However, the reason Sodergren did not file a Response is immaterial to the issue presented. Sodergren's excuse that *"the entire issue was moot at that point,"* is false; one of the issues remaining was the request in Rychlik's Petition for an award of his attorney fees and costs.

#16:  Rychlik argued that the Family Court needed to consider the parties' respective financial resources; he requested an award of fees pursuant to A.R.S. § 25-324, which <u>requires</u> the Family Court to consider *"the financial resources of both parties and the reasonableness of the positions each party has taken"* in that child custody dispute.

#17:  Rychlik's Fee Application is based solely on A.R.S. § 25-324(A).  The only two factors for consideration discussed in Rychlik's Fee Application, Sodergren's Objection, and Rychlik's Reply are the two factors that the Family Court is required to consider pursuant to subsection A; none of the factors that the Court would have to consider, and is <u>required</u> to make findings on when awarding fees and costs pursuant to subsection B are raised in either party's filings.

#18:  Exhibit "4" attached to Sodergren's CSSOF is purported to be *"a true and correct copy of the Rychlik Award."*  It is not.  Only the first page of Sodergren's Exhibit "4" is a true and correct copy of the Judgment.

#19:  The absence of any language in the Judgment specifying whether or not it was awarded due to a disparity in financial resources is immaterial to the issue presented; the Judgment is presumed to be a DSO.  (*In re Bradshaw*, Case No. BR-05-24647-PHX-CGC (Bankr.Ariz. 8/24/2007) (Bankr.Ariz., 2007), at 1, citations omitted).  What <u>is</u> material is the absence of language in the Judgment (or elsewhere in the record), indicating it was entered *"purely as a sanction,"* which is needed for Sodergren to meet her burden to rebut the presumption.  Sodergren's statement that the Family Court *"did not change its findings in the Decree,"* conflates the pre-Decree proceedings with the post-Decree proceedings at issue.  None of the findings from the parties' 2011 pre-Decree litigation have any relevance or materiality to the issue presented.

#20:  Sodergren again conflates the Family Court findings made in the pre-Decree proceedings with those issued in the post-Decree proceedings at issue.  The findings in the 2011 Decree of Dissolution are immaterial to the issue presented.  The Judgement was entered in post-Decree proceedings initiated by Rychlik's November 6, 2013, Petition to

Prevent Relocation.  The Family Court was not required to enter any findings as to the parties' relative financial resources in the proceedings at issue; the Judgment is presumed to be a DSO, absent any language that it was entered *"purely as a sanction."*

## II. Creditor's Separate Statement of Facts Precluding Summary Judgment in Favor of Sodergren and Supporting Summary Judgment in Favor of Rychlik:

1. Rychlik and Sodergren were married and have four minor children together.

2. A Decree of Dissolution of Marriage was entered on December 16, 2011, in case FC 2011-090965.

3. On October 7, 2013, Sodergren notified Rychlik by certified mail that she wished to relocate with the children to the State of Illinois.  In response, Rychlik initiated a post-decree custody proceeding by filing a "Petition to Prevent Relocation," on November 6, 2013.  (Copy attached as **Exhibit 1**).

4. On November 6, 2014, (exactly one year after initiating the post-decree custody proceedings), Rychlik therein filed an "Emergency Petition for Temporary Orders Without Notice Re: Legal Decision Making and Parenting Time."  (Copy attached as **Exhibit 2**).  At that time, all four children were residing in Sodergren's primary care in Arizona while Rychlik was residing in Virginia.

5. On November 21, 2014, the Court held an initial Emergency Temporary Orders Hearing on Rychlik's Emergency Petition for Temporary Orders.  The Family Court's Emergency Temporary Orders Rulings are set forth in a November 24, 2014, Minute Entry Order, including ordering all four children to temporarily relocate to Virginia to be in Rychlik's primary care, and setting an extended Temporary Orders evidentiary hearing for March 31, 2015.  (See Family Court ECR: Minute Entry dated November 24, 2014).

6.   On March 31, 2015, the Family Court conducted the full Temporary Orders Hearing.  The Family Court's Temporary Orders Rulings are set forth in a Minute Entry dated April 8, 2015, including ordering all four children to temporarily relocate back to Arizona in Sodergren's primary care.  (See Family Court ECR: Minute Entry dated April 8, 2015).

7.   During the approximately six month period within the proceedings at issue, from January through June, 2015, when the parties' four children resided primarily with Rychlik in Virginia, Sodergren became obligated to provide child support to Rychlik pursuant to A.R.S. § 25-320 and § 25-403.09.  Payment of Sodergren's child support obligation to Rychlik for that period was later resolved by an offset agreement between the parties entered in the Family Court on July 21, 2016.  (See Family Court ECR: Minute Entry dated July 21, 2016).

8.   On April 13, 2015, Sodergren filed a "Notice of Withdrawal of Request to Relocate Minor Children to Illinois."  (See Family Court ECR).

9.   On July 27, 2015, Rychlik filed a "Motion for Summary Judgment Re: Petition to Prevent Relocation," ("MSJ"), therein requesting the Court grant the relief requested in his Petition, including an order prohibiting Sodergren from relocating the children to Illinois and an award to Rychlik for attorney fees and costs.  (See Family Court ECR).

10. On September 25, 2015, the Family Court issued an Order granting the MSJ, and setting forth a briefing schedule for Rychlik's fee application.  (See Family Court ECR). (Copy attached as **Exhibit 3**).

11.  On October 23, 2015, Rychlik filed his "Application and Affidavit Re: Attorney Fees and Costs," ("Fee Application").  (See Exhibit 3, attached to CSSOF).

12.  On November 13, 2015, Sodergren filed her Objection to Rychlik's Fee Application, ("Objection"), (copy attached as **Exhibit 4**), and on November 24, 2015, Rychlik filed his Reply, ("Reply").  (Copy attached as **Exhibit 5**).

13.  In his Fee Application and Reply, Rychlik requests an award of attorney fees and costs pursuant to A.R.S. § 25-324.

14.  In her Objection, Sodergren acknowledged that the Family Court's determination of the Fee Application is controlled by A.R.S. § 25-324, sub-section A, to which she exclusively provides specific citation:

> 1.  This Court's consideration of Petitioner's Application for Fees and Costs is controlled by the provisions of A.R.S. § 25-324.  The relevant provisions of A.R.S. § 25-324 provide as follows:
>
>> The Court from time to time, after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceedings under this chapter or chapter 4, article 1 of this title.
>
> … 3.  The provisions of A.R.S. § 25-324 [A] require the Court to consider essentially two factors.  First, the financial resources of both parties and second, the reasonableness of the positions each party has taken throughout the proceedings."

(See Exhibit 4 attached, Sodergren Objection at 2, ¶¶ 1 and 3).

15.  The Fee Application was made pursuant to subsection A of A.R.S. § 25-324; the only two factors for consideration discussed in Rychlik's Fee Application, Sodergren's Objection, and Rychlik's Reply are the two factors that the Family Court is required to consider pursuant to subsection A; none of the factors that the Court would have to consider, and is required to make findings on, when awarding fees and costs pursuant to subsection B

are raised in either party's filings, and the only *"petition"* at issue for which the Judgment was entered, was the Petition to Prevent Relocation filed by Rychlik.

16.  Nowhere in Rychlik's Fee Application and Reply did he claim Sodergren violated any Court Orders.  Nowhere in Rychlik's Fee Application and Reply did he claim Sodergren engaged in any litigation abuses, discovery violations, or any other misconduct that would warrant sanctions against Sodergren.  Rychlik never requested the Court impose any sanctions against Sodergren.

17.  At no time did Rychlik ever request an award pursuant to the Family Law sanctions statute, A.R.S. § 25-415, which expressly provides for awards of attorney fees and costs as a *"sanction."*

18.  On December 18, 2015, the Family Court entered the Judgment for attorney fees and costs in favor of Rychlik and against Sodergren, in the principal amount of $17,181. (Copy attached as **Exhibit 6**).

19.  The Judgment does not provide any of the findings that are <u>required</u> to be entered for a Court to award attorney fees and costs pursuant to  A.R.S. § 25-324(B), and it does not provide any of the findings that are <u>required</u> to be entered for a Court to award attorney fees and costs pursuant to the Family Law sanctions statute, A.R.S. § 25-415.

20.   The Judgment does not state or imply in any way that it was entered *"purely as a sanction,"* or even *in part* as a sanction.

21.  Nothing in the Family Court record indicates the Judgement was entered *"purely as a sanction,"* or even *in part* as a sanction.  (See Family Court ECR).

DATED: April 2, 2018.

KATZ & BLOOM, P.L.C.

/s/ Jay R. Bloom
Jay R. Bloom
Attorney for Creditor Daniel Rychlik

I certify that the foregoing was submitted on
February 1, 2018, in the United States
Bankruptcy Court for filing and transmittal
of notice of electronic filing to the ECF registrants
appearing in this case, and be email to:

Russell Brown
service@ch13bk.com
jmorales@ch13bk.com
Chapter 13 Trustee

Kyle A. Kinney
Kyle@turnaroundteam.com
Attorneys for Debtor

Lawrence D. Hirsch
lhirsch@psazlaw.com
Attorney for Creditor Parker Schwartz, PLLC

By /s/ D. Jablin

# Exhibit 1

FILED
MICHAEL K. JEANES, Clerk
NOV -6 2013  4:35 PM
By S Cervantes
Deputy

1 | **GLICKSTEIN LAW, PLLC**
**Falynn S. Baum, Esq.**
2 | 80 E. Columbus Avenue
Phoenix, Arizona 85012
3 | Bar Number 026252
Telephone: (602) 264-4965
4 | *Falynn@GlicksteinLaw.com*
5 | Attorney for Petitioner

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| In re the Matter of: | No: FC2011-090965 |
| **DANIEL F. RYCHLIK,** | |
| Petitioner, | **PETITIONER'S PETITION TO PREVENT RELOCATION** |
| and | |
| **GABRIELLE ANN SODERGREN,** | (Assigned to the Honorable Janice Crawford) |
| Respondent. | |

**Petitioner, Daniel F. Rychlik ("Father"),** in accordance with the provisions of A.R.S. § 25-408(C) hereby requests that the Respondent be prohibited from removing the parties' four (4) children from the State of Arizona.

On or about October 7, 2013, Petitioner received a certified letter from Respondent dated October 4, 2013 informing him that she intended to relocate to the State of Illinois with the minor children (See Exhibit 1). The scheduled relocation date in accordance with the letter is on or about December 22, 2013, mid school year.

Respondent's request to relocate comes less than 90 days after she successfully prevented the children from relocating to Virginia with Petitioner. A contentious Evidentiary Hearing was held in this Court on July 29, 2013 and ruling was issued on August 19, 2013.

## PROCEDURAL HISTORY

1. The parties have four (4) minor children in common, namely: Gwendolyn Rychlik, born August 27, 2000; Amelia Rychlik, born November 15, 2002; Jacob Rychlik, born September 20, 2007; and Zoe Rychlik, born October 13, 2009.

2.  The parties were divorced on December 16, 2011. At that time, the parties were awarded joint legal custody of their minor children, with Father having final decision making authority regarding the minor children's medical, dental and educational needs. The parties were awarded parenting time on a 5-2-2-5 schedule and alternating major holidays.

3.  On or about February 1, 2013 Petitioner relocated to the State of Virginia.

4.  On or about January 18, 2013 Respondent filed her Petition to Prevent Relocation and for Modification of Parent Access and Child Support.

5.  An Evidentiary Hearing was conducted on July 29, 2013 regarding Respondent's Petition to Prevent Relocation and For Modification of Parent Access and Child Support filed January 18, 2013 and Respondent's Petition for Order to Appear Re: Contempt filed April 1, 2013. The ruling was issued on August 19, 2013. Petitioner's request to have the children relocate to Virginia was denied.

6.  Petitioner believes that it is contrary to the children's best interest to permit them to relocate to the State of Illinois. Petitioner asks the Court to consider all factors enumerated in A.R.S. § 25-403 and § 25-408.

7.  Petitioner strongly believes that Respondent's recent request to relocate is a mechanism to harass and continue to attempt to financially ruin Petitioner.

8.  Respondent had more than one opportunity throughout the prior litigation to request to relocate to Illinois; however, Respondent remained silent and held the position that it was in the best interests for the children to remain in Arizona.

9.  In Respondent's Petition to Prevent Relocation and For Modification of Parent Access and Child Support filed January 18, 2013, less than 1 year ago, Respondent set forth the following verified statements:

    a.  A move to the State of Virginia, a place completely unknown to the children, would be enormously disruptive to their schedules.

    b.  Given the fact that Respondent/Mother has been the children's primary caretaker since their birth and that she has arranged her school schedule around the children's schedules, it is in the children's best interest that they remain in

2

1     Arizona with their Mother.

2         c.   The children have an extensive network of school friends that would be

3              destroyed if the children are allowed to relocate to Virginia.

4         d.   The children are well adjusted to their Arizona home and environment including

5              Gwendolyn (6th grade) and Amelia's school (4th grade) and school friends. Jacob

6              has preschool friends.

7         e.   …If the children relocate to Virginia it would cause extensive disruption and

8              deny the children the stability that they have enjoyed throughout their lives in

9              Arizona.

10        10. It is unclear as to why the relocation to Virginia would have caused total chaos to the

11    children's lives, yet for the children to relocate mid-school year to Illinois would cause no threat to

12    their friendships, or "stability that they have enjoyed throughout their lives in Arizona."

13        11. Further, in the Court's August 19, 2013 Minute Entry, the Court made the following

14    findings regarding Respondent's request to prevent:

15        a.   pg. 3

16        ***3. The child's adjustment to home, school and community.***

17             The children are well adjusted to home, school and community in **Arizona**. The

18             children have historically participated in various extracurricular activities….**Mother**

19             **wants the children to continue in their current schools.**

20        **12.** Interestingly, Respondent testified during the Evidentiary Hearing that she did not want

21    the children to change schools, yet in her October 4, 2013 letter she states her plan is to relocate

22    "on or about December 22, 2013". Respondent not only wants to change the children's current

23    schools, she wants to change the school mid-year. Respondent's desire for relocation has nothing to

24    do with the best interests of the minor children, only her own self interests.

25        13. Additionally, Respondent's request to relocate will only create further delays in her

26    gaining employment, thus positioning her to request to modify spousal maintenance.

27        14. Relocation to Illinois will also  disrupt or delay the court ordered reunification

28    counseling for Respondent and the minor children. Respondent during the prior litigation believed

3

that it was so important for the mental health of the minor children to participate in counseling. Dr. Paulette Selmi has been appointed as the therapeutic interventionist.

15. Further, relocation will disrupt Respondent's personal court-ordered counseling.

16. Petitioner believes that the it is in the best interests of the minor children to relocate to the State of Virginia if Respondent pursues relocating the minor children to the State of Illinois.

17. Petitioner believes that Respondent should be responsible for all his attorney's fees and costs incurred. Petitioner believes that Respondent's request to relocate the children to the State of Illinois is in bad faith and should be denied.

**WHEREFORE,** Petitioner respectfully requests:

1.   That this Court issue its order requiring the parties to appear as a date and time certain and that this Court thereafter conduct an Evidentiary Hearing. Petitioner thereafter requests that the following relief be granted:

a.   That the children be prohibited from relocating to the State of Illinois;

b.   If relocation proceeds to an Evidentiary Hearing, Petitioner asks the Court to order the children to relocate to Virginia;

c.   That a custody evaluation be conducted and that the costs be shared equally subject to reallocation;

d.   That the current child support be adjusted consistent with the Child Support Guidelines and the number of access days awarded to either party if Respondent persists in her plan to relocate to Illinois;

e.   That Respondent be ordered to reimburse Petitioner for his costs and attorney's fees incurred herein on the provisions of A.R.S. § 25-324; and

f.   For such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED** this ___ day of November, 2013.

**GLICKSTEIN LAW, PLLC**

By ___

Falynn S. Baum
*Attorney for Petitioner*

4

1  **ORIGINAL** of the foregoing filed
   this ⎣_ day of November, 2013, with the Clerk
2  of the Court.

3  COPY of the foregoing mailed**/delivered*
   this ⎣_ day of November, 2013, to:
4

5  Honorable Janice Crawford*
   Judge of the Superior Court
6

7  Steven Feola, Esq.**
   FEOLA & TRAICA
8  2800 N. Central Avenue
   Suite 1400
9  Phoenix, Arizona 85004
   *Attorney for Respondent*
10

11  _Kellee Saleh_

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1

Gabrielle A. Sodergren

October 4 2013

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Daniel E. Rychlik, M.D.
6526 Sunny Hill Court
McLean, Virginia 22101

RE:   Rychlik v. Sodergren
      FC-2011-090963

Dear Dan:

In accordance with the requirements of A.R.S. § 25-408, I am asking your permission to allow the children to relocate to Illinois. My plan is relocate on/or about December 22, 2013.

There are many reasons for my desire to relocate including but not limited to the fact that we both have family there. I have a family network that will help me find work there as a nurse, and perhaps most importantly my parents will help provide childcare for our children while I am working. I believe that with my family's assistance the childcare expenses will be much lower than they would be in Arizona. Finally, and equally as important as the factors listed above, is the travel time and distance between Virginia and Illinois is much shorter than the travel time between Virginia and Phoenix, Arizona. The shorter distance would make it easier for you to visit in Illinois if and when you choose to do so. I am sure this will lower your expenses and reduce the amount of time that the children must travel.

Please let me know whether you will consent to the relocation.

Gabrielle

EXHIBIT PAGE
00149

# Exhibit 2

# COPY

**GLICKSTEIN LAW, PLLC**
**Falynn S. Baum, Esq.**
80 E. Columbus Avenue
Phoenix, Arizona 85012
Bar Number 026252
Telephone: (602) 264-4965
*Falynn@GlicksteinLaw.com*
Attorney for Petitioner

NOV **– 6** 2014


MICHAEL K. JEANES, **CLERK**
M. CARTER
DEPUTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

In Re the Matter of:

**DANIEL RYCHLIK,**

                         Petitioner,

and

**GABRIELLE SODERGREN,**

                         Respondent.

No.  FC2011-090965

**EMERGENCY PETITION FOR
TEMPORARY ORDERS WITHOUT
NOTICE RE: LEGAL DECISION
MAKING AND PARENTING TIME**

*EXPEDITED RULING REQUESTED*

**(ASSSIGNED TO COMMISSIONER
SHELLIE SMITH)**

Petitioner, DANIEL RYCHLIK ("Father"), by and through his Counsel undersigned, hereby moves this Court for an issuance of his *Emergency Petition for Temporary Orders Without Notice re: Legal Decision Making and Parenting Time*. This Motion is based on the following Memorandum of Points and Authorities, the entire record in this matter, and upon the evidence and/or arugment received by the Court in this matter.

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Petitioner's Petition to Prevent Relocation was filed on November 6, 2013 and is currently pending before this Court.Petitioner incoroporates by reference the allegations set forth in the Petition.

1    The parties have four (4) minor children in common, namely: Gwendolyn Rychlik, born

2  August 27, 2000; Amelia Rychlik, born November 15, 2002; Jacob Rychlik, born September 20,

3  2007; and Zoe Rychlik, born October 13, 2009.

4    The parties were divorced on December 16, 2011. At that time, the parties were

5
   awarded joint legal custody of their minor children, with Father having final decision making
6
7  authority regarding the minor children's medical, dental and educational needs. The parties were

8  awarded parenting time on a 5-2-2-5 schedule and alternating major holidays.

9    On or about February 1, 2013 Petitioner relocated to the State of Virginia.

10    On or about January 18, 2013 Respondent filed her Petition to Prevent Relocation and

11
   for Modification of Parent Access and Child Support.
12

13    An Evidentiary Hearing was conducted on July 29, 2013 regarding Respondent's

14  Petition to Prevent Relocation and For Modification of Parent Access and Child Support filed

15  January 18, 2013 and Respondent's Petition for Order to Appear Re: Contempt filed April 1,

16  2013. The ruling was issued on August 19, 2013. Petitioner's request to have the children

17
   relocate to Virginia was denied.
18

19    On or about October 7, 2013, Petitioner received a certified letter from Respondent dated

20  October 4, 2013 informing him that she intended to relocate to the State of Illinois with the minor

21  children. The scheduled relocation date in accordance with the letter is on or about December 22,

22  2013, mid school year.

23    Respondent's request to relocate came less than 90 days after she successfully prevented

24
   the children from relocating to Virginia with Petitioner.
25

26    On or about November 6, 2013 Petitioner filed his Petition to Prevent Relocation.

2

On June 3, 2014, both parties appeared with Counsel at their Alternative Dispute Resolution. The parties entered an agreement. The agreement was conditional on Mother participating in a Mental Health Evaluation and the pending results.

On or about July 23, 2014, the Court entered the parties' *Stipulation and Order Thereon* which provided in pertinent part (Exhibit 1):

> 18. The question for the mental health evaluator is does Mother have a mental health impairment that prevents Mother from providing appropriate parenting during Mother's parenting time or in anyway puts the children at risk now or in the future. If the answer to the question is YES the parties do not have an agreement and shall set status in front of the Judge. If the answer is NO this is the final agreement of the parties.

On October 27, 2014, Mother's Mental Health Evaluation was forwarded to the Court and Counsel (Exhibit 2). The Evaluation concludes,

> *When considering the sum of all psychological testing, clinical interviews with the Subject, collateral interviews with the Subject's ex-husband Dr. Daniel Rychlik, interviews for her four children, Gwen, Amelia, Jacob and Zoe Rychlik, and review of all collateral records, **it appears that there are mental health variables that at time prevent her from providing appropriate parenting.** This is likely to impact the Children through her modeling inappropriate problem solving behaviors, projecting blame onto others rather than promoting the taking of personal responsibility for one's actions, and grossly underestimating the degree of work and energy require to solve complicated interpersonal conflicts and issues*

The Evaluation further details on pg. 11 that Mother "tends to be overly self-involved at the expense of meeting the needs of her children". On page 9, the Evaluation states that Mother exhibits "a limited ability to implement behaviors to contend with the demands of reality", and on pg. 9 her way of thinking "could be described as less mature than expected of a middle-aged adult." Moreover, on ph. 11 the evaluation provides that "Interviews with collateral sources indicated that the Subject often responded to perceived cristicisms with rage".

Father is seeking sole legal decision making authority and having the minor children relocate to Virginia immediately.

Father is fearful that Mother will retaliate against him and the children as result the evaluation. The children are currently in harm's way if the Court does not allow the children to be immediately placed in Father's care.

Pursuant to the parties' July 23, 2014 *Stipulation and Order Thereon*, if Mother was found to have a mental impairment that prevents her from providing appropriate parenting during her parenting time or in anyway puts the child at risk now or in the future, the parties were to set a status conference. On October 31, 2014, counsel for the parties' submitted their *Joint Request to Set Status Conference*.

As of November 6, 2014, the docket reflects the Status Conference has been set for February 25, 2014 at 2:30 pm. This matter must be heard in front of the Judge as soon as possible. The Court's failure to act sooner will result in the the minor children remaining in a dangerous and unhealthy living environment with Mother. Father fear that there will be irreparable harm to the children if this emergency request is not granted.

Father also requests that the Court award him reasonable attorney's fees incurred regarding this matter.

Father seeks an Emergency Temporary Order for Custody of the minor children for the following reasons:

A.    Pursuant to A.R.S. §25-411(A), there is reason to believe the children's present environment may seriously endanger the child's physical, mental, moral, or emotional health.

A.R.S. 254-403.01(D) requires this honorable Court to consider whether parenting time *"would endanger the child's physical, mental, moral or emotional health."* Due to Mother's

mental health status, it is clear that unsupervised parenting time would, in fact, endanger the children's physical, mental, moral or emotional health. Under these circumstances, immediate steps must be taken to protect the children.

Father is frantically worried about the minor children's emotional and physical well being while in Mother's care.

For example, in October 2014 Mother orchestrated a scene at the airport when the children were departing to Virginia to spend Fall Break with Father. Paternal Grandmother flew from Virgina to Phoenix to accompany and spend time with her grandchildren on the flight from Phoenix to Virginia. Upon arriving at the gate, Mother became unstable and began ranting that she did not know who paternal grandmother was and would not release the children to her. The children requested Mother to stop her antics and ran to paternal grandmother. The children left to Virginia with Paternal Grandmother.

Father is concerned that is the children remain in Mother's care; they may be physically or emotionally harmed, whether intentional or unintentional. At the very least, Mother's patent mental health issues expose the children to potentially emotional harm or distress. The mental health evaluation suggests that Mother is unstable at the present time. The behaviors currently exhibited by Mother show that she is in need of immediate and ongoing mental health care and stabilization.

Father states that he has not given notce of this Emergency Request because he is fearful of Mother's retaliation against the minor children. Father fears that Mother may also flee Arizona to Illinois with the minor children.

This Petition is filed on an emergency basis as Mother's behavior places the children at risk of immediate physical, mental, moral or emotional harm for the reasons contained herein. It is apparent that Mother is not fit at this time to make legal decisions regarding the minor children. This Petition is being filed without notice due to the emergent nature of these issues. A conformed copy of this Petition and temporary order issued by the Court and any Order to Appear will be timely served upon Mother upon receipt of conformed copies of the same.

To the best of Father's knowledge, there are no pending proceedings for emergency orders about the child in any Court.

To the best of Father's knowledge, no emergency orders have been filed or sought by either party in the past year.

Other than the underlying action and the current emergency motion, Father is unaware of another case involving the parties and/or their minor children.

**WHEREFORE**, based on the foregoing allegations, it is hereby respectfully requested that this Honorable Court order Mother to appear and show cause why, if any she may have, the following temporary orders should not be entered:

A.   Award temporary sole legal decision making authority for the parties' minor children to Father until further order of the Court;

B.   Order that the children relocate to Virginia;

C.   Enter temporary parenting time orders designated Father as the primary residential parent and granting Mother only supervised parenting time through a court approved agency until such time as the allegations raised herein can be addressed or until further order of the court;

6

1    D.    That Father be awarded her reasonable attorney's fees and costs,

2          *pendente lite;* and

3    E.    Such other and further relief as the Court deems just and proper.

4

5    **RESPECTFULLY SUBMITTED** this ___ day of November, 2014.

6                              **GLICKSTEIN LAW, PLLC**

7                              By _____

8                                 Falynn S. Baum
                                  *Attorney for Petitioner*

9    **ORIGINAL** of the foregoing filed
     this ___ day of November, 2014, with the Clerk
10   of the Court.

11   COPY of the foregoing delivered*
12   this ___ day of November, 2014, to:

13   Honorable Shellie Smith*
     Judge of the Superior Court
14

15

16

17

18

19

20

21

22

23

24

25

26

7

**VERIFICATION**

STATE OF Arizona }
County of Maricopa } ss.

DANIEL RYCHLIK, being first duly sworn upon his oath deposes and states that Affiant is a party to the above entitled and numbered cause; Affiant has read the foregoing Pleadings and to the best of Affiants knowledge, the same is true and correct, except as to those matters stated upon information and belief, and as to those, Affiant believes them to be true.

DANIEL RYCHLIK

SUBSCRIBED AND SWORN to me this 20 day of November 2014.


KELLIE GABRIEL-GOFF
Notary Public - Arizona
Maricopa County
My Comm. Expires Jan 22, 2017

Notary Public

My Commission Expires:
1-22-2017

# Exhibit 3

FILED
SEP 2 5 2015   8:56 am
MICHAEL K. JEANES, Clerk
By_____ M Kay
M. Kay, Deputy

1

**KATZ & BLOOM**, P.L.C.
*COUNSELORS AT LAW*
2800 North Central Avenue, Suite 1750
Phoenix, Arizona 85004
www.KatzAndBloom.com
Tel: (602) 266-1900
Fax: (602) 266-4243

2

3

4

JAY R. BLOOM, #16380
Attorneys for Petitioner

5

6

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

7

8

In Re the Matter of:                    )
                                        )   No. FC 2011-090965
DANIEL RYCHLIK,                         )
                                        )   **ORDER**
9

10

         Petitioner,                    )
                                        )
11

      and                               )
                                        )
12

GABRIELLE ANN SODERGREN,                )
                                        )
13

         Respondent.                    )
                                        )
14

15

   PURSUANT to Petitioner's Motion for Summary Judgment Re: Petition to Prevent

16

Relocation, and good cause appearing,

17

   IT IS HEREBY ORDERED granting Petitioner's Motion for Summary Judgement

18

Re: Petition to Prevent Relocation.

19

   IT IS FURTHER ORDERED in accordance with the relief requested in Father's

20

November 6, 2013, Petition to Prevent Relocation, Respondent is prohibited from relocating

21

22

the minor children to the State of Illinois.

23

   IT IS FURTHER ORDERED that by no later than 30 days after entry of this Order,

24

Petitioner/Father shall submit all necessary and appropriate documentation to support an

25

application for an award of attorney fees and costs, including a *China Doll* Affidavit and

26

form of Order.   By no later than three weeks following the submission of Father's Application and Affidavit for Attorney Fees and Costs, Respondent/Mother shall file any written objection.  The Court shall determine any award and enter any judgment upon review of the Application and Affidavit, as well as any objection.

DONE IN OPEN COURT this **25** day of **September**, 2015.

Judge of the Superior Court

# Exhibit 4

1  **STEVEN FEOLA, ESQ.**
2      2800 N. Central Avenue, Suite 1400
       Phoenix, Arizona 85004-1045
3          sfeola@feolalegal.com                                    [NOV 1 6 2015

4          (602) 277-7473
   Steven Feola, Esq.
5  State Bar No. 004197

6  Attorney for Respondent

7              **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

8                  **IN AND FOR THE COUNTY OF MARICOPA**

9  In Re the Matter of:

10 **DANIEL RYCHLIK,**                      No.  **FC2011-090965**

11          Petitioner,                     **RESPONDENT'S OPPOSITION/
                                            OBJECTION TO APPLICATION AND
                                            AFFIDAVIT RE: ATTORNEY FEES
12 and                                      AND COSTS**

13 **GABRIELLE ANN SODERGREN,**             (Assigned to the Honorable Joseph Sciarrotta,
                                            Jr.)
14          Respondent.

15         Respondent through counsel hereby responds and objects to the award of any attorney's fees
16 and costs in favor of Petitioner as requested in Petitioner's October 23, 2015 Application.

17         Respondent requests that the Court consider the following facts and factors in deciding the
18 issue of Petitioner's request for attorney's fees and costs:

19 **A.     INTRODUCTION AND RELEVANT PROCEDURAL HISTORY**

20         1.      This Court's consideration of Petitioner's Application for Fees and Costs is
21 controlled by the provisions of A.R.S. § 25-324.  The relevant provisions of A.R.S. § 25-324 provide
22 as follows:

23                 The court from time to time, after considering the
                   financial resources of both parties and the reasonableness
24                 of the positions each party has taken throughout the
                   proceedings, may order a party to pay a reasonable amount
25                 to the other party for the costs and expenses of maintaining
                   or defending any proceeding under this chapter or chapter
26                 4, article 1 of this title.

27

STEVEN FEOLA
2800 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-1045

2.      It is well settled law in Arizona that the amount of attorney's fees to be allowed in a divorce action is a matter left to the sound discretion of the Trial Court. *Burkhardt v. Burkhardt*, 510 P.2d 735, 109 Ariz. 419 (1973)

3.      The provisions of A.R.S. § 25-324 require the Court to consider essentially two factors. First, the financial resources of both parties and second, the reasonableness of the positions each party has taken throughout the proceedings.

4.      Dr. Rychlik in his October 23, 2015 Application does not provide any guidance to this Court regarding the financial resources of either party. The Court should take notice that Petitioner is a licensed medical doctor and Respondent is a nurse. The Court should also take judicial notice of the fact that as part of her Ruling dated August 19, 2013, Judge Crawford found that Petitioner as a physician earned $15,500 monthly. Respondent at the time was receiving $5,000 monthly as spousal maintenance. Respondent now receives $2,000 monthly as spousal maintenance pursuant to the specific provisions of the Decree of Dissolution of Marriage dated December 14, 2011 (the specific language of the Decree reduced the spousal support from $5,000 to $2,000 monthly effective November 30, 2013). Respondent presently earns on average approximately $2,000 monthly as a home healthcare nurse. The disparity of income in favor of Petitioner is, if not enormous, it is at least extremely significant. Factoring in Respondent's salary and Petitioner's obligation to pay spousal maintenance still results in least a 3-to-1 disparity of income in favor of Petitioner. (the 3-to-1 disparity exists even though Respondent receives $2,000 monthly as spousal support plus earns $2,000 monthly as a home healthcare nurse)

5.      Based on the factors stated in A.R.S. § 25-324, the Court should conclude that Dr. Rychlik has financial resources which are far superior to the financial resources and income of Respondent. With regard to the issue of "reasonableness", the court record will also establish that two (2) earlier judgments awarded Respondent more than $64,000 in attorney's fees and costs which remain unpaid. (The first dated "October 10, 2013" for $8,616.00 and the second dated "July 23, 2015" in the amount of $56,000.00 plus $1,294.00 in costs). Dr. Rychlik has appealed this Court's July 23, 2015 Order.

2

6.     With regard to the reasonableness of positions taken, the court file reflects the fact that in February 2012, Dr. Rychlik left the State of Arizona to pursue employment in the State of Virginia (he also moved close to his fiancée, Melissa, now his wife).  He left the four (4) children in the sole care of Respondent.  Dr. Rychlik requested permission to have the children relocate to Virginia with him.  On August 19, 2013, Judge Crawford denied Dr. Rychlik's request to relocate the children to Virginia.

7.     In denying Dr. Rychlik's request to relocate the children to Virginia, Judge Crawford relied in substantial part on the July 8, 2013 "Relocation Evaluation" prepared by Dr. Weinstock, Ph.D..

8.     Dr. Weinstock throughout his nearly 35-page report (which is part of the court record) was extremely critical of Dr. Rychlik.  In summary, Dr. Weinstock found that Dr. Rychlik had undermined the relationship that existed between Gwen (dob 8-27-00) and to a lesser extent Amelia (dob 11-15-02) and their Mother.  In concluding that the children should remain with their Mother, Dr. Weinstock wrote:

> "This evaluator believes that at best these children were coached with regard to their reports during this evaluation.  At worst, Father has consciously developed a plan to alienate the children from Mother.  The information provided from children was so contaminated and unhealthy that the evaluator places little weight on their reports and wishes.  Rather than accepting the words at face value, the reports evidence psychological concerns about the position these children are placed in, especially when in Father's care.  While this evaluator does not address Father's motivations for speaking to the children about such adult issues, if the Court determines that Father's behaviors were intentional, the question raised is not about relocation but supervision when the children are in Father's care.  Again, this is not a conclusion or recommendation made, but a concern identified to the Court based on the data provided.  To summarize, in over ten years of practice, this evaluator does not recall a case in which the children, especially Gwen, were so clearly influenced with inappropriate information".  (Emphasis added)

9.     After Judge Crawford's August 19, 2013 Ruling, Respondent wrote to Petitioner on October 4, 2013 requesting Dr. Rychlik's consent that she and the children be permitted to relocate to Illinois.  Except for access periods ordered by the Court, as of October 4, 2013, the

STEVEN FEOLA
2800 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-1045

3

children had been in their Mother's sole care in Arizona since February 2012, a period of approximately 20 months. The letter written to Dr. Rychlik dated October 4, 2013 is attached to Dr. Rychlik's November 6, 2013 Petition to Prevent Relocation. In summary, Respondent/Mother sought Dr. Rychlik's agreement to allow relocation for the reasons stated in the letter.

Obviously, as a result of Judge Crawford's August 19, 2013 letter, Dr. Rychlik was not permitted to relocate the children to Virginia. The October 4, 2013 letter provides Respondent/Mother's reasoning to allow her to relocate which included the fact that both parties had family in Illinois (where they met), that Respondent's family could provide assistance in childcare for the parties' four (4) small children and Respondent's family could assist Respondent in finding work as a nurse. The October 4, 2013 letter also noted that the travel time between Virginia and Illinois was much less than the travel between Virginia and Arizona. Because the travel time was less between Virginia and Illinois, the children would benefit from the shorter commute. The letter also pointed out that Dr. Rychlik could save significant funds because the airline fares were less expensive between Virginia and Illinois than they were for travel between Virginia and Arizona.

10. Because the provisions of A.R.S. § 25-324 require this Court to consider the "reasonableness of positions" that each party has taken, it is relevant to note that in Petitioner's November 6, 2013 Petition to Prevent Relocation, he also renewed his request that the children be permitted to relocate to Virginia with him. (*See* paragraph 1.b. of the "WHEREFORE" clause of the Petition). Given the extremely critical findings made by Dr. Weinstock which were adopted in substantial part by Judge Crawford in her August 19, 2013 Ruling, Respondent suggests that Dr. Rychlik by asking for a second time to have the children relocate to Virginia in his November 6, 2013 Petition is "per se" unreasonable.

11. The parties reached a settlement concerning Respondent's request to relocate the children to Illinois with the assistance of Judge Gerald Porter. The "Stipulation and Order Thereon" reached by the parties was signed by Judge Shellie Smith and filed with the Clerk of Court on July 23, 2014.

STEVEN FEOLA
2800 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-1045

4

12.     As Dr. Rychlik notes in paragraph 21 of his "Application", his request for fees "is therefore limited to the period of time from receipt of Mother's October 7, 2013 Notice indicating her request to relocate the children, through the period prior to Father filing his November 6, 2014, Emergency Petition for Temporary Orders".

13.     From a procedural standpoint, it is extremely relevant to note that as part of the July 23, 2014 "Stipulation and Order Thereon" reached by the parties, each party agreed to pay their own attorney's fees and costs.  (*See* paragraph 22 of the Stipulation and Order Thereon)  It is also extremely relevant to note that in paragraph 15 of the "Stipulation and Order Thereon" that Dr. Rychlik agreed to pay 100% of the Mental Health Evaluation.  There were no conditions placed on these settlement provisions.

14.     In spite of the parties' agreement to pay their own fees and costs and in spite of Dr. Rychlik's agreement to pay 100% of the Mental Health Evaluation, he now seeks, in violation of the settlement agreement, reimbursement for attorney's fees and reimbursement for the Evaluation.  Needless-to-say, Dr. Rychlik's position is unreasonable and is directly contrary to the agreements reached by the parties as reflected in the July 23, 2014 Order.

15.     There is no provision contained in the July 23, 2014 "Stipulation and Order Thereon" for reapportionment of Dr. Tsoutsouris' fees and there is no provision in the "Stipulation and Order" for any type of reconsideration of the attorney's fees and costs portion of the agreement even if the Evaluation determined that "Mother has a mental health impairment that prevents Mother from providing appropriate parenting during Mother's parenting time or in any way puts the children at risk now or in future.".  In short, Dr. Rychlik without any preconditions agreed and the Court ordered that he pay Dr. Tsoutsouris' fees and that each party pay their own fees and costs.

Significantly, as part of Judge Joseph Sciarrotta Jr.'s April 8, 2013 Order, he found that Dr. Tsoutsouris *never* determined that Respondent/Mother had such a "mental health impairment" as contemplated in paragraph 18 of the July 23, 2014 "Stipulation and Order Thereon".

16.     Since the provisions of the July 23, 2014 "Stipulation and Order Thereon" are silent as to what if any effect Dr. Tsoutsouris' Mental Health Evaluation would have on the attorney's

STEVEN FEOLA
2800 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-1045

5

fees provision (i.e. each side pays their own) and on any potential reapportionment of Dr.

Tsoutsouris' fees, Petitioner's request for attorney's fees and for payment of Dr. Tsoutsouris' fees,

should be denied. The parties decided the issue of attorney's fees and Dr. Tsoutsouris' fees as part of

their settlement. Similarly, the Court should deny Petitioner's request to have Respondent pay Mr.

Theut's fees.

       17.    After the issuance of Dr. Tsoutsouris' October, 2014 Mental Health

Evaluation, Respondent/Mother filed various Motions and Petitions challenging Dr. Tsoutsouris'

findings. Dr. Rychlik also filed a Petition for Temporary Custody on November 6, 2014. Ultimately,

Respondent/Mother prevailed and the children were relocated to her.

       18.    On November 21, 2014, Judge Shellie Smith conducted a Temporary Orders

Evidentiary Hearing regarding the effect of Dr. Tsoutsouris' Report. In her November 24, 2014

Minute Entry, Judge Smith ordered that Father be given primary residential custody of the children

on a temporary basis.

       19.    On March 3, 2015, the Court permitted the withdrawal of attorney Steven

Feola as counsel for Respondent.

       20.    On March 31, 2015, Judge Sciarrotta Jr. conducted an Evidentiary Hearing.

Judge Sciarrotta Jr.'s April 8, 2015 decision reversed the Temporary Orders and ordered the

children's return to Arizona and eventually awarded Respondent/Mother the sum of approximately

$56,000 in attorney's fees and $1,200 in costs. Judge Sciarrotta Jr. noted on page 4 of April 8, 2015

Decision that Dr. Tsoutsouris did not and could not state at what times Mother's "personality

dynamics" would prevent her from providing appropriate parenting. Judge Sciarrotta Jr. noted that

Dr. Tsoutsouris "could not provide any specificity as to what this meant – every day, once a week,

once a month, once a year".

       21.    It is important to note that five (5) days after Judge Sciarrotta Jr.'s April 8,

2015 Under Advisement Ruling, Respondent through her counsel on April 13, 2015 filed her "Notice

of Withdrawal of Request to Relocate Minor Children to Illinois".

STEVEN FEOLA
2800 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-1045

6

22.     As part of Judge Sciarrotta Jr.'s April 8, 2015 Ruling, he considered and granted Respondent a judgment for attorney's fees in the amount of $56,000 and costs in the amount of $1,294.  The judgment for attorney's fees and costs was signed and filed with the Clerk of Court on July 23, 2015.

23.     On July 6, 2015, Ms. Hirsch filed her Motion to Withdrawal as Respondent's counsel.

24.     Even though Respondent filed her "Notice of Withdrawal of Request to Relocate Minor Children to Illinois" on April 13, 2015, Petitioner on July 27, 2015 filed a Motion for Summary Judgment regarding the very issue addressed in Respondent/Mother's Notice of Withdrawal that is, her request to relocate the children to Illinois.

25.     On August 3, 2015, the Court granted Ms. Hirsch's request to withdraw as attorney for Respondent.

26.     On August 18, 2015, counsel Steven Feola filed his Notice of Appearance on behalf of Respondent.

**B.     ARGUMENT**

Under the provisions of A.R.S. § 25-324, this Court is cloaked with wide discretion regarding the award of attorney's fees.  (*See* paragraph 2 above)  Based on the wide disparity of income enjoyed by Dr. Rychlik over the Respondent, the Court should conclude that no attorney's fees or costs should be awarded against her.  With regard to the second element of A.R.S. § 25-324, the Court should conclude that Respondent/Mother did <u>not</u> act unreasonably in submitting her request seeking relocation of the children to Illinois.  The Court is respectfully reminded that Respondent's October 4, 2013 letter to Petitioner was sent at a time when Dr. Rychlik in February 2012 had already voluntarily moved from Arizona to Virginia leaving his children in the sole care of their Mother.  It should also be emphasized that Respondent/Mother's October 4, 2013 letter explained her reasoning to her former husband.  Under Respondent/Mother's suggestion that she be permitted to take the children back to Illinois, she pointed out that Dr. Rychlik would lower his travel expenses to and from Virginia and Illinois as compared to travel expenses to and from Arizona.  The shorter duration of the

7

STEVEN FEOLA
2800 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-1045

1  airline travel would also permit Dr. Rychlik to visit with his children more frequently in Illinois than

2  he had in Arizona.  It is also important to note that Dr. Rychlik would lose no access time as the

3  access schedule was to remain the same and his travel costs would be less.

4            As noted above, Dr. Rychlik's Petition to Prevent Relocation dated November 6, 2013

5  and Respondent's Response thereto was settled, which settlement is embodied in the July 23, 2014

6  "Stipulation and Order Thereon".  With regard to the reasonableness of position taken, it should be

7  noted that Dr. Rychlik in his November 6, 2013 Petition to Prevent Relocation sought once again to

8  have the children relocate to Virginia with him, even in light of the very blunt assessment of Dr.

9  Weinstock (*see* paragraph 8 above) and Judge Crawford's adoption of many of the findings of Dr.

10 Weinstock.  To be sure, the Court may conclude that it was Dr. Rychlik that took an unreasonable

11 position in his November 6, 2013 Petition to Prevent Relocation.

12           The Court is next respectfully requested to review the specific provisions of the July

13 23, 2014 "Stipulation and Order Thereon".  Specifically, each side without qualification agreed to pay

14 their own attorney's fees and specifically Dr. Rychlik agreed to pay Dr. Tsoutsouris' fees.  The

15 agreement reached by the parties (i.e. the "Stipulation and Order Thereon") is completely silent as to

16 any right to reapportionment of the attorney's fees provision and it is also completely silent as to any

17 possible reapportionment of the payment of Dr. Tsoutsouris' fees.  These issues, unlike the actual

18 relocation of the children, were settled without precondition.

19           The litigation that resulted from Dr. Tsoutsouris' Mental Health Evaluation is not part

20 of Dr. Rychlik's Application because as noted in the October 23, 2015 Application and Affidavit Re:

21 Attorney Fees and Costs the relevant time period is October 7, 2013 through November 6, 2014 (*see*

22 paragraph 21 of the October 23, 2015 "Application").  Next, it is perplexing at best as to why Dr.

23 Rychlik instructed his attorney to file a Motion for Summary Judgment on July 27, 2015 when

24 previously on April 13, 2015, more than three months prior to the filing of the Motion for Summary

25 Judgment, Respondent withdrew her request to relocate to Illinois.

26           In conclusion, it appears that Dr. Rychlik is attempting to recover some of the

27 attorney's fees ordered by this Court in its July 23, 2015 Order.  It should not go unnoticed that Dr.

**STEVEN FEOLA**
2800 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-1045

8

1    Rychlik directed his attorney to file the July 27, 2015 Motion for Summary Judgment only four days

2    after this Court granted Respondent $56,000 in attorney's fees and $1,294 in costs.  Based on the

3    provisions of A.R.S. § 25-324 and the specific provisions of the July 23, 2014 "Stipulation and Order

4    Thereon", at most Dr. Rychlik would be entitled to fees for filing the Motion for Summary Judgment.

5    That said, given the April 13, 2015 "Notice of Withdrawal of Request to Relocate Minor Children to

6    Illinois", the Court may, and should find, that the filing of the Motion for Summary Judgment was

7    not necessary and in fact unreasonable.

8         **RESPECTFULLY SUBMITTED** this __13__ day of November, 2015.

9                                              **STEVEN FEOLA**

10

11                                       By _____

12                                              Steven Feola, Esq.
                                                2800 N. Central Avenue
13                                              Suite 1400
                                                Phoenix, Arizona 85004
14                                              Attorney for Respondent

15    **ORIGINAL** of the foregoing filed
      this __13__ day of November, 2015; with:

16
      Clerk of the Court
17
      **COPY** of the foregoing hand-delivered
18    this __13__ day of November, 2015; to:

19    The Honorable Joseph Sciarrotta
      **MARICOPA COUNTY SUPERIOR COURT**
20    222 E. Javelina Avenue
      Mesa, Arizona 85210
21

22    **COPY** of the foregoing via E-mail
      this __13__ day of November, 2015; to:
23
      Jay Bloom, Esq.
24    **KATZ & BLOOM PLC**
      340 East Palm Lane
25    Suite A-260
      Phoenix, Arizona 85004
26    Attorney for Petitioner

27

**STEVEN FEOLA**
2800 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-1045

9

1   **COPY** of the foregoing via E-mail
2   this __13__ day of November, 2015; to:

3   Chris Theut, Esq.
    5150 N. 16th Street
    Suite B-236
4   Phoenix, Arizona 85016

5

6   By:

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**STEVEN FEOLA**
2800 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-1045

10

# Exhibit 5

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
M. Paigen, Deputy
11/24/2015 8:29:23 PM
Filing ID 7025800

**KATZ & BLOOM** P.L.C.

*COUNSELORS AT LAW*
340 East Palm Lane, Suite A-260
Phoenix, Arizona 85004
www.KatzAndBloom.com
Tel: (602) 266-1900
Fax: (602) 266-4243

JAY R. BLOOM, #16380
Attorney for Petitioner

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| In Re the Matter of: | No.  FC 2011-090965 |
| DANIEL RYCHLIK, | **REPLY RE: APPLICATION AND AFFIDAVIT RE:   ATTORNEY FEES AND COSTS** |
| Petitioner, | (Assigned to the Honorable Joseph Sciarrotta Jr.) |
| and | |
| GABRIELLE ANN SODERGREN, | |
| Respondent. | |

Daniel Rychlik, (hereinafter "Father"), by and through his undersigned counsel herein

provides his Reply Re: Application and Affidavit Re: Attorney Fees and Costs.  This Reply

addresses the numerous incorrect factual and legal errors set forth in "Respondent's

Opposition/Objection to Application and Affidavit Re: Attorney Fees and Costs," filed on

behalf of Respondent, (hereinafter "Mother"), as set forth more fully in the Memorandum of

Points and Authorities, attached hereto and incorporated herein.

RESPECTFULLY submitted November 24, 2015.

KATZ & BLOOM, P.L.C.

*/s/  Jay R. Bloom*
Jay R. Bloom
Attorney for Petitioner

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Introduction

In her Objection, Mother seeks to muddy the waters regarding the issue before this Court.  Mother seeks to divert the Court's focus on extraneous matters and prior proceedings that are not relevant to the Court's present determination.  Mother also completely misstates the effect of the Court's July 23, 2014, "Stipulation and Order Thereon." in regard to Father's application for attorney fees.  The Court should grant Father's Application for Attorney Fees over Mother's objection which may be boiled down to the following:

1.   Mother fails to take responsibility for initiating expensive and volatile litigation by requesting to relocate the children to Illinois, only to thereafter decide she does not want the relief she requested.

2.   Mother fails to acknowledge that A.R.S. § 25-324, requires the Court to consider the parties' relative *"financial resources,"* not merely the differences in their incomes, and she wrongly contends her distorted portrayal of the parties' relative finances somehow shields her from responsibility for her unreasonableness.

3.   Mother is wrong to contend Father is prohibited from obtaining an award for attorney fees and costs based on provisions in the July 23, 2014, "Stipulation and Order Thereon," because she is either overlooking or misinterpreting the provision therein that provides, *"If the answer to the question is YES,* [Mother's mental health evaluation concludes she has an impairment effecting her parenting], *the parties do not have an agreement and shall set status in front of the Judge*."

4.   Mother fails to recognize the purpose of Father filing his Motion for Summary Judgment was to bring finality to the proceedings at issue.

### II.  Mother Maintained Unreasonable Positions.

Father's Application for Attorney Fees and Costs regards the proceedings on Father's November 6, 2013, Petition to Prevent Relocation.  Mother's unreasonableness in regard to these proceedings is so indefensible that she goes to great lengths to attempt misdirecting this Court to the prior proceedings heard at an evidentiary hearing on July 29, 2013.  Once again

as she has done countless times when confronted with her own unreasonableness, Mother resorts to regurgitating stale quotes from a Report by Dr. Weinstock in those earlier proceedings that have since been exposed as flawed and clearly have absolutely nothing what-so-ever to do with the issue presently before this Court.  Similarly, the Court's rulings in regard to attorney fees related to other proceedings between the parties also has no bearing on the issue now before the Court.  The present issue is rather straight-forward and indisputable.

Only months after contending in prior proceedings that it was against the children's best interests to relocate out of Arizona, Mother announced she intended to relocate with the children to the State of Illinois.  Father was then placed in the position of having to file his Petition to prevent the relocation.  As a direct result of Mother's actions, extensive litigation ensued as detailed in Father's Application.  One and a half years after announcing her intention to relocate the children, (which caused Father to incur thousands of dollars in attorney fees and costs), Mother casually announced she changed her mind.

Mother was clearly unreasonable.  There was no superseding or unexpected event that prompted her reversal.  While Father of course welcomed Mother's reversal of position, it does not change the fact that these proceedings were unnecessary and Mother should be responsible for the fees and costs she forced Father to incur.

**III.  An Award to Father is Appropriate Given the Parties' Financial Resources**

In her Objection, Mother fails to acknowledge that A.R.S. § 25-324, requires the Court to consider the parties' relative *"financial resources,"* not merely the differences in their incomes.  Additionally, Mother presents this Court with an inaccurate and intentionally distorted portrayal of her income and financial resources.

When these proceedings began, Mother was receiving spousal maintenance of $5,000 per month, later lowered to $2,000. While Mother states her present income from earnings is only $2,000 per month, she fails to explain that is because she chose to delay obtaining a job until only recently. (See Mother's February 18, 2015, Financial Affidavit showing even then still had not begun employment). There is no legitimate excuse for Mother's intentional delay, and it is clearly contrary to the Court's expectations. When the parties were litigating their divorce back in 2011, Mother sought spousal maintenance of $7,600 per month, saying instead of returning to her prior lucrative career as a nurse she wanted to go back to school to become a teacher. (See December 14, 2011, Minute Entry Decree of Dissolution at page 19). The Court found in pertinent part:

> Mother says that she does not want to pursue a nursing career at this point. She wants to go to school and become a teacher. A teaching career would result in Mother having a substantially lower earning capacity, would take several years longer to secure the necessary training and then a job, and likely never would allow her to be self-supporting given that the parents have four children in common.
>
> In reality, **Mother must be practical**. She is not deciding on a college major in a vacuum. **She must decide on an effective strategy to become self-supporting**. Pursuing a career in teaching is something Mother is free to do. But for now, **she must return to her first career choice, which is the most efficient and effective means for her to become self-supporting**. (Emphasis added).

(Id.).

Notwithstanding the Court's clear instructions, Mother waited more than four years to return to work. Certainly, had Mother acted immediately on the Court's instructions, her present income would now be substantially higher. Most importantly, it appears that Mother chose not to return to work earlier because she was under no financial pressure to do so because of the assistance she received from her wealthy family.

During the course of the proceedings on Father's Petition to Prevent Relocation, Mother claimed that she should be allowed to relocate the children to Illinois so she could work for her family.  (See Mother's Response to Petition to Prevent Relocation at page 4, ¶ 10).  Mother touted the financial advantages of relocating, making sure the Court was aware of her family's substantial financial resources, as exemplified in a letter from her father, (the owner of ACS Manufacturing), that provides in pertinent part:

> We at ACS Manufacturing are looking to hire Gabreielle Sodergren as soon as
> possible.   …This is a family owned company that was established in 1989
> and is currently grossing $1,500,000 a year.

(See February 12, 2014 letter from Mother's father, attached hereto as exhibit "A").

Though Mother never went to work in her family business, it is clear she still received tens of thousands of dollars from her family during the proceedings at issue.  (See Mother's February 18, 2015, Financial Affidavit; also see Mother's testimony at the March 31, 2015, hearing).  It is exactly for circumstances such as this, where a party has the ability to fuel litigation with the assistance of a wealthy family, that A.R.S. § 25-324 requires the Court to consider a party's *"financial resources,"* and not merely their personal income.

Mother's failure to make any mention of these financial resources in her Objection was not an oversight.  During these proceedings, she was quite willing to not only use these resources, but to also reference them when she believed it advanced her position.  (See exhibit "A").  When considering the parties' relative financial resources, the Court should also recall that during these proceedings Father additionally went through Bankruptcy caused by the devastating financial impact of the underlying dissolution proceedings.

When considering the full extent of Mother's financial resources, and the dual effect of Father's spousal maintenance, (lowering his income while increasing Mother's), any

remaining disparity between the parties presents no bar to the Court awarding Father attorney fees based on Mother's unreasonableness.

One of the most important aspects of A.R.S. § 25-324, is that any party, regardless of a financial disparity, may be ordered to pay the other parties' attorney fees if they act unreasonably.  Otherwise, parties with less financial resources would be able to act unreasonably without any fear of consequences.  For these reasons, the balancing of the applicable considerations are left to the sound discretion of the Court.  (See <u>Magee v. Magee</u>, 206 Ariz. 589; also see <u>Mangan v. Mangan</u>, 227 Ariz. 346, (2011), affirming an award of attorney fees to Father, *"despite a disparity between the financial resources of Mother and Father, an award of attorney's fees was warranted because Mother had taken unreasonable positions during the course of the proceedings."*).

### IV.   The July 23, 2014 "Stipulation and Order Therein" Did Not Settle the Issue of Attorney Fees.

Contrary to Mother's assertion, the issue of attorney fees and costs regarding the proceedings on Father's Petition to Prevent Relocation was not settled by the July 23, 2014, "Stipulation and Order Therein."  Whether intentional or not, Mother's interpretation of that Order is inaccurate.  A fair reading of the Order makes it clear that the parties reached a comprehensive agreement at that time, but <u>the entire agreement</u> was contingent on the results of Mother's mental health evaluation.  The Order provides in pertinent part:

> 15.  **All of this agreement** is conditioned on Mother submitting to a mental health evaluation to be paid I 00% by Father.

> . . . 18. The question for the mental health evaluator is does Mother has a mental health impairment that prevents Mother from providing appropriate parenting during Mother's parenting time or in any way puts the children at risk now or in the future.  **If the answer to the question is YES the parties do not have an agreement** and shall set status in front of the Judge.  If the answer is NO this is the final agreement of the parties.

(See July 23, 2014, "Stipulation and Order Therein" at page 3 – 4).

It is remarkable that Mother urges the Court to interpret the provisions in that Order as settling the issue of attorney fees and presumably other issues addressed therein[1]. If Mother's interpretation is correct, then that Order would also control the issue of attorney fees relating to the March 31, 2015, hearing on Temporary Orders, and therefore nullify the Court's attorney fee award to Mother regarding that portion of these proceedings.

Due to the Court entering a specific order for attorney fees relating to that portion of these proceedings, Father of course did not include in his pending application, any of the fees and costs he incurred that are associated with that portion of these proceedings. However, it remains true that the July 23, 2014, Order, applies equally to all aspects of the proceedings on Father's Petition to Prevent Relocation, including the portion related to Temporary Orders. Mother cannot have it both ways. If the Court were to affirm the interpretation argued by Mother, then the Court must vacate the attorney fee award relating to the March 31, 2015, hearing on Temporary Orders.

## V. Father Appropriately Filed a Motion for Summary Judgment.

In her Objection, Mother fails to recognize the purpose of Father filing his Motion for Summary Judgment. She wrongly asserts that *"given the April 13, 2015 "Notice of Withdrawal of Request to Relocate Minor Children to Illinois", the Court may, and should find, that the filing of the Motion for Summary Judgment was not necessary and in fact unreasonable."* (See Mother's Objection at page 9, line 5). The exact opposite is true.

---

[1] On June 8, 2015, Mother filed a Petition to Enforce Child Support and Spousal Maintenance therein alleging Father owes her support pre-dating May 31, 2014, even though the July 23, 2014, Order sets forth agreements waiving any such claims for arrears.

Though the litigation was triggered and forced by Mother's original notice to Father proclaiming her intent to relocate the children to Illinois, the proceedings are on Father's Petition to Prevent Relocation.  The Notice filed by Mother on April 13, 2015, did nothing to cause the Court to enter any Order finalizing these proceedings.  It is not a motion or a request of any kind.  It is an insufficient mechanism not legally or procedurally capable of moving these proceedings to finalization, and of course the record itself supports this.  The proper procedural mechanism was a Motion for Summary Judgment, as further supported by the record.

There is no factual basis for Mother to contend the Motion was unnecessary or unreasonable, and additionally any such contention is also untimely[2].  Mother's suggestion that the timing of Father's Motion was somehow related to the Court's July 23rd Order awarding attorney fees to Mother is strained inaccurate speculation.  As indicated by the record, the day Father filed his Motion for Summary Judgment, (July 27, 2015), he also filed his now pending Petition to Modify Parenting Time and Relocation of Minor Children.  At that time, Father recognized the need to finalize the prior proceedings so he acted accordingly.

In any event, the timing of that filing has no bearing on the present issue.  Rather it again reveals that Mother is searching for ways to distract this Court from the proper analysis which supports the Court awarding Father his reasonable attorney fees and costs related to his Petition to Prevent Relocation.

---

[2] The Court should note that Mother filed no response to that Motion and no motion for reconsideration in regard to same.

**VI.  Conclusion.**

As set forth above, Mother's Objection consists of attempts to distract the Court from the specific and narrow issue of attorney fees relating to Father's Petition to Prevent Relocation that was prompted by Mother's unreasonable request which she later withdrew. The Court should note that in her Objection, Mother does not challenge or contest in any way, the sufficiency of the Affidavit and supporting documents submitted by Father, nor the reasonableness of the fees and costs requested by Father.

WHEREFORE, the Court should enter an Order awarding Father his reasonable attorney fees in the amount of  $34,831.10, (attorney fees for services of Falynn S. Baum: $16,802, costs related to Ms. Baum's services: $379.10, fees for services of Best Interest Attorney, Chris Theut: $3,000, plus fees for services of  Dr. Felix Salomon and his appointee, Psychologist, Dr. Vaughn Tsoutsouris: $14,650.00).

RESPECTFULLY submitted November 24, 2015.

KATZ & BLOOM, P.L.C.

*/s/  Jay R. Bloom*_____
Jay R. Bloom
Attorney for Petitioner

Copy of the foregoing
delivered by mail and email
November 24, 2015, to:

Steven Feola                           Christopher P. Theut
FEOLA & TRAICA, P.C.         5150 North 16th Street
2800 North Central Avenue      Suite B236
Suite #1400                            Phoenix, Arizona 85016
Phoenix Arizona 85004           chris@theutlaw.com
steve@feolalegal.com              Best Interests Attorney
Attorney for Respondent

*/s/  D. Jablin*_____

EXCERPT PAGE
00182

# Exhibit 6

FILED
12/2/15 @ 11:30 am
MICHAEL K. JEANES, Clerk
By _____ C. Clark, Deputy

**KATZ & BLOOM** p.l.c.
*COUNSELORS AT LAW*
340 East Palm Lane, Suite A-260
Phoenix, Arizona 85004
www.KatzAndBloom.com
Tel: (602) 266-1900
Fax: (602) 266-4243

JAY R. BLOOM, #16380
Attorney for Petitioner

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| In Re the Matter of: | No. FC 2011-090965 |
| DANIEL RYCHLIK, | **ORDER** |
| Petitioner, | |
| and | |
| GABRIELLE ANN SODERGREN, | |
| Respondent. | |

Pursuant to Petitioner's Application and Affidavit Re: Attorney Fees and Costs, and *the Response + Reply (B)* good cause appearing,

IT IS HEREBY ORDERED granting judgments against Respondent, Gabrielle A. Sodergren, and in favor of Petitioner, Daniel Rychlik, for attorney's fees in the amount of *accruing after* $ 16,802 , and costs in the amount of $ 379.10 together with legal interest *90* until paid. Said judgments shall be paid by Respondent within 30 days of this Order.

DONE IN OPEN COURT this *B* day of *December*, 2015.

_____
Judge of the Superior Court

EXCERPT PAGE ER
00184

# TAB 3

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

# Minute Entry

## *Hearing Information:*

|  |  |  |  |
|---|---|---|---|
| **Debtor:** | GABRIELLE ANN SODERGREN | | |
| **Case Number:** | 2:16-BK-12689-SHG | **Chapter:** | 13 |
| **Date / Time / Room:** | THURSDAY, MAY 10, 2018 03:00 PM   3RD FLOOR #301 | | |
| **Bankruptcy Judge:** | SCOTT H. GAN | | |
| **Courtroom Clerk:** | TERESA MATTINGLY | | |
| **Reporter / ECR:** | MARGARET KELLY | | |

## *Matters:*

**1)** CONTINUED  STATUS HEARING ON CHAPTER 13 PLAN. (cont. from 5/11/17)(cont. from 6/8/17) (cont. from 8/3/17) (cont. from 9-14-17) (cont. from 10/31/17) (cont. from 11/30/17) (resched. from 5/3/18)
**R / M #:**   39 / 0

**2)** ORAL ARGUMENT ON MOTION FOR SANCTIONS (set at hrg. held 11/30/17)(resched. from 5/3/18)
**R / M #:**   102 / 0

**3)** **ADV: 2-17-00267**
**GABRIELLE ANN SODERGREN vs DANIEL F RYCHLIK**
ORAL ARGUMENT ON MOTION FOR SUMMARY JUDGMENT (set at hrg. held on 11/30/17) (resched. from 5/3/18)
**R / M #:**   4 / 0

## *Appearances:*

RACHEL ELIZABETH FLINN, ATTORNEY FOR RUSSELL BROWN, TRUSTEE
KYLE A. KINNEY, ATTORNEY FOR GABRIELLE ANN SODERGREN
GABRIELLE ANN SODERGREN, PRESENT IN COURTROOM
LAWRENCE D. HIRSCH, ATTORNEY FOR PARKER SCHWARTZ, Appearing by telephone
SCOTT L. GREEVES, ATTORNEY FOR DANIEL RYCHLIK
JAY BLOOM, ATTORNEY FOR DANIEL RYCHLIK
DANIEL F RYCHLIK, PRESENT IN COURTROOM

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

# Minute Entry

(continue)...    2:16-BK-12689-SHG                    THURSDAY, MAY 10, 2018 03:00 PM

## *Proceedings:*

ITEM 1: CONTINUED  STATUS HEARING ON CHAPTER 13 PLAN

Ms. Flinn reports that the debtor is current on the plan payments.  The other issues need to be resolved before the case can move forward to confirmation.  The trustee takes no position in the two remaining matters on calendar.

Ms. Flinn is excused.

ITEM 2: ORAL ARGUMENT ON MOTION FOR SANCTIONS

Mr. Kinney thinks the motions and briefing speak for themselves.  Rule 16(f) and Rule 105 are the two authorities under which the Court can and should award sanctions to Ms. Sodergren.

Mr. Greeves states this was a mistake on his part.  He misunderstood that Mr. Rychlik's attendance was required in person at the settlement conference.  He does not think that what has occurred during the divorce proceedings has any bearing on the bankruptcy proceedings.  Under Rule 16(f) there is an exception and he would argue there is no bad faith.

**Daniel Rychlik** is sworn by the clerk and examined by Mr. Greeves.  The Court examines the witness.   Mr. Kinney cross-examines the witness.  The Court examines the witness and the witness is excused.

Mr. Hirsch does not think it matters whether the error was on the part of Mr. Rychlik or Mr. Greeves.

The Court has concern because Mr. Hirsch was not a party to the settlement conference in the adversary proceeding.

Mr. Hirsch explains that the settlement also involved confirmation of the plan and his client's potential claim against Dr. Rychlik. His client is the largest creditor of the estate.  Resolving his client's issue would resolve the plan issues and which could potentially resolve the adversary proceeding.   The purpose of the mediation was trilateral.

The Court points out that the resolution of Dr. Rychlik's claim was a critical element for the resolution of the plan.  Mr. Hirsch's client's claim was not critical to the settlement conference that occurred before Judge Ballinger.   Parker Schwartz was not a party to the adversary proceeding.  The settlement conference was conducted to resolve the claim between Dr. Rychlik and Ms. Sodergren.

Mr. Hirsch would like to review the minutes and the audio of the first hearing where all the parties agreed to go to mediation. He refers the Court to docket entry #55, Order Regarding Settlement Conference, which was issued in the administrative case. He believes the settlement conference was set on the plan.  If the mediation was limited to the adversary proceeding he probably would not have participated.

The Court then refers Mr. Hirsch to the order issued by Judge Ballinger after the failed settlement conference at docket entry #89.  The Court will allow Mr. Hirsch to brief the matter further.  It is not comfortable today with awarding sanctions against Mr. Rychlik based on Parker Schwartz's standing in the matter.

Mr. Hirsch will accept the Court's opportunity to file a supplemental memorandum in the next twenty or thirty days.

The Court will give Mr. Hirsch whatever time he needs and Mr. Greeves will be given an opportunity to respond.

Mr. Bloom advises the Court that going into the settlement conference, they were ready to negotiate in good faith and Dr. Rychlik was willing to compromise his position and willing to address the issues.  Mr. Bloom points out that all the lawyers involved did have the telephonic settlement conference that covered the issues and he imagines what occurred during that telephone conference is what would have occurred if the parties had met in person.

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

# Minute Entry

(continue)...    2:16-BK-12689-SHG                THURSDAY, MAY 10, 2018 03:00 PM

*COURT:  THE COURT RENDERS THE LEGAL AND FACTUAL BASIS FOR ITS RULING.  FOR THE REASONS STATED ON THE RECORD, IT IS ORDERED ENTERING AN AWARD  IN FAVOR OF THE DEBTOR, GABRIELLE SODERGREN  AND AGAINST DR. DANIEL RYCHLIK AND HIS COUNSEL, JOINTLY AND SEVERALLY, FOR THE REASONABLE EXPENSES INCLUDING ATTORNEY'S FEES INCURRED BY THE DEBTOR IN PREPARATION FOR THE ABORTED SETTLEMENT CONFERENCE UNDER RULE  7016(f)(2), AS A SANCTION UNDER RULE  7016(f)(1)(C) ,AND THE LAST SENTENCE OF 7016(c)(1) FOR DANIEL RYCHLIK'S FAILURE TO APPEAR IN PERSON AT THE SETTLEMENT CONFERENCE SCHEDULED FOR 9/27/17 AS REQUIRED BY JUDGE BALLINGER'S PRIOR ORDERS AND VACATED BY JUDGE BALLINGER FOR DANIEL RYCHLIK'S UNJUSTIFIED FAILURE TO COMPLY WITH JUDGE BALLINGER'S ORDERS.  IT IS FURTHER ORDERED THE AMOUNT REQUESTED WILL BE REDUCED FROM $4700 TO $3500.  Mr. Kinney to submit a form or order. MR. HIRSCH IS TO FILE A SUPPLEMENTAL BRIEF BY THURSDAY, MAY 31, 2018 AT 5:00 P.M. AND MR. GREEVES IS TO FILE A RESPONSE BY THURSDAY, JUNE 21, 2018 AT 5:00 P.M. THEN MR. HIRSCH HAS UNTIL THURSDAY, JUNE 28, 2018 AT 5:00 P.M. TO FILE A REPLY AFTER WHICH THE MATTER WILL BE DEEMED UNDER ADVISEMENT.*

Mr. Hirsch is excused.

ITEM 3: ORAL ARGUMENT ON MOTION FOR SUMMARY JUDGMENT

Mr. Bloom argues that Daniel Rychlik is entitled to a determination as a matter of law that the judgment at issue is a non-dischargeable Domestic Support Order.  He points to Ninth Circuit case law that indicates there is a presumption that the judgment is a DSO.  The exception is that once the criteria are in place,  it would take a strong showing that the attorney fee award was not in the nature of a DSO.

The Court does not see evidence presented by Dr. Rychlik that suggests an award is necessary because there is financial need. It thought what counsel was arguing was that it should not be fair for Ms. Sodergren to unnecessarily and unfairly put Dr. Rychlik through this process because he makes more money.   There was a suggestion that Ms. Sodegren has resources from other family members that would justify an award against her.

Mr. Bloom directs the Court to review their reply to the application of attorney's fees.  On page five, attached as exhibit A to the reply, they cite a letter from Ms. Sodergrens' father.  The issue is not which party had greater financial resources.  He thinks the Court recognizes under the statutes that both parents has a duty of support to the children.  Those attorneys' fees effect the ability to provide for the children.

The Court reads directly from Bradshaw and Jarski.

 Mr. Bloom argues that the children lived six months with their father and for that six-month period the mother had a duty to provide child support.

The Court responds that argument is not relevant.  It wants to know what evidence, ruling, or basis there was at the time the court entered the order that it was considering that the award was being made upon some economic financial basis.

Mr. Bloom further argues that the Ninth Circuit has recognized that a presumption exists and that fees awarded under the statute in a matter involving child custody or child support are considered in the nature of child support unless the record requests otherwise.  What the Court is asking for is actually provided by Arizona's statutory scheme.

This Court engages Mr. Bloom in discussion regarding the federal standard, which is the standard that it must apply.  It points out that the judge does not cite any statute in its decision.

EXHIBIT PAGE
00188

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

# Minute Entry

**(continue)...**    **2:16-BK-12689-SHG**                    **THURSDAY, MAY 10, 2018 03:00 PM**

Mr. Bloom thinks the Court is suggesting that counsel has to prove that the state court judge followed a statute that it is required to follow by law.

***COURT:  IT IS ORDERED THIS IS NOT A 507(A)(2) NATURE OF SUPPORT AWARD AND THEREFORE IT IS NOT A PRIORITY CLAIM IN THE CASE.***  Mr. Kinney to submit a form of order that includes language that based on the discussion on the record and the pleadings that were submitted by the parties, the Court has made its determination with regard to the issue of whether or not this is a priority claim.

The hearing is adjourned.

EXHIBIT PAGE
00189

# TAB 4

**Scott H. Gan, Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 13 |
| Gabrielle Ann Sodergren, | Case No.:    2:16-bk-12689-SHG |
| Debtor. | Adv. Pro.:   2:17-ap-00267-SHG |

| | |
|---|---|
| Gabrielle Ann Sodergren, | **JUDGMENT GRANTING PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff/Counter-defendant, | |
| vs. | **AND** |
| Daniel Rychlik, | **DENYING DEFENDANT/COUNTERCLAIMANT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendant/Counterclaimant. | |

The Court, having considered Plaintiff/Counter-Defendant Gabrielle Ann Sodergren's ("Sodergren") Motion for Summary Judgment (Docket Entry Nos. 27, 27-1 & 27-2), Defendant/Counterclaimant Daniel Rychlik's ("Rychlik") Opposition thereto and Countermotion for Summary Judgment (Docket Entry No. 28 and 28-1), Sodergren's Reply in Support of Summary Judgment and in Opposition to Rychlik's Countermotion for Summary Judgment, and the May 10, 2018 oral argument relating thereto,

IT IS HEREBY ORDERED that, Sodergren's Motion for Summary Judgment is GRANTED in its entirety; specifically that the December 18, 2015 Award of attorney fees and costs issued against Sodergren and in favor of Rychlik, in the Maricopa County Superior Court, at case number FC 2011-090965 at issue in this case ("Rychlik Award"), is

not a "domestic support obligation" as the term is defined in 11 U.S.C. § 101(14A); and, the Rychlik Award is subject to discharge pursuant to 11 U.S.C. § 1328(a);

IT IS FURTHER ORDERED that, Rychlik's Countermotion for Summary Judgment is DENIED in its entirety.

SIGNED AND DATED ABOVE

EXCERPTS PAGE NO.
00192

# TAB 5

**KATZ & BLOOM** P.L.C.

*COUNSELORS AT LAW*
340 East Palm Lane, Suite A-260
Phoenix, Arizona 85004
www.KatzAndBloom.com
Tel: (602) 266-1900
Fax: (602) 266-4243

JAY R. BLOOM, #16380
Jay@KatzAndBloom.Com

Attorney for Creditor Dr. Daniel Rychlik

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTICT OF ARIZONA

| | |
|---|---|
| In Re: | Chapter 13 |
| GABRIELLE ANN SODERGREN, | Case No.:   2:16-bk-12689-SHG |
| Debtor. | Adv. Pro.:   2:17-ap-00267-SHG |
| GABRIELLE ANN SODERGREN, | **NOTICE OF APPEAL AND STATEMENT OF ELECTION** |
| Plaintiff/Counter-Defendant, | |
| vs. | |
| DANIEL RYCHLIK, | |
| Defendant/Counterclaimant. | |

Defendant/Counterclaimant, Daniel Rychlik, ("Rychlik"), by and through his undersigned counsel, appeals from the "Judgment Granting Plaintiff/Counter-Defendant's Motion for Summary Judgment and Denying Defendant/Counterclaimant's Motion for Summary Judgment," entered June 10, 2018.

Pursuant to 28 U.S.C. § 158(c)(1), Rychlik elects to have the appeal heard by the United States District Court.

///

///

DATED: June 20, 2018.

KATZ & BLOOM, P.L.C.

*/s/ Jay R. Bloom*
Jay R. Bloom
Attorney for Defendant/Counterclaimant
Creditor, Daniel Rychlik

I certify that the foregoing was submitted on
June 20, 2018, in the United States
Bankruptcy Court for filing and transmittal
of notice of electronic filing to the ECF registrants
appearing in this case, and be email to:

Russell Brown
service@ch13bk.com
jmorales@ch13bk.com
Chapter 13 Trustee

Kyle A. Kinney
Kyle@turnaroundteam.com
Attorney for Debtor

*By /s/ D. Jablin*

EXHIBIT PAGE
00195

# TAB 6

UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

```
_____
In re:                                 )
                                       )
GABRIELLE ANN SODERGREN     CH: 13     )     2:16-BK-12689-SHG
                                       )
1) CONTINUED STATUS HEARING ON CHAPTER )
   13 PLAN (cont. from 5/11/17) (cont. )
   from 6/8/17) (cont. from 8/3/17)    )
   (cont. from 9-14-17) (cont. from    )
   10/31/17) (cont. from 11/30/17)     )
   (resched. from 5/3/18)              )
                                       )
2) ORAL ARGUMENT ON MOTION FOR         )
   SANCTIONS (set at hrg. held         )
   11/30/17)(resched. from 5/3/18)     )
                                       )
3) GABRIELLE ANN SODERGREN vs DANIEL F )     ADV: 2-17-00267
   RYCHLIK                             )
                                       )
   ORAL ARGUMENT ON MOTION FOR SUMMARY )
   JUDGMENT (set at hrg. held on       )
   11/30/17) (resched. from 5/3/18)    )
_____)
```

U.S. Bankruptcy Court
38 S. Scott Ave., Suite 100
Tucson, AZ 85701

May 10, 2018
3:00 p.m.

BEFORE THE HONORABLE SCOTT H. GAN, Judge

APPEARANCES:

```
For Chapter 13 Trustee      Rachel Flinn
Russell Brown:              3838 North Central Avenue
                            Suite 800
                            Phoenix, AZ 85012-1965


For Gabrielle Sodergren:    Kyle Kinney
                            LAW OFFICES OF
                            KYLE A. KINNEY, PLLC
                            1717 North 77th St., Suite 6
                            Scottsdale, AZ 85257
```



APPEARANCES:   (Continued)

For Daniel Rychlik:                Scott Greeves
                                   GREEVES & ROETHLER PLC
                                   2151 East Broadway Road
                                   Suite 115
                                   Tempe, AZ 85282
                                      -and-
                                   Jay Bloom
                                   KATZ & BLOOM PLC
                                   340 East Palm Lane
                                   Suite A260
                                   Phoenix, AZ 85004

For Parker Schwartz:               Lawrence Hirsch (Telephonic)
                                   PARKER SCHWARTZ PLLC
                                   7310 North 16th Street
                                   Suite 330
                                   Phoenix, AZ 85020

Proceedings recorded by electronic sound technician, Margaret
Kelly; transcript produced by eScribers, LLC.



00198

INDEX

|                      | DIRECT | CROSS | REDIRECT | RECROSS |
|----------------------|--------|-------|----------|---------|
| WITNESSES:           |        |       |          |         |
|                      |        |       |          |         |
| Daniel Rychlik       |        |       |          |         |
| (By Mr. Greeves)     | 9      |       |          |         |
| (By Mr. Kinney)      |        | 14    |          |         |

1  merits of the claim under 507.

2         MR. HIRSCH:  Your Honor, may I be excused?

3         THE COURT:  Yes, you can be excused.

4         Mr. Kinney, I don't need you to approach.

5         MR. KINNEY:  Okay.

6         THE COURT:  I've read your pleading.  I understand

7  what your argument is.  So I really want to speak to Mr. Bloom,

8  if I might.

9         MR. KINNEY:  Sure.

10        THE COURT:  And try to ask him a couple of questions.

11 So if you want to do the podium or --

12        MR. BLOOM:  You want me to -- yes, absolutely.

13        THE COURT:  Oh, whatever you're -- if it's done from

14 up there, you can stay at the desk.  It's okay.

15        MR. BLOOM:  No, I'm fine.

16        THE COURT:  So what I'm trying to figure out here is,

17 and let me make sure I've got your argument, I think, correct,

18 and that is that essentially, based upon a series of cases that

19 flow from Chang, and there's a couple of bankruptcy court

20 decisions in there, and there might be an Arizona State Court

21 decision that's also in there.

22        But the concept that you're promoting, and I'm not

23 saying it's not a sound concept, is that if this involved a

24 child custody dispute, then a fortiori, as a result of that

25 situation, anything that flows from that is in the nature of

1 support.  And that the reason is, is because the <u>Chang</u> case

2 broadly suggests that when child custody, child visitation

3 issues are at stake, that anything that's decided with regard

4 to that is in the best interests of the child, and therefore

5 the award of attorneys' fees must be in the nature of support.

6 　　　　　　MR. BLOOM:  I wouldn't go quite that far, but just

7 about, meaning that instead what we have is a presumption that

8 it's a domestic support order.  And the presumption, which is

9 very clearly indicated by the Ninth Circuit, indicates that --

10 and it, kind of, boils down to if there are fees entered

11 pursuant to A.R.S. 25-324, I believe it would also apply,

12 actually, to -- there's a similar statute in the paternity

13 cases that used the same criteria and that if it involves those

14 criteria, which is really a balancing two prongs.  You have a

15 view of disparity in financial resources -- not necessarily

16 income, but resources -- as well as a review of the

17 reasonableness of the positions taken.  Then it's presumed,

18 because of the statutory scheme, to be in the nature of

19 support.

20 　　　　　　And that makes sense in getting to what we're talking

21 about here is because all of those decisions in custody matters

22 deal with the best interests of the child, then we're looking

23 at it being in the nature of support when you have both those

24 factors going.  Meaning that's what the court's criteria was.

25 　　　　　　The exception -- I think we've all agreed on the law



1 | that the exceptions were actually carved out.  That shifts the

2 | burden to the other side, meaning that once you have those

3 | criteria, then it would take a strong showing that the attorney

4 | fee award was not in the nature of a domestic support order.

5 | And the example given, for example, if it was purely as a

6 | sanction.

7 |           THE COURT:  So I struggle with two issues.

8 |           MR. BLOOM:  Sure.

9 |           THE COURT:  If I look at -- if I look at the record

10 | in this case, I don't see any evidence -- well, maybe three

11 | issues.  I don't see any evidence presented by Dr. Rychlik as

12 | to the resources.  As you characterize it, I would say that

13 | it's the financial -- it's the evidence that suggests that an

14 | award is necessary, because there is financial need.  There's

15 | some evidence that -- there was none of that presented.

16 |           The argument I thought that you were making in your

17 | pleadings was that it should not be fair for Ms. Sodergren to

18 | unnecessarily, unfairly, frivolously, put the doctor through

19 | this process and then hide behind the concept that he's

20 | wealthier, and therefore any award that would be made -- would

21 | be unfair to him to deny him an award on the basis that he

22 | makes more money.

23 |           So, in other words, it shouldn't militate against him

24 | that he's wealthier than she is or that he has resources that

25 | might be greater.  And the suggestion you made was that she has

1 | resources from other family members that would justify an award

2 | against her.  But I didn't see any specific evidence of that in

3 | the record.

4 | In other words, I read the allegation, but I didn't

5 | see an affidavit from anyone.  I didn't see a bank statement

6 | that was produced for the judge.  I didn't see any evidence

7 | that supported this concept other than your argument.

8 | MR. BLOOM:  I can point it out to you.

9 | THE COURT:  Okay.  Tell me where I can find it.

10 | MR. BLOOM:  And then maybe discuss the relevance to

11 | that or not.  If you take a look, and let me -- I believe it's

12 | actually in -- yes.  I don't know.

13 | I believe it was -- yes -- our reply.  If you're

14 | referring to the pleadings for the application of attorney

15 | fees -- let me see if I can find our -- yes.  I think -- I

16 | don't know if it was attached as an exhibit, but it's --

17 | THE COURT:  Counsel, I went through it.

18 | MR. BLOOM:  But yes.  Here -- what he had was -- yes.

19 | It's if you take a look, it's our Exhibit Number 5.  Well, it's

20 | an exhibit within an exhibit.

21 | So if you take a look at our reply to the application

22 | of attorney fees, on page 5 we cite, and it indicates that it's

23 | attached to that reply as Exhibit A, but we cite in part a

24 | letter from Ms. Sodergren's father.  And the paragraph reads,

25 | "During the course of proceedings on father's

1          petition to prevent relocation, mother claims she

2          should be allowed to relocate the children to

3          Illinois so she could work for her family.  See

4          Mother's response to petition, there's a cite over

5          there (sic).  Mother touted the financial advantages

6          of relocating, making sure the court was aware of her

7          family's substantial financial resources, as

8          exemplified in a letter from her father, the owner of

9          ACS Manufacturing, that provides, in pertinent, part:

10          'We at ACS Manufacturing are looking to hire

11          Gabrielle Sodergren as soon as possible.  This is a

12          family-owned company that was established in 1989 and

13          is currently grossing $1,000,500 (sic) a year.'"

14      So that's an example of that, Your Honor, of what is

15 actually in the pleadings, and that was in the record of that

16 court and that the court considered in looking at financial

17 resource.

18      But I also am concerned that my view of this is that

19 it doesn't really -- I think the issue isn't whether or not --

20 which had greater financial resources.  You'll notice in the

21 cases, in Bradshaw and Jarski, they're not talking about --

22 they could have easily said that it only applies to the person

23 receiving support.  Or it only applies to the person who has

24 lesser financial resources.

25      And they don't.  And the reason for that is I believe



1  that the court recognizes, to begin with, under the law, the

2  statutes, both parents, regardless of which one is receiving

3  support, has a duty of support to the children.  And any time

4  you're involved in litigation, whether you're the payor or the

5  payee, those attorney fees affect your ability to support your

6  children regardless.

7         And when we're looking at -- and I think one of the

8  things that gets conflated a bit is the concept of

9  reasonableness, unreasonableness, and sanction.  They're two

10  different things, and they're two very different levels of

11  court action.

12         Every -- it's not -- and it's almost presented

13  sometimes as though the court makes a decision under the A.R.S.

14  25-324 as though we have to look at are we ordering it because

15  of the financial issues or the reasonableness issues.  In every

16  situation it's both.  In every situation it's a balancing.  But

17  that doesn't mean it's a sanction at all.  And, in fact, I

18  think --

19               THE COURT:  But let me --

20               MR. BLOOM:  Does the Court -- yes.

21               THE COURT:  So let me read to you directly --

22               MR. BLOOM:  Sure.

23               THE COURT:  -- from Bradshaw and from Jarski.

24               MR. BLOOM:  Yes.

25               THE COURT:  And it says,

1           "Clearly the state court was troubled by the

2           unreasonable positions taken by the Defendant

3           throughout the proceedings.  However, the record does

4           not strongly support a finding here, as the court

5           stated in _Jarski_, that the fees were awarded purely

6           as a sanction."

7           Then this is the important language.

8           "As required, the court considered the financial

9           positions of the parties and expressly calculated the

10          fee award based on the parties related earning

11          percentages" --

12 not resources, earning percentages --

13          "-- 75 percent by the Plaintiff and 25 percent by the

14          Defendant -- the same type of calculation that would

15          be done in determining child support.  As the court

16          stated, it didn't want to 'overburden' Defendant

17          considering she had limited financial resources."

18          So that was the first element that the court focused

19 on when it determined that it was going to find in _Bradshaw_

20 that this was not a sanction because it had evidence from the

21 court.

22          The same thing was true in _Jarski_.  The _Jarski_ court

23 found that -- it said that if the award was, in fact, intended

24 to be, or was, in fact, something other than the nature of

25 support for a child, then it said perhaps a showing could be

```
1   made if the fees were awarded only as a sanction.  No such
2   showing has been made here.  To the contrary, excerpts of the
3   record from the Superior Court all demonstrate that all of that
4   court's rulings, including the award of attorney's fees, was
5   made primarily with the best interests of the child in mind,
6   and therefore the awards are in the nature of child support.
7            What evidence was there that this judge, when he made
8   this decision -- because what I have from you is pleadings.
9   Then I have the actual award.  The award doesn't cite a
10  statute.  It doesn't recount any facts.  There was no oral
11  argument that was presented.
12           MR. BLOOM:  Right.
13           THE COURT:  The court didn't enter into any kind of
14  discussion on the record before it issued its decision.  It
15  simply awarded the amount that was requested by Dr. Rychlik in
16  full, without any reduction or comment to it.
17           MR. BLOOM:  May I correct?  A couple of things.
18           THE COURT:  That's correct, isn't it?
19           MR. BLOOM:  No.
20           THE COURT:  That's not correct?
21           MR. BLOOM:  No, and, in fact, I can show you the
22  application for attorney fees asked for $35,000.
23           THE COURT:  I'm talking about the attorneys' fees
24  award, not --
25           MR. BLOOM:  Yes.
```



 1              THE COURT:  -- for the other experts and other fees

 2      that you asked for, because you asked for --

 3              MR. BLOOM:  Oh.

 4              THE COURT:  -- an additional $10,000 for a doctor

 5      which was not awarded, and another $3,000.  But the attorney's

 6      fee award was consistent with what you requested.

 7              MR. BLOOM:  Correct.  I agree.  Yes.  I agree with

 8      that.

 9              THE COURT:  Okay.  All right.

10              MR. BLOOM:  But let me -- but I appreciate -- let me

11      address that, because actually the particular quote that you

12      cited really supports our position.  And here's why.

13              To begin with, as the Court may know, it's -- look,

14      it is -- there is no statutory formula about how a court needs

15      to approach the issue and how they balance these interests.

16      The fact that in that specific case the court, as it turns out,

17      used the percentages of the support, fine.  But that doesn't

18      tell you the analysis.

19              Now, what I believe we need to look at, though, and

20      what's most important here, is that we begin with the fact that

21      there's a presumption, and when we talk about the fact that it

22      does -- what is does not say in the order doesn't help their

23      case.  It helps us.  Because once you come to the

24      determination, and again, and I would read --

25              THE COURT:  So let me stop you for a second.

 1          MR. BLOOM:  Yes.

 2          THE COURT:  Because I disagree.  There is a case

 3    called In re Gunness, 501 B.R. 1 at pages 7 and 8.  It's a

 4    Ninth Circuit BAP decision in 2014.  And it specifically

 5    addresses this question.  It says -- in essence the creditor

 6    argued:

 7          "A policy favoring the enforcement of domestic

 8    relations obligations overrides the policy favoring a fresh

 9    start for the Debtors to the extent that a 523(a)(5) should be

10    liberally construed, unlike other exceptions to discharge."

11          But the court disagreed.  "All exceptions to

12    discharge are to be construed narrowly so they're confined to

13    their plainly expressed terms," citing Bullock, which is a

14    Supreme Court decision at 133 S.Ct. 1754, 1760-61.  That's a

15    2013 decision.  And the Geiger decision, which is at 523 U.S.

16    57, 62, a 1998 decision.  It went on to say, "And the structure

17    of 523 indicates that all discharge exceptions are subject to

18    the same general standards, like the applicable burden of proof

19    and scope of their construction", again citing Grogan v.

20    Garner, a Supreme Court decision at 111 S.Ct. 654, a 1991

21    decision.

22          So I don't buy this argument that simply because it

23    falls within the rubric of child support in the sense that it

24    involves children, it automatically means there's a presumption

25    which they have to overcome, which is different than your

1   burden all the way through the process in a bankruptcy case of

2   establishing that your exception to discharge is your burden of

3   proof at all times, irrespective of what you contend.

4           My concern here is that this is a very narrowly

5   tailored exception.  It requires that the award be for the

6   purposes of, or in the nature of maintenance, support, or

7   alimony.  I don't find that in the record in this case anywhere

8   other than the fact that this involved a child custody dispute.

9   I don't find anything in the decision of the Court that would

10  suggest that's why it was awarded for that basis.

11          So that's where I'm struggling with this decision.

12  It's not because I don't believe she might have opened up a can

13  of worms she wasn't prepared to fight and shouldn't have

14  fought, that she was wrong and realized that it was a mistake

15  and she wanted out but she couldn't get out at that point, and

16  that he incurred unnecessarily an extreme expense, at least

17  $10,000 in expert witness fees, another $3,000 to somebody

18  else, and $17,000 in attorney's fees, which were unfortunate

19  and wrong.  But that's not what we're here today about.  It's

20  not a determination of whether or not she made a mistake, she

21  should have been sanctioned.  She should have been not allowed

22  to do that.  The question for me is, does that award fall

23  within the specific criteria of this statute.  Was it awarded

24  because it was in the nature of support, alimony, or

25  maintenance, or was it for some other reason?  Because it's for

1   any other reason, it's dischargeable under the bankruptcy code.

2          MR. BLOOM:  Okay.  Then let me please address that

3   because I think what you're -- there's a couple of important

4   parts of what happened during that litigation which we're not

5   taking a look at, that of course the judge in considering the

6   entire record had to view.

7          Number one, during that litigation, there was an

8   emergency, you may have seen this in the pleadings, there was

9   an emergency proceeding.  For six months, the children lived,

10  all four, primarily with their father.  We've cited to you the

11  statutes which requires, by statute, and the case law,

12  Heidelberger, which indicates even if the parties don't raise

13  the issue of child support, the Court absolutely must enter

14  child support orders.  So under the facts of this, children

15  living six months with their father, what happened was -- and

16  they'll both of a duty of support -- before that six-month

17  period, Mother had a duty to provide child support to Father,

18  regardless of the fact that his income was higher by the way.

19  Had nothing to do with it.

20          THE COURT:  But counsel, that was resolved by an

21  agreement among the parties because she didn't pay it, for her

22  to offset against other amounts that he owed.  That's not

23  relevant.  What's relevant to me is at the time the Court

24  enters the order, what evidence can you give me, what ruling,

25  what basis do you have other than the fact that it was awarded

1   against her that demonstrates that was because the Court was

2   considering at the time it entered the order, I need to do this

3   because he needs this for his maintenance, his support, it's

4   alimony.  That's why I'm doing it.  That's what your burden is

5   and I don't see it in the record.

6          MR. BLOOM:  But I think it's important.  From

7   Bradshaw, and let me just read the -- clearly indicating the

8   9th Circuit has recognized that a presumption exists, that fees

9   awarded under this statute that we're talking about here, in

10  matters involving child custody or child support are considered

11  in the nature of child support unless the record reflects

12  otherwise.  And they explain that -- so what the Court is

13  looking for, what you're asking me for is actually under the

14  cases here, is actually provided by Arizona's statutory scheme.

15         THE COURT:  But I'm not bound by whatever the trial

16  court's labeling is.  I need to examine and I'm allowed to and

17  supposed to apply the federal standard which is, does this meet

18  the requirements of the bankruptcy code, not whether some judge

19  labeled it as support or maintenance because we know that in

20  issues of divorce sometimes property settlement is really not

21  property settlement, that it really is maintenance.  So the

22  labels don't matter to me.

23         What I want to see in the record is what Bradshaw

24  discussed.  Where did the judge demonstrate that he was making

25  this award based upon some consideration of their economic

 1  resources, their financial ability, his need versus her ability

 2  to pay.  Had he said, I think she should have to pay all of it,

 3  but she can't pay all of it because she doesn't have the

 4  ability, so I'm going to reduce it to some smaller amount but

 5  I'm still going to require her to pay it because he deserves it

 6  and its support for him, I think you win this case.  In the

 7  absence of that, I'm not clear that there is any evidence in

 8  the record to support this.

 9       MR. BLOOM:  Well, again, I think Your Honor, I think

10  where we're impassing somewhat is I hear the Court indicating

11  to us that the absence of --

12       THE COURT:  It's your burden.

13       MR. BLOOM:  Yeah.

14       THE COURT:  It's your burden.  I'm not going to move

15  off the concept --

16       MR. BLOOM:  I understand --

17       THE COURT:  -- that there's a presumption because

18  it's a rose within a child custody context that it

19  automatically falls within Chang's ambit and therefore, I don't

20  look beyond the award and determine that it automatically falls

21  within a support category.  I'm not buying that.  I apologize.

22       I think where I want you to decide is, if that's

23  where you think this has to be had, then I think that you need

24  to talk to the next level judge to have the determination made

25  that I'm mistaken, that I'm wrong, that if this occurs within

 1  this context, you only need to show that the Court awarded them

 2  for the reason that they arose within this context.  It doesn't

 3  need to have any specific findings of need, it doesn't have to

 4  look at the financial resources, it can simply adopt a process

 5  that says if it's awarded by the Court, it arose in this

 6  context, it must therefore be a fortiori, it is a support

 7  award.  Because I don't see it anywhere else in the record.

 8            MR. BLOOM:  Well, the other thing I would add, Your

 9  Honor, and it's an interesting perhaps inconsistency in the

10  debtor's case, is the Court may recall during the same

11  proceedings for which Dr. Rychlik received that attorney fee

12  award, there was an earlier award to Ms. Sodergren.  And I can

13  tell the Court our position is that if it vacated, because it

14  wasn't included in the final orders.  However, their position

15  is that it survives.

16            THE COURT:  Is that what's up on appeal right now?

17            MR. BLOOM:  Yes, that is one of the issues on appeal.

18  But their position is that it survives and if we're looking at

19  some kind of a balancing, and if the Court looks at that, then

20  that would be further reason to look at okay, we potentially do

21  have a balancing in that regard.

22            But I do want to get back to the concept here about

23  sanctions and that -- because it appears -- and maybe if I may

24  inquire -- is the Court viewing this matter that it makes no

25  difference whether -- it sounds like the Court is not looking

1  for any showing that it's a sanction and that we're focusing --

2            THE COURT:   I'm of the opinion --

3            MR. BLOOM:   -- only on --

4            THE COURT:   I'm of the opinion that if the evidence

5  in the record does not demonstrate that the Court considered

6  the financial resources and economic positions, if it didn't

7  rule on that basis, then it doesn't matter what other basis it

8  ruled on.

9            MR. BLOOM:   Well, then I can absolutely,

10  unequivocally tell the Court here's -- and here is where the

11  answer is.   Okay.   It is presumed that the Court followed the

12  statute.   And that's in the case law as well, that -- so what

13  we --

14            MR. BLOOM:   But I'm not bound by that.   You see,

15  that's the problem.   The Court can say whatever it wants to say

16  when it rules.   If it doesn't give me findings that support

17  that, then I'm able to go back and say I don't care how the

18  Court labeled it.   I don't care if the Court called it a

19  sanction.   If he said I looked at the parties' economic

20  circumstances and I'm sanctioning her because she did something

21  improper, but I'm holding her responsible because she has the

22  ability to pay it, I don't care what the courts -- as long as

23  there is a finding that supports the economic, financial

24  consideration in its ruling.

25            That's what's lacking here.   It's not because the

1   statute says you have to consider the resources and you have to

2   consider the conduct before you can award something.  Great.

3   Where is the evidence that this was the consideration?  What

4   you want me to do, is presume that the Court did the right

5   thing in the absence of any findings which both Bradshaw and

6   Jarski suggest had to be part of the record in order for the

7   Court to effectively enter an order of support.

8            MR. BLOOM:  Well, what I would then -- again, what I

9   would suggest to the Court is that I think what the Court is in

10  a sense maybe doing is the opposite, is saying look, the judge

11  in the family court -- if we're not saying the judge is --

12  we're suggesting that we have to prove that he followed a

13  statute that he's required to follow by law, and that -- and,

14  by the way, and this is important if you take a look at the

15  statute at hand because there are two sections --

16            THE COURT:  But where in the order --

17            MR. BLOOM:  -- if findings are --

18            THE COURT:  -- where in the order does he cite the

19  statute?

20            MR. BLOOM:  It's not cited in the statute.

21            THE COURT:  It's not cited.  That's the basis that

22  you sought the relief under --

23            MR. BLOOM:  Correct.

24            THE COURT:  -- but I don't even know what basis he

25  ruled for.  You're telling me, well, he must have used a

1    statute that was applicable because that's what a judge has to

2    do, and he must have made the findings that the statute

3    required him to have, although he doesn't even cite the statute

4    in his decision.

5            So, I'm sorry, counsel.  I'm at the point where I'm

6    prepared to rule.  I appreciate your efforts.

7            My decision in this case is that it wasn't their

8    burden of proof on this question of whether or not this is

9    dischargeable obligation.  It's my ruling that this is not a

10   507(a)(2) nature of support award, that it's something -- I

11   don't care whether it's a sanction or not a sanction.  It was

12   not an award in the nature of support; and therefore, it's not

13   a priority claim in this case.  And therefore, the next step in

14   this process needs to be had.

15           And I'll enter an order so that you have the ability

16   based on this record that we've made today, to take an appeal

17   from that decision if you believe that I've erred and I

18   appreciate your input and your arguments and that's where I'm

19   at today.

20           MR. BLOOM:  I understand that.

21           THE COURT:  I appreciate it.  Thank you.  Thank you.

22           MR. KINNEY:  Thank you, Your Honor.

23           THE COURT:  So I need you to prepare a form of order

24   that rules on that particular issue on summary judgment.

25           MR. KINNEY:  Okay.  And then, Your Honor, I'm

1  assuming you might want a written opinion or are we just going

2  to use the minute entry?

3          THE COURT:  I'm not going to do a written decision.

4          MR. KINNEY:  Okay.  Okay.  So I'll just prepare the

5  form of order.  Okay.  Very good.  Thank you, Your Honor.

6          THE COURT:  Yeah, just prepare a form of order.  If

7  you want to wait till the minute entry comes out, you're

8  welcome to wait, but I'm looking just for a form or order that

9  rules that based on the discussion that was had on the record,

10  the pleadings that were submitted the parties, the Court has

11  made its determination with regard to the issue of whether or

12  not this is a priority claim.

13          MR. KINNEY:  Okay.  Thank you, Your Honor.

14          THE COURT:  I appreciate it.  And I thank you for

15  your time.

16      (Proceedings Concluded)

17

18

19      I certify that the foregoing is a correct transcript from

20  the record of proceedings in the above-entitled matter.

21

22  Dated: <u>July 3, 2018</u>                    *Harold Ferguson*

                                        eScribers, LLC

23                                      7227 N. 16th Street #207

                                        Phoenix, AZ  85020

24

25

